

707 Wilshire Blvd.
Suite 3850
Los Angeles, CA 90017

TEL 213.955.9240
FAX 213.955.9250

willenken.com

Amelia L. B. Sargent
asargent@willenken.com

June 12, 2023

**VIA TRUEFILING**

Honorable Patricia Guerrero, Chief Justice of California
Honorable Associate Justices of the Supreme Court of California
Supreme Court of California
350 McAllister Street
San Francisco, CA 94102-4797

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUN 1 3 2023

FILED
DOCKETED_____
_____
DATE            INITIAL

**Re:    Opposition to Certification Request From the Ninth Circuit**
         *Cassirer v. Thyssen-Bornemisza Collection Foundation*
         **Supreme Court Case No. S280128**
         **U.S. Court of Appeals for the Ninth Circuit Case No. 19-55616**

Dear Chief Justice Guerrero and Associate Justices:

The Kingdom of Spain ("Spain") has retained American counsel to represent it as an *amicus curiae* in the above-referenced matter. Under California Rules of Court, rule 8.548(e)(1), please accept this letter requesting that this Court decline the Ninth Circuit's certification request posed in its May 22, 2023 Order Certifying Question to the California Supreme Court ("Certification Order").[1]

With this Court's clear guidance in cases like *McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68 and *Chen v. Los Angeles Truck Centers, LLC* (2019) 7 Cal.5th 862, the Ninth Circuit has all the information it needs to assess the relative interests of Spain and California in the ownership of an item of personal property—the Painting, Camille Pissarro's *Rue St. Honoré, après midi, effet de pluie*—that has been in Spain for more than thirty years, was acquired pursuant to a royal Spanish decree, under Spanish law, by an instrumentality of Spain. Indeed, the federal district court has already held that under California's choice-of-law test, "Spain's interest would be substantially more impaired if its policy were subordinated to the policy of California," and as such, Spanish law applies to this dispute. *Cassirer v. Thyssen-Bornemisza Collection Found.* (C.D. Cal. 2015) 153 F.Supp.3d 1148, 1158, *rev'd and remanded* (9th Cir. 2017) 862 F.3d 951.

Now the Ninth Circuit seeks to abdicate its responsibility to apply the law, which demands the perhaps difficult but certainly correct decision that Spanish law applies. Instead, based on a distinction without a difference, the Certification Order improperly invites this Court to proclaim a novel interest for California that would trump Spain's legitimate interests, by judicial fiat. This is the express hope of the Petitioners, whose counsel stated in open court, "We want you to

---

[1] *Cassirer v. Thyssen-Bornemisza Collection Found.* (9th Cir., May 22, 2023, No. 19-55616) 2023 WL 3576289.

223098.6



June 12, 2023
Page 2

certify because we are pretty confident [about] what the California Supreme Court is going to do." Oral Arg. at 20:10. Permitting this gamesmanship infringes on Spain's sovereignty and legitimacy to enact laws on fundamental issues of private law, such as the regime of acquisition and transmission of the right to ownership of movable property within its own borders. *See* Attach. 4 (Br. of *Amicus Curiae* the Kingdom of Spain in Supp. of Appellee Thyssen-Bornemisza Collection Found. (July 15, 2022) [Dkt. 110-3] ("2022 Amicus Br.") at 2. As such, this Court should decline the Ninth Circuit's request.

### 1. The District Court Has Already Determined Spanish Law Applies

The underlying action is a dispute over title to the Painting, which the parties agree the Nazis stole from the Cassirer family in 1939. Certification Order at 6-7. After the war, the family, believing the Painting was lost or destroyed, sued the Nazi art appraiser who had taken the Painting for restitution. *Cassirer v. Thyssen-Bornemisza Collection Found.* (C.D. Cal., Apr. 30, 2019) 2019 WL 13240413, at *2, *aff'd* (9th Cir. 2020) 824 Fed.Appx. 452, *vacated and remanded* (Apr. 21, 2022) 212 L.Ed.2d 451. In 1958, the parties reach a settlement, under which the Cassirer family was compensated with the agreed-upon value of the Painting at the time. *Id.*

Unbeknownst to the Cassirer family, the Painting was sold several times to art collectors, whose dealers had investigated the Painting's provenance but were unable to uncover that it had been stolen from the Cassirer family by the Nazis. *Id.* at *3. In 1976, Baron Hans Heinrich Thyssen-Bornemisza ("Baron") purchased the Painting, at its fair market value, from a reputable New York art gallery. *Id.* at *4.

In 1988, the Spanish government created defendant-appellee Thyssen-Bornemisza Collection Foundation ("Foundation"), an instrumentality of Spain, to maintain, conserve, publicly exhibit, and promote the Baron's art collection. *Cassirer v. Thyssen-Bornemisza Collection Found.* (*Cassirer III*) (9th Cir. 2017) 862 F.3d 951, 957. Then in 1993, the Spanish government enacted Royal Decree-Law 11/1993, authorizing Spain to provide over $300 million to finance the Foundation's acquisition of the Baron's art collection, including the Painting, and provided the Foundation with a Madrid palace to serve as a museum for the collection. *Id.*; Certification Order at 7-8. The Spanish government had investigated title to the artworks before the acquisition agreement was entered into. *See* Certification Order at 7. The Baron represented in the agreement that he was the legal owner and that, after the transaction, the Foundation would become the "absolute beneficial owner" of the artworks, including the Painting. *Id.* at 8. In addition, the Baron pledged $10 million for three years as security to protect the Foundation and Spain from the risk of a title issue with any of the artworks. *Id.* The three-year term corresponded with the three-year good faith acquisitive prescription (adverse possession) period under Article 1955 of the Spanish Civil Code ("Article 1955"). *Id.*

Respondents brought this action against the Foundation in 2005. *Id.* In 2015, the federal district court applied both federal and California choice-of-law rules and determined that Spanish substantive law applied. *Id.* at 9. Then in 2018, the district court conducted a bench trial, after which it found that the Foundation and Spain did not know the Painting had been stolen and that the Foundation had acquired title to the Painting under Article 1955. *Id.* at 11; *Cassirer*, 2019



June 12, 2023
Page 3

WL 13240413, at *21-22. The issue currently before the Ninth Circuit is whether California or Spanish substantive law applies. Certification Order at 11.

### 2. The Ninth Circuit Has All the Information It Needs to Conclude the Same

The Ninth Circuit is just as able to apply California's choice-of-law rules as the federal district court to determine whether California or Spanish law applies to this action. In the Certification Order, the court applied the first two steps of California's three-step governmental interest test without issue. *See* Certification Order at 11-22.

But the Ninth Circuit faltered on the third step, the comparative impairment analysis. Without reference to any California law, the court grew concerned with a "distinction between the issues raised by tort law and those raised by property law," inexplicably importing *federal* choice-of-law considerations into the analysis. *Id.* at 23-24. Through this lens, the Ninth Circuit asserted that California caselaw, which according to the court has largely been limited to tort actions involving physical injury, "do not provide the 'choice of law considerations most relevant to property cases.'" *Id.* (quoting *Cassirer III*, 862 F.3d at 962).

Rather than complete the comparative impairment analysis itself, the Ninth Circuit certified the following question to this Court:

> Whether, under a comparative impairment analysis, California's or Spain's interest is more impaired if California's rule that a person may not acquire title to a stolen item of personal property (because a thief cannot pass good title, and California has not adopted the doctrine of adverse possession for personal property), were subordinated to Spain's rule that a person may obtain title to stolen property by adverse possession.

*Id.* at 32. The injection of federal considerations is a contrived obstacle to the Ninth Circuit's completion of the choice-of-law determination, and this Court should not entertain the Ninth Circuit's request.

*First*, the federal tort-property considerations have no bearing on California's choice-of-law rules. As Judge Carlos T. Bea recognized in dissent, "the Second Restatement provides different rules for physical injury cases and personal property cases," but California's "general" governmental interests test applies "to all cases unless specifically displaced by statute." *Id.* at 55 (citing *McCann*, 48 Cal.4th 68, 225 P.3d 516, 526-27). So even were it true that California decisional law analyzing comparative impairment largely involved tort actions, it does not follow that this Court needs to weigh in. This Court should instead leave undisturbed the absence of California caselaw about an inapplicable federal consideration.

*Second*, the Ninth Circuit has all the information it needs to complete the comparative impairment analysis. Spain has submitted several *amicus* briefs[2] to make clear its strong interest

---

[2] Spain's *amicus* briefs are attached to this letter.



223098.6

707 Wilshire Blvd., Suite 3850, Los Angeles, CA 90017
TEL 213.955.9240   FAX 213.955.9250   willenken.com

June 12, 2023
Page 4

in having Spanish law apply, and the California Attorney General has submitted an *amicus* brief as well. Whatever difficulty the Ninth Circuit may have with evaluating the two jurisdictions' interests, such difficulty would be present for virtually all applications of the test. *Id.* at 56 (dissent). This Court need not come to the rescue whenever the Ninth Circuit would prefer that someone else resolve a tricky legal issue. *See id.* at 63-65 (dissent) (discussing "majority's 'anybody-but-us approach' to certification").

*Third*, completing the governmental interests test in this case is not as impossible as it is made out to be in the Certification Order. In fact, the federal district court in this case had sufficient guidance from caselaw such as *McCann* and correctly found that Spanish substantive law applies. *See Cassirer*, 153 F.Supp.3d at 1158-60. The Ninth Circuit can do the same.

### 3. This Court Should Decline Certification for Comity Reasons

In passing the choice-of-law issue to this Court, the Ninth Circuit hopes to avoid having to deliver the conclusion that proper application of California caselaw will yield: that Spanish law applies. Even worse, the certified question is the product of Respondents' attempt to forum shop nearly two decades after the action was filed.

Principles of comity counsel this Court to respect Spain's sovereignty and recognize Spain's right to have its laws govern ownership of property that a Spanish instrumentality has possessed for thirty years in Spain. Title to the Painting should be decided under Spain's long-established laws concerning acquisitive prescription, particularly as Royal Decree-Law 11/1993 established an "inalienable and unseizable" status of the Painting and gave the Foundation rights expressly recognized by the Spanish Legislature. 2022 Amicus Br. at 2. This Court should decline the invitation to change the rules in the eleventh hour against Spain's legitimate interests.

### 4. Conclusion

Accordingly, Spain respectfully requests that this Court decline the Ninth Circuit's request in its Certification Order.

Sincerely,

Amelia L. B. Sargent

Attachments



1

2

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

3

4

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 707 Wilshire Boulevard, Suite 3850, Los Angeles, CA 90017.

5

6

      On the date below, I served the foregoing document(s), described as **FINAL AMICUS LETTER** on each of the interested parties in this action.

7

      ☐ By placing ☐ the original  ☐  true copies thereof enclosed in sealed envelopes addressed as follows:

8

9

      **SEE ATTACHED SERVICE LIST**

10

11

12

☒     **(VIA OVERNIGHT DELIVERY)** I deposited in a box or other facility maintained by Federal Express, an express carrier service, or delivered to a courier or driver authorized by said express carrier service to receive documents, a true copy of the foregoing document, in an envelope designated by said express service carrier, with delivery fees paid or provided for.

13

14

15

☒     **(VIA ELECTRONIC SERVICE)** The document was served via electronic transfer upon the parties listed using their e-mail addresses as shown in the service list. Participants in the case who are registered CF/ECF users will be served by the TrueFiling System. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

16

17

18

☒     **(STATE)** I hereby certify that on June 12, 2023, I electronically filed the attached Final Amicus Letter with the California Supreme Court of the United States by using the TrueFiling system.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

20

      Executed on **June 12, 2023**, at Los Angeles, California.

21

22

Julie Contreras

23

(Type or Print Name)             Signature

24

25

26

27

28

1

2

3

### SERVICE LIST

*Cassirer v. Thyssen-Bornemisza Collection Foundation*
Supreme Court Case No. S280128

| | |
|---|---|
| Office of the Clerk<br>James R. Browning Courthouse<br>U.S. Court of Appeals – Ninth Circuit<br>95 Seventh Street<br>San Francisco, CA 94103-1526 | *Served Overnight Mail* |
| David Boies, Attorney<br>dboies@bsfllp.com<br>Andrew S. Brenner, Attorney<br>abrenner@bsfllp.com<br>Laura W. Brill<br>lbrill@kbkfirm.com<br>Boies, Schiller & Flexner LLP<br>333 Main Street<br>Armonk, NY 10504 | *Appellants' Counsel –*<br>*DAVID CASSIRER, THE ESTATE*<br>*OF AVA CASSIRER & UNITED*<br>*JEWISH FEDERATION OF SAN*<br>*DIEGO COUNTY, a California*<br>*non-profit corporation*<br><br><br>*Served Via E-Mail* |
| Devin Freedman<br>vel@fnf.law<br>Freedman Normand Friedland, LLP<br>1 SE 3rd Avenue, Suite 1240<br>Miami, FL 33131 | *Appellants' Counsel –*<br>*DAVID CASSIRER, THE ESTATE*<br>*OF AVA CASSIRER & UNITED*<br>*JEWISH FEDERATION OF SAN*<br>*DIEGO COUNTY, a California*<br>*non-profit corporation*<br><br>*Served Via E-Mail* |
| Stephen Neal Zack, Counsel<br>szack@bsfllp.com<br>Rossana Baeza<br>rbaeza@bsfllp.com<br>David A. Barrett<br>dbarrett@bsfllp.com<br>Boies, Schiller & Flexner, LLP<br>100 SE 2nd Street, Suite 2800<br>Miami, FL 33131 | *Appellants' Counsel –*<br>*DAVID CASSIRER, THE ESTATE*<br>*OF AVA CASSIRER & UNITED*<br>*JEWISH FEDERATION OF SAN*<br>*DIEGO COUNTY, a California*<br>*non-profit corporation*<br><br>*Served Via E-Mail* |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Samuel J. Dubbin, Esquire<br>sdubbin@dubbinkravetz.com<br>Samuel J Dubbin, PA<br>1200 Anastasia Avenue, Suite 300<br>Coral Gables, FL 33134 | *Appellants' Counsel –*<br>*DAVID CASSIRER, THE ESTATE*<br>*OF AVA CASSIRER UNITED*<br>*JEWISH FEDERATION OF SAN*<br>*DIEGO COUNTY, a California*<br>*non-profit corporation*<br><br>*Served Via E-Mail* |
| Aaron Brian<br>abrian@nixonpeabody.com<br>Irene Scholl-Tatevosyan, Attorney<br>irenstat25@gmail.com<br>Thaddeus J. Stauber, Attorney<br>tstauber@nixonpeabody.com<br>Nixon Peabody, LLP<br>300 S Grand Avenue, Suite 4100<br>Los Angeles, CA 90071 | *Appellant's' Counsel*<br>*THYSSEN-BORNEMISZA*<br>*COLLECTION FOUNDATION, an*<br>*agency or instrumentality of the*<br>*Kingdom of Spain*<br><br>*Served Via E-Mail* |
| Jorge F. Español-Fumanal<br>abogado@fueros.org<br>(Abogado - Avocat - Attorney)<br>C/ San Emilio 47 - 4 izda.<br>28017-MADRID (Spain)<br>Tel. 91.355.51.37 - Móv. 618.013.114 | *Amicus Curiae*<br><br>*Served Via E-Mail* |
| E. Randol Schoenberg<br>randols@bslaw.net<br>11426 Burnham St<br>Los Angeles, CA 90049-3424 | *Amicus Curiae*<br><br>*Served Via E-Mail* |
| Patrick Byrne, Mr.<br>p.byrne@bcremades.com<br>Bernardo M. Cremades Roman, Esquire,<br>bcr@bcremades.com<br>B. Cremades & Asociados<br>Calle Goya 18, Planta 2<br>Madrid, Madrid, 28001<br>Spain | *COMUNIDAD JUDIA DE*<br>*MADRID & FEDERACION DE*<br>*COMUNIDADES JUDIAS DE*<br>*ESPANA*<br>*Amicus Curiae*<br><br>*Served Via E-Mail* |

| | |
|---|---|
| Catherine Ysrael, Deputy Assistant Attorney General<br>catherine.ysrael@doj.ca.gov<br>Office of the California Attorney General<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013 | *STATE OF CALIFORNIA*<br>*Amicus Curiae*<br><br>*Served Via E-Mail* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE

# ATTACHMENT 1

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 15-55550 (Consolidated with Nos. 15-55951, 15-55977)
Decided July 10, 2017
(Circuit Judges Consuelo M. Callahan, Carlos T. Bea, and Sandra S. Ikuta)

DAVID CASSIRER, AVA CASSIRER, and UNITED JEWISH FEDERATION
OF SAN DIEGO, a California non-profit corporation,
Plaintiffs/Appellants/Cross-Appellees

v.

THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or
instrumentality of the Kingdom of Spain
Defendant/Appellee/Cross-Appellant

On Appeal from the United States District Court
for the Central District of California, Honorable John F. Walter
District Court No. CV-05-03469-JFW

**BRIEF OF *AMICI CURIAE* THE KINGDOM OF SPAIN IN SUPPORT OF
DEFENDANT-APPELLEE/CROSS-APPELLANT'S PETITION FOR
REHEARING AND REHEARING *EN BANC***

Neville L. Johnson
State Bar Number: 66329
JOHNSON & JOHNSON LLP
439 N. Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone (310) 975-1080
Facsimile (310) 975-1095

Attorneys for Amicus Curiae
THE KINGDOM OF SPAIN

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | | IDENTITY AND INTEREST OF *AMICI CURIAE* ............... 1 |
| II. | | ARGUMENT .......................................................................... 3 |
| | A. | Article 1956 *May* Only Abrogate the Applicable Acquisitive Prescription Period If There Has Been a Declaration of Criminal Liability by a Spanish Court.. 3 |
| | B. | The Provision in Article 1956 That Requires a Declaration of Criminal Liability Is Rooted in the Government's Constitutional Principle That All People Are Presumed Innocent ...................................... 4 |
| III. | | CONCLUSION ...................................................................... 5 |

CERTIFICATE OF COMPLIANCE ....................................................... 7

CERTIFICATE OF SERVICE ................................................................ 8

i

## TABLE OF AUTHORITIES

*Spanish Civil Code, Article 1955* ...................................................... 2, 5

*Spanish Civil Code, Article 1956* ............................................... 2, 3,4,5

*Spanish Civil Code, Article 1962* .................................................... 2,4,5

ii

## BRIEF OF *AMICI CURIAE*

## I. IDENTITY AND INTEREST OF *AMICI CURIAE*

Amici the Kingdom of Spain is a sovereign state committed to the rule of law, including the correct interpretation, application, and enforcement of its laws. As part of its commitment to the rule of law, the Government enacted laws to protect its citizens' natural rights to obtain and possess property. The Government also enacted laws to provide its citizens with finality, certainty, and predictability in property disputes.

The Government is also committed to the collection, display, and preservation of artistic works for the discovery, enjoyment, and education of its citizens and its visitors. Indeed, Spain is home to many world-renowned art museums that see millions of visitors each year. These museums include The Prado Museum, the Reina Sofía National Museum, and the Thyssen-Bornemisza, which is managed by the Foundation and which has displayed the Painting, undisturbed, since 1993.

The Government's identity and interest are set forth in greater detail in the accompanying motion for leave to file this brief. In addition, pursuant to California Rules of Court 8.520(f)(4) and Fed. R.

1

App. P. 29(a)(4)(E), the Government certifies that no portion of its
Amicus Brief was authored by any party or by counsel for any party
in this matter. The Government also certifies that no one other than
amici and their counsel made any monetary contribution intended to
fund the preparation or submission of the brief.

The Government submits the instant Amicus Brief in support of
the Foundation's Petition for Rehearing and Rehearing *En Banc* (the
"Petition"). The Petition challenges the Panel's reversal of the district
court's order granting summary judgment on two grounds: (i) the
Panel's misinterpretation and application of Article 1956 of the
Spanish Civil Code to the facts of this case; and (ii) the Panel's
prejudicial consideration of new facts, issues, and law on appeal. This
Amicus Brief focuses on the former. That is, the narrow question of
whether Article 1956 abrogates the six-year acquisitive prescription
period (Article 1955) by extending the six-year statute of limitations
for acquisitive prescription claims (Article 1962). The Government
submits that, as a matter of law, if a party does not obtain a judicial
declaration of criminal liability, Article 1956 cannot apply and the
answer therefore is: NO.

2

## II.    ARGUMENT

### A.    As a Matter of Law, Article 1956 *May* Only Abrogate the Applicable Acquisitive Prescription Period If There Has Been a Declaration of Criminal Liability by a Spanish Court

Article 1956 states:

> Movable property purloined or stolen may not prescribe
> in the possession of those who purloined or stole it, or
> their accomplices or accessories, **until the crime or
> misdemeanor or its sentence, and the action to claim
> civil liability arising** therefrom, should have become
> barred by the statute of limitations.

The Panel erred when it reversed the district court's order

granting summary judgment because to reach its decision, the Panel

overlooked the provision in Article 1956 that requires a finding of

criminal liability in connection with the Foundation's possession of

the Painting.  The importance of this provision cannot be overstated

because, in point of fact, there has been no declaration of criminal

liability relating to the Foundation's possession of the Painting.

Consequently, the Panel's analysis of Article 1956 should have

stopped there, and it should not have reached the issues of whether: (i)

Article 1956 extended the applicable statute of limitations; and/or (ii)

whether the Foundation's conduct invalidated the acquisitive

prescription statute.

3

**B.     The Provision in Article 1956 That Requires a
         Declaration of Criminal Liability Is Rooted in the
         Government's Constitutional Principle That All
         People Are Presumed Innocent**

As set forth more fully in the attached legal opinion regarding
Article 1956 by Spain's Ministry of Education, Culture, and Sports,
an individual's right to possess property under the acquisitive
prescription statute can only be disturbed pursuant to Article 1956 if
there is a finding of criminal liability by the adverse possessor.
(Appendix 00001-00026.)  The basis of this provision in Article 1956
is the bedrock Constitutional principle found in article 24.2 of the
final paragraph of the Spanish Constitution of 1978: "furthermore,
everyone has the right… to the presumption of innocence."
(Appendix 00002.)

The Government incorporated this principle and made it
inseparable from Article 1956 because without it, the net result would
be a proliferation of lawsuits for the recovery of property without end.
Indeed, the purpose of the statute and the related statute of limitations
(Article 1962) is to provide the Government's citizens with finality,
predictability, and certainty in relation to property disputes.  Any
other view of the Government's statutory scheme – including the
Panel's view – would turn the acquisitive prescription statutes on their

4

head and would result in unending claims for the recovery of property regardless of time and regardless of purported wrongdoing in possessing the property in dispute. **The Government's acquisitive prescription statutes do not allow for such a result. Consequently, the Panel erred in finding that Plaintiffs may avail themselves of Article 1956 to extend the applicable statute of limitations of the acquisitive prescription statute**.

## III. CONCLUSION

It is undisputed that, where there have been findings of criminal (and derivative civil) liability, Article 1956 may abrogate Article 1955's six-year acquisitive prescription period by extending Article 1962's six-year statute of limitations. But it is also undisputed that Article 1956 will only abrogate Article 1955's acquisitive prescription period where there has been a declaration of criminal liability by a Spanish court. (Addendum 82-88; 96; 98-109.) There has been no such declaration. Therefore, the Panel erred when it overlooked the plain language of Article 1956 and reversed the district court's order granting summary judgment.

The Government acknowledges Plaintiffs' and the Painting's history. That being said, the Government enacted its laws for the

5

reasons set forth above and they must be followed. Therefore, the

Government respectfully requests that the Court grant the Petition.

Dated: September 18, 2017      Respectfully submitted,

/s/ Neville L. Johnson
Neville L. Johnson

JOHNSON & JOHNSON LLP
439 N. Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone (310) 975-1080
Facsimile (310) 975-1095

Attorneys for *Amici Curiae*
Kingdom of Spain

6

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Circuit

Rule 29, which permits the Government to file an Amici Curiae Brief.

The brief is proportionally spaced in Times New Roman 14-point

type. According to the word processing system used to prepare the

brief, the word count of the brief is 1197, not including the Table of

Contents, Table of Authorities, the Certificate of Service, or the

Certificate of Compliance.

Dated: September 18, 2017      Johnson & Johnson, LLP
                                       Attorneys for Amici Curiae
                                       Kingdom of Spain

                                  By /s/ Neville L. Johnson
                                      Neville L. Johnson

## CERTIFICATE OF SERVICE

I, Neville L. Johnson, hereby certify that on September 18,

2017, I electronically filed the foregoing **BRIEF OF *AMICI***

***CURIAE* THE KINGDOM OF SPAIN IN SUPPORT OF**

**DEFENDANT-APPELLEE/CROSS-APPELLANT'S PETITION**

**FOR REHEARING AND REHEARING *EN BANC*** with the Clerk

of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF

users and that service will be accomplished by the appellate CM/ECF

system.

> By /s/ Neville L. Johnson
> Neville L. Johnson

8

## Appendix to Amicus Curiae Brief[1]

Appendix Number

Kingdom of Spain Ministry of Education,
Culture & Sports Opinion Regarding the
Application of Article 1956 of the Spanish
Civil Code to the Spanish Acquisitive
Prescription Statute……………………………..      00001

---

[1] For each authority, the English translation is immediately followed by the Spanish original.

[*The following text appears in the left-hand margin of each page*: Secure Verification Code: GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29; The integrity of this document may be verified at the following address: https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm]

[*The following text appears on the bottom of each page*: CSV: GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29;          VALIDATION          ADDRESS: https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm; SIGNED BY (1): MARIA DEL CARMEN ACEDO GRANDE | DATE : 1 3/09/2017 15:03 | NOTES: F]

[*The following text appears in the bottom right-hand corner of page one*:  *Plaza del Rey, 1; 28004 Madrid; TEL: 91 701.72.51/54; FAX: 91 701.72.53*]

[*The following text appears on the bottom right-hand corner of pages 2-16*: MINISTRY OF EDUCATION, CULTURE, AND SPORTS

[*There appears the coat of arms of the Spanish state*]
**MINISTRY          OF EDUCATION,   CULTURE, AND SPORTS**

**SUBSECRETARY OFFICE     OF     STATE ATTORNEYS SECRETARY  OF  STATE OF CULTURE**

**MINISTRY OF EDUCATION, CULTURE, AND SPORTS**
OFFICE OF STATE
ATTORNEYS
13 September 2017
**DOCUMENT No.: 1024/2017**

**Case 17.1.188 CA/**
**Subject: Application of the special adverse possession rule under art. 1956 of the Spanish Civil Code.**

The Office of State Attorneys in the Culture Department has examined your enquiry as to whether in order to apply the special adverse possession rule under art. 1956 of the Spanish Civil Code, a judgment not subject to appeal must first be handed down by a criminal court, convicting the person seeking to acquire property through adverse possession. With regard to this enquiry, this Office of State Attorneys issues the following report:

I

In order to properly resolve the issue set forth above, we must begin with the factual and legal situation providing the basis for the rule in art. 1956 of the Spanish Civil Code. Article 1956 states that "*title to stolen movable property may not be obtained through adverse possession by those who stole such property, or by their accomplices or accessories after the fact, unless the felony or misdemeanor or its sentence, and the action to claim civil liability arising therefrom, should have become barred by statute of limitations.*"

The rule set forth in such provision directly relates to one of the three requirements that must be met by the possession providing the basis for the adverse possession. These requirements are laid out in Roman law: *Nec vi, nec clam, nec precario* possession. This means that possession is without violence (peaceful possession), without secrecy (public possession), and as of right (the possessor — the adverse possessor — must not only be subjectively considered the owner, but must act and behave to the outside world as the owner of the property).

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

aecul@mecd.es

Obviously, the rule under art. 1956 concerns the first of the aforementioned requirements for possession, i.e., that possession must be peaceful. It is understood that possession is not peaceful when the possession by the party seeking title through adverse possession results from a criminal offence, whether a summary only, either-way or indictable only offence, for which such party is criminally liable.

Under Roman law, violence (possession that is not peaceful due to an unlawful act) definitively vitiated the possession, so preventing the adverse possession and, therefore, the acquisition of title. However, under modern law, violence vitiates possession only temporarily. This means that the possession enabling acquisition of the title may begin once the violence has ceased (see art. 2.233.2 of the French Civil Code; art. 1163 of the Italian Civil Code 1942). The Spanish Civil Code does not establish this as explicitly, but it leads to the same conclusion, not only by the rule under art. 460.4 (*"the possessor may lose possession: ... 4. due to the possession by another party, even if against the will of the former possessor, if the new possession has lasted more than one year"*), but also, very clearly, by the rule established in art. 1956.

Article 1956 is based on criminal conduct (the provision refers to stolen property; the possession vitiated by the criminal offence refers to not only to the perpetrator, but also to the accomplice and accessory after the fact — the adverse possessors — as subject to the rule set forth therein; and finally, the provision refers to the expiration of the statute of limitations for the summary only, either-way or indictable only offence, the penalty for such offence, and the civil action arising from the summary only, either-way or indictable only offence).

Under the above premise — the conduct constituting a criminal offence as the basis for the adverse possession rule under the provision in question — it is necessary to examine, first, the application of the constitutional principle of presumption of innocence enshrined in art. 24.2, final section, of the Spanish Constitution 1978 (*"furthermore, everyone has the right ... to not admit guilt and to the presumption of innocence"*). This is because it would make no sense if the rule in the aforementioned provision could be applied in the absence of a judicial ruling finding, and declaring, that the criminal offence was committed, when such criminal offence gave rise to the possession that is the basis for the adverse possession by the person involved therein, who is criminally liable for such offence. It must be emphasized that this constitutes the basis for the application of the civil rule, certainly special, on the adverse possession of movable property set forth in the aforementioned provision.

In order to render invalid the principle of the presumption of innocence, the relevant judicial ruling (conviction) must absolutely be handed down, after a proceeding has been conducted with full due process of law, in which sufficient evidence for the prosecution has been presented. In this regard, the Constitutional Court judgment 45/1997 of 11 March stated the following in its fourth legal ground:

*"With regard to the right to the presumption of innocence, we held in Constitutional Court Judgment 120/1994 that 'the presumption of innocence is only destroyed when an independent, impartial Tribunal that has been established by Law declares the guilt of a person after a proceeding conducted with full due process of law (art. 6.1 and 2 of the 1950 European Convention), in which sufficient evidence for the prosecution is presented'. Thus, the presumption of innocence is an essential procedural principle that also operates in applying the administrative punitive authority (Constitutional Court Judgments 73/1985 and 1/1987) ..."*

More specifically, and given that as has been stated, the conduct providing the basis for the rule in art. 1956 of the Spanish Civil Code is conduct constituting a criminal offence, we must take into consideration the case law set forth in Constitutional Court Judgment No. 3/1990, of 15 January, whose legal ground no. 1 states the following:

*"It is well known that, according to the repeated case law of this Court — Constitutional Court Judgments 31/1981, 101/1985, 80/1986, 82/1988, 254/1988, and 44/1989, inter alia — in order to*

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 15 of 38

render invalid the presumption of innocence, evidence for the prosecution must be presented with due process of law, and such evidence must allow for a reasoned and reasonable determination of the defendant's guilt. In principle, such evidence must be presented during the oral proceedings, in order to fulfil the principles of the oral nature of proceedings, immediacy, and the right to object to the other party's evidence. Moreover, the courts may not issue their conviction based on police reports drafted prior to the preliminary investigation in the case, since these only have the value of a criminal complaint, except when pre-trial evidence is submitted that has been properly gathered and presented."

Lastly, in the case at hand, the legal effect connected to the commission of a criminal offence is a civil effect, which is the application of the special and very burdensome adverse possession rule (that obviously hampers the acquisition of title through adverse possession). It must be stated this does not provide grounds for not applying the constitutional principle of the presumption of innocence and the requirements thereof, since this principle also operates in areas other than the imposition of penalties. In this regard, Constitutional Court Judgment 52/1989, of 22 February, in its sixth legal ground, states the following:

*"The possibility of extending the presumption of innocence beyond the scope of criminal courts has been recognized on several occasions by this Court — Constitutional Court Judgments 13/1982, of 1 April; 24/1984, of 23 February; and 36/1985, of 8 March; inter alia. This Court has demonstrated that such fundamental right cannot be understood to be strictly confined to proceedings involving alleged criminal conduct. Rather, it must also apply to the issuance of any administrative or judicial ruling relating to persons' condition or conduct, the determination of which results in a sanction or a limitation of the person's rights. However, the above does not imply that the aforementioned fundamental right simply applies to all civil proceedings, and the weighing of the evidence therein, as the appellant seems to understand in the statement of claim. This is because this right may only be applied to the area of civil evidence and, consequently, an amparo action may only be filed before the Constitutional Court to protect such right, in exceptional cases and after weighing the unique characteristics present in each case."*

II

The above section implies that for art. 1956 of the Civil Code to apply, there must have previously been a criminal proceeding with full due process of law, in which the defendant was informed of the specific charges against him or her, the defendant was able to use the relevant pleadings and evidence for his or her defense, and that ended in a non-appealable conviction. If these requirements are not met, it would violate the fundamental right to effective remedy and would imply a clear violation of the right to legal defense.

It must be recalled, as has been stated, that the fundamental right to the presumption of innocence is set forth in the final section of paragraph 2 of art. 24 of the Spanish Constitution. This must not be construed in isolation from the rest of the article, which reads as follows:

*"1. All persons have the right to obtain effective protection from judges and the courts in the exercise of their rights and legitimate interests, and in no case may there be a violation of the right to legal defense.*

*2. Likewise, all persons have a right to the ordinary judge established by law; to defense and assistance by a lawyer; to be informed of the charges brought against them; to a public trial without undue delays and with full due process of law; to the use of evidence appropriate to their defense; not to self-incriminate; to not plead guilty; and to the presumption of innocence."*

It must be noted that art. 1956 of the Civil Code has rarely been applied in Spanish law by the civil jurisdiction. Thus, the Spanish Supreme Court Judgment of 15 July 2004 (RJ 2004\4209), cited by the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017, was issued by the Criminal Chamber of the Supreme Court, in a case in which the Court handed down a conviction for the offence of fraud and applied the aforementioned art. 1956 of the Civil Code in dealing with the question of civil liability arising from the offence.

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 16 of 38

In that judgment, the Supreme Court indeed held that art. 1956 of the Civil Code applied (in response to the defendant's arguments that she was not required to repay the money obtained through fraud because she had acquired it by virtue of the adverse possession of movable property set forth in art. 1955 of the Civil Code). The Court held that "in these cases, the periods for the ordinary or extraordinary adverse possession of movable property must begin to be calculated after the expiration of the statute of limitations for criminal prosecution, as well as the statute of limitations extinguishing a right under civil law. The relevant action would be that set forth in art. 1092, that is to say the specific action arising from the felony or misdemeanor, that of 15 years set forth in art. 1964 according to what we have stated above. That is, the period for extraordinary adverse possession for movable property, set at six years by paragraph 2 of art. 1955, may only begin to be calculated when the other two periods have successively expired: the period set forth in of art. 131 of the Spanish Criminal Code for the statute of limitations for criminal offences (the five years provided for "other serious offences") and the aforementioned fifteen years set forth in art. 1964. A total of 26 years (…)".

However, these arguments by the Court are in the fourth and final legal ground of the Judgment, considering the civil liability arising from the offence. The Court devoted the previous three legal grounds, which constitute the main part of the Judgment, to examining the defendant's criminal liability. The Court held her to have committed an offence of fraud and confirmed the sentence of two and a half years' imprisonment issued by the lower court judgment. Thus, it is clear from this judgment that for art. 1956 of the Spanish Civil Code to apply, there must have previously been a non-appealable judicial ruling in the criminal jurisdiction that convicts the adverse possessor as criminally liable for an offence, where the adverse possessor is seeking to invoke the periods under art. 1955 in order to acquire property through adverse possession based on the possession obtained as a result of the offence.

For these purposes, it is irrelevant whether the criminal offence involves acting as an accessory after the fact to the offence of robbery or theft (as under art. 1956); an analogous property offence such as the offence of fraud (which is the subject of the conviction of the judgment of 15 July 2004); or a separate offence of receiving stolen goods, which case law has deemed to be analogous to acting as an accessory.

Indeed, the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017 states that "*The Spanish Supreme Court also recognized the interchangeability of the offences of receiving stolen goods and of being an accessory after the fact in Judgment 77/2004, of 2 January (RJ2004/485).*" Such Spanish Supreme Court judgment reviews the case law previously established in the judgment of 5 July 1993 (RJ 1993/5881), also cited by the United States Court. Such judgment had held that "*we find ourselves before two interchangeable offences, with the same rights protected and in fact dealt with in the proceeding; given that the sentence imposed was less (than that of the offence laid out in the charge), it is clear that the principle of (fair notice of the) charge was lawfully respected.*"

However, while this is true, it is also true that the two aforementioned judgments handed down by the Criminal Chamber of the Spanish Supreme Court refer to cases in which, in any event, a criminal judgment was issued convicting the defendant of an offence, even if the defendant was at first charged with a different offence. That is to say, the aforementioned interchangeability between offences (the offence with which the defendant was changed and the offence for which the defendant was eventually convicted) does not exclude the need in both cases for a non-appealable judgment setting forth such conviction.

The judgment of 21 January 2004 specifically states that the "*prohibition of violation of the right to legal defense constitutes the true basis for the limits that the adversarial principle imposes on the court giving judgment in these cases, in which there is a charge for one offence and a conviction for another.*" This refers to a case in which, even though the offences are different but interchangeable, there is at least a formal charge and a subsequent conviction by a court giving judgment. For such a case, the Court established as a limit the prohibition of a violation of the right to legal defense. Thus, there can be no doubt that the right to legal defense is violated, with a clear violation of the adversarial principle, in those cases in which not only is there no criminal conviction, but there is not even an open proceeding with an initial formal charge against which

00004

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

the person charged with the offence may raise a defense.

On this matter, it must be noted that a criminal conviction (whether for acting as an accessory after the fact for a robbery or theft committed by a third party, or for committing a separate offence such as that of receiving stolen goods) must refer directly and personally to the current possessor of the movable property who is seeking to claim adverse possession. This follows from art. 1956 of the Spanish Civil Code (which states that *"title to stolen movable property may not be obtained through adverse possession by those who stole such property, or by their accomplices or accessories after the fact..."*). Furthermore, any more extensive construal would again violate the fundamental rights set forth in art. 24 of the Spanish Constitution.

In conclusion, given that the requirement for applying the special adverse possession rule set forth in art. 1956 of the Spanish Civil Code is the existence of conduct constituting a criminal offence, for which the possessor of the movable property is directly criminally liable, and that, as stated above, and in compliance with the constitutional right to effective remedy and the presumption of innocence, a conviction for such conduct must have been issued in a non-appealable criminal judgment, in the absence of the enabling fact for the application of the aforementioned special rule, there are not grounds sufficient to justify not applying the general rule for the adverse possession of movable property set forth in art. 1955 of the Spanish Civil Code. Paragraph 2 of art. 1955 establishes that adverse possession of movable property takes place after six years of uninterrupted possession, with no requirement for any other condition to be met.

### III

Article 1956 of the Spanish Civil Code requires that there be a previous criminal judgment holding that the adverse possessor is criminally liable as indicated in the previous section of this report. Furthermore, it should be noted that the offences mentioned above have a statute of limitations of five years from the commission of the alleged criminal offence, under substantive Spanish criminal law. This was recognized by the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017, which stated that *"For the offence of "encubrimiento" (accessory after the fact) and the offence of receiving stolen property, the two offences the Cassirers argue TBC committed when it purchased the Painting from the Baron in 1993, the criminal limitations period is five years, 1973 Spanish Criminal Code arts. 30, 113, 546(bis)(a) and 1995 Spanish Criminal Code arts. 131, 298."*

Since art. 130.1 of the 1995 Spanish Criminal Code establishes that *"criminal liability is extinguished: 6. Due to the expiration of the statute of limitations for the offence"* (as was also established by art. 112.1.6 of the 1973 Spanish Criminal Code), any criminal proceeding that today sought to begin to prosecute offences already barred by the statute of limitations would necessarily end with a dismissal or, if applicable, with an acquittal.

The statute of limitations for the penalty referred to in art. 1956 of the Civil Code may not be taken into account, either, because *nulla poena sine lege* is a fundamental principle of Spanish law. Thus, in the absence of a judicial ruling on the commission of an offence, it is not possible to discuss the existence of a penalty, or, therefore, the statute of limitations for such penalty.

Finally, neither is it possible to apply the statute of limitations for an action claiming civil liability for the offence, also referred to by art. 1956 of the Civil Code. Such statute of limitations period, which the US court set at fifteen years with a citation of Spanish case law, requires that there be a previous criminal judgment holding that an offence was committed, which would give rise to the obligation of the civil liability.

Article 1089 of the Civil Code lists the sources of civil obligations in Spanish law, stating that *"obligations arise from law, contracts, quasi-contracts, and unlawful acts and omissions involving any kind of willful misconduct or negligence."* Later, art. 1092 states that *"civil obligations arising from offences or violations shall be governed by the provisions of the Spanish Criminal Code."* A different article is then dedicated to obligations *"arising from acts or omissions involving willful misconduct or negligence that are not punished by law,"* which shall be subject to the provisions of arts. 1902 et seq. of the Spanish Civil Code.

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 18 of 38

Article 1956 of the Spanish Civil Code specifically refers to the "*action to claim civil liability arising from the felony or misdemeanor.*" That is to say, it refers exclusively to the action provided for in art. 1092, transcribed above, which in turn refers to the provisions of the Spanish Criminal Code.

Article 109 of the 1995 Spanish Criminal Code, in keeping with the Spanish criminal law tradition, establishes that "*the commission of an act described by the law as an offence creates an obligation to provide redress for the harm caused thereby, as established by law.*" The Spanish Criminal Code then states in art. 110 that "*the liability established in the previous article includes: 1. Restitution. 2. Redress for the harm. 3. Compensation for economic and non-economic harm.*"

The action to claim civil liability arising from the offence may be combined with the criminal proceeding, or it may be reserved to be brought before a civil court, given that art. 109.2 states that "*the injured party may choose, in any event, to claim civil liability before a civil court.*" However, in the latter case, for there to be a ruling that such civil liability exists, there absolutely must be a previous criminal conviction holding that an offence was committed and by whom it was committed.

This is clear from the judgment of the Civil Chamber of the Supreme Court of 20 September 1996 (RJ 1996\6818):

*"(...) thus, it is necessary to uphold the Provincial Court judgment holding that once an "ex delicto" civil liability claim has been brought, no other action may be heard. It must be dismissed because there is no criminal conviction, an essential requirement in order for civil liability to arise. It is clear under art. 114 of the Spanish Criminal Procedure Act (Ley de Enjuiciamiento Penal) that when the facts give rise to criminal proceedings, such proceedings suspend the possibility of bringing a civil claim or suspend any proceeding that may have begun, until a non-appealable judgment is handed down. Such provision requires courts to extend the possibility of bringing civil claims to situations of the definitive dismissal of proceedings and even the provisional dismissal or discontinuance of proceedings (Judgments of 16 November 1985, 20 October 1987, 30 November 1989, or 20 January 1992). However, in these cases, the civil claim that is brought must be that under art. 1902, a claim that is statute barred after one year according to art. 1968, and not an 'ex delicto' claim, which requires the existence of a conviction. Such conviction exists in the case of the pardon or death of the convicted offender, but not when the case is dismissed or discontinued without a previous conviction, since the presumption of innocence continues to exist before a conviction."*

This case law of the Civil Chamber of the Supreme Court has been consistently upheld in subsequent judgments, such as that of 23 January 2009 (RJ 2009\1269), which stated the following:

Firstly, it should be noted that the action may not be based on the existence of "*ex delicto*" civil liability, as was the case in the statement of claim, without there being a previous criminal judgment holding that the criminal offence was committed. This is established, inter alia, by the Judgment of this Court of 31 January 2004, holding that "in order for an '*ex delicto*' claim to apply, there must be a conviction, not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an '*ex delicto*' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993, 10/5/1994, 19/5/1997, 14/4/1998, and 20/11/2001)."

More recently, the judgment of 27 March 2015 (RJ 2015\2688) confirmed the same line of case law:

*"The most recent case law of this Court is expressed in the judgment that prompted such opinion, cited in the judgment of 23 January 2009. This judgment stated that 'in order for an 'ex delicto' claim to apply, there must be a conviction, not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an 'ex delicto' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993, 10/5/1994, 19/5/1997, 14/4/1998, and 20/11/2001).'*

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

*This has not taken place in this case, in which the defendant was not convicted in the criminal proceeding, which was discontinued due to the subsequent statement of claim by the accused."*

Therefore, the existence of a previous criminal conviction is an essential requirement for recognizing the existence of an action to claim civil liability arising from the offence (and, therefore, for assessing the statute of limitations of such claim).

In fact, the two judgments cited by the United States Court of Appeal of the Ninth Circuit judgment of 10 July 2017, in order to demonstrate that the statute of limitations for the action to claim civil liability arising from the offence, referred to by art. 1956 of the Civil Code, is fifteen years under art. 1964 of the Civil Code[1], are judgments based on the premise of the prior existence of a criminal conviction.

Thus, the judgment of 7 January 1982 (RJ 1982\184), which effectively holds that actions to claim civil liability arising from an offence have a statute of limitations of fifteen years, was issued by the Civil Chamber of the Supreme Court in a case in which a criminal proceeding had already occurred and had ended in a conviction. This is expressly stated in the factual background of the judgment:

*"WHEREAS. In order to properly hear this appeal, we must establish the following findings of fact, which have been accepted by the parties, have been held to be proven by the lower court, or may be concluded from a review of the proceedings: A) (...) died in a traffic accident. This was followed by preliminary proceedings in which a judgment was handed down by the Court of First Instance of Algeciras on 11 July 1975, which was held to be non-appealable on 1 September of that year. Such judgment held that an offence of simple recklessness was committed, with a violation of regulations and with death as the result. The defendant Maria Teresa C.T. was held liable as the perpetrator, and in addition to the sentence for the offence imposed on the defendant, she was required to pay, inter alia, damages for the death of Antonio V.V. (...)."*

On the other hand, in its judgment of 15 July 2004 (RJ 2004\4209), the Criminal Chamber of the Supreme Court applied art. 1956 of the Civil Code to render the adverse possession invalid under art. 1955, which the defendant had cited in order to avoid repaying the amounts claimed. The Court did so at the end of its judgment, considering civil liability, after analyzing the defendant's criminal responsibility and upholding the judgment given by the lower court, which had convicted her as "the criminally liable perpetrator of a continuing offence of fraud, (...) and *sentenced her to two years and six months' imprisonment (...)."*

It clearly should be concluded that in cases where criminal prosecution of an alleged offence is barred by the statute of limitations (it should be remembered that, in the case at hand in this report, such period is five years), it is not possible to apply the statute of limitations of fifteen years for actions to claim civil liability arising from such offence, given that such civil action does not arise without a previous ruling on the offence.

---

[1] The wording of art. 1964 of the Spanish Civil Code was amended by the first final provision of Law 42/2015, of 5 October, reforming Spanish Law 1/2000, of 7 January, on Civil Procedure (Official Gazette of the Spanish State [BOE] 6 October), which came into force on 7 October 2015. Under the reform, the statute of limitations for personal actions for which a special statute of limitations has not been established was reduced from fifteen to five years:

"Article 1964:
1. ( ... ).

2. Personal actions for which a special statute of limitations has not been established have a statute of limitations of five years from when compliance with the obligation may be claimed. In continuing obligations to act or to refrain from acting, the statute of limitations shall begin each time such obligations are breached."

The fifth transitional provision of Spanish Law 42/2015, of 5 October, establishes that the statute of limitations for personal actions for which a special statute of limitations has not been established, and that arose before the date of its entry into force, 7 October 2015, shall be governed by the provisions of art. 1939 of the Spanish Civil Code:

"Article 1939.

The statutes of limitations that began prior to the publication of this Code shall be established by the laws existing prior to such publication. But if the entire period established herein for the statute of limitations elapses after this Code enters into force, this statute of limitations shall take effect, even if the previous laws required a longer period of time."

As a consequence of the aforementioned reform, the current statute of limitations for an action to claim civil liability arising from a crime is five years and not fifteen, without prejudice to the special rule under art. 1939 for actions arising prior to the entry into force of the reform.
The case covered by the report does not consider the new statute of limitations for civil actions arising from criminal offence, since it is based on the premise that the action has not arisen insofar as there has not been a previous conviction finding the commission of a crime and by whom it was committed.

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

In these situations, the case law set forth in the Supreme Court (Civil Chamber) judgment of 31 January 2004 (RJ 2004\444) applies. Such judgment held the following:

*"This is not an 'ex officio' action under art. 1092, as was included in the statement of claim, because there is no criminal offence. This is because the acquittal issued made the facts in the complaint disappear, by ruling that such facts were extinguished by application of the statute of limitations, and thus any possible criminal liability with respect thereto was also extinguished. This means that art. 1092 in relation to art. 1964 does not apply, since the action does not arise from the summary only, either-way or indictable only offence but rather from the facts, which serve as elements of the summary only, either-way or indictable only offence. In order for an 'ex delicto' claim to apply, there must be a conviction, not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an 'ex delicto' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993 [sic], 10/5/1994, 19/5/1997, 14/4/199, and 20/11/2001)."*

This case law criterion continues to be applied today by Spanish courts. We can refer to the Navarra Provincial Court judgment of 12 December 2014 (AC 2014\255), which, in addition to transcribing the above-mentioned Supreme Court judgment of 31 January 2014, repeated that "case law establishes that there is no 'ex delicto' claim when the criminal judgment is for acquittal due to the expiration of the statute of limitations for the offence and, therefore, the civil claim is subject to the ordinary statute of limitations." This excludes the statute of limitations of fifteen years under art. 1964 of the Civil Code in relation to art. 1092, and stated that in such case "only a claim for tort liability under art. 1902 of the Civil Code may be brought"; the statute of limitations for such claim is one year, as set forth in art. 1968.2.

In light of all of the foregoing, this Office of State Attorneys submits the following for your consideration:

## CONCLUSION

The application of the special adverse possession rule established by art. 1956 of the Spanish Civil Code absolutely requires: that a proceeding be conducted with full due process of law, in which sufficient evidence has been presented; that a non-appealable judgment be handed down, finding that conduct constituting a criminal offence was committed; that such judgment convict the person for this criminal offence, where such person is seeking to obtain property by adverse possession based on possession resulting from such offence.

**Madrid, 13 September 2017**
**THE HEAD STATE ATTORNEY**

**María del Carmen Acedo Grande**

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

**HEAD OF THE AREA OF EDUCATION, CULTURE, AND SPORTS**

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

| | |
|---|---|
| Mrs. Mª Soledad Valcárcel Conde, Sworn English Translator-Interpreter, designated by the Ministry of Foreign Affairs and Cooperation, hereby certifies that the foregoing is an accurate and complete translation into English of a document written in Spanish. Madrid, 18 September 2017. Signed: Mª Soledad Valcárcel Conde | Doña Mª Soledad Valcárcel Conde, Traductor-Intérprete Jurado de Inglés, nombrado por el Ministerio de Asuntos Exteriores y de Cooperación, certifica que la que antecede es una traducción fiel y completa al inglés de un documento redactado en español. En Madrid, a 18 de septiembre de 2017. Firmado: Mª Soledad Valcárcel Conde |

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4185

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 23 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm



**MINISTERIO DE EDUCACIÓN,
CULTURA Y DEPORTE**

SUBSECRETARÍA

ABOGACÍA DEL ESTADO

ÁREA SECRETARÍA DE ESTADO
DE CULTURA



MINISTERIO DE EDUCACIÓN,
CULTURA Y DEPORTE

ABOGACÍA DEL ESTADO

13 de septiembre de 2017

SALIDA Nº:    1024/2017

Exp. 17.1.188 CA/
**Asunto: Aplicación regla especial de prescripción adquisitiva del artículo 1956 del
Código Civil.**

La Abogacía del Estado en la Secretaría de Estado de Cultura ha examinado su
consulta sobre si la aplicación de la regla especial de prescripción adquisitiva que
establece el artículo 1956 del Código Civil español exige que previamente se
haya dictado sentencia firme del orden jurisdiccional penal por la que se
condene a quien pretende adquirir por dicho título. En relación con dicha
consulta, esta Abogacía del Estado emite el siguiente informe:

-I-

La adecuada resolución de la cuestión reseñada en el encabezamiento del
presente informe ha de partir necesariamente del supuesto fáctico-jurídico
sobre el que descansa la regla del artículo 1.956 del Código Civil español,
conforme al cual: *"las cosas muebles hurtadas o robadas no podrán ser
prescritas por los que las hurtaron o robaron, ni por los cómplices o
encubridores, a no haber prescrito el delito o falta, o su pena, y la acción
para exigir la responsabilidad civil, nacida del delito o falta".*

La regla que sanciona este precepto enlaza directamente con una de las tres
exigencias o requisitos que ha de cumplir la posesión que sirve de base a la
prescripción adquisitiva y que se formulan ya en el Derecho Romano: possessio
nec vi, nec clam, nec precario, esto es, que la posesión lo sea sin violencia
(posesión pacífica), sin clandestinidad (posesión pública) y a título de dueño (el
poseedor -prescribiente- no sólo ha de considerarse subjetivamente dueño, sino
que ha de actuar y comportarse externamente como dueño de la cosa).

aecul@mecd.es

Plaza del Rey, 1
28004 - Madrid
TEL: 91 701.51/54
FAX: 91 701.72.53

---

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 24 of 38

2

Obviamente, la regla del artículo 1.956 atañe al primer requisito o exigencia de la posesión de los indicados, es decir, que la posesión sea pacífica, entendiendo que no lo es cuando la situación posesoria del que pretende adquirir por usucapión es la posesión resultante de un ilícito penal, sea a título de delito o a título de falta, que le sea imputable penalmente.

Ahora bien, frente al régimen del Derecho Romano en el que la violencia (posesión no pacífica por resultar de un acto ilícito) viciaba definitivamente la posesión, imposibilitando así la consumación de la usucapión y, por tanto, la adquisición del dominio, en el Derecho moderno la violencia vicia la posesión sólo transitoriamente, posibilitando así que, una vez cesada la violencia, se inicie una posesión hábil o útil para adquirir el dominio (cfr. artículo 2.233.2 del Código Civil francés; artículo 1163 del Código Civil italiano de 1942). El Código Civil español no lo establece de una forma tan expresa, pero conduce a la misma conclusión no sólo por la regla del artículo 460.4 *("el poseedor puede perder la posesión:... 4º por la posesión de otro, aun contra la voluntad del antiguo poseedor, si la nueva posesión hubiere durado más de un año")*, sino, y muy claramente, por la regla que establece el artículo 1.956.

El artículo 1.956 tiene por base, pues, una conducta delictiva (el precepto alude a cosas hurtadas o robadas, refiere la situación posesoria viciada por el ilícito penal no *sólo* al autor, sino también al cómplice y encubridor como destinatarios de la regla que establece – prescribientes- y, finalmente, alude a la prescripción del delito o falta su pena y a la acción civil nacida del delito o falta).

Partiendo de la anterior premisa -la conducta constitutiva de ilícito penal como base de la regla de prescripción adquisitiva que establece el precepto en cuestión-, resulta necesario examinar, en primer término, la aplicación del principio constitucional de presunción de inocencia que sanciona el artículo 24.2, inciso final, de la Constitución Española de 1978 *("asimismo, todos tienen derecho... a no confesarse culpables y a la presunción de inocencia")*, y ello por cuanto que no tendría sentido alguno que pudiera aplicarse la regla del precepto de continua referencia si no existiese un pronunciamiento judicial que apreciase, y así lo declarase, la comisión del ilícito penal del que deriva la

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS:

SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

3

posesión en que se fundamenta la prescripción adquisitiva de quien intervino en aquél, siéndole imputable, lo que, ha de insistirse, constituye la base fundamento de la aplicación de la regla civil, ciertamente especial, de prescripción adquisitiva de cosas muebles que establece el precepto de continua referencia.

Pues bien, el principio de presunción de inocencia exige ineludiblemente para poder ser desvirtuada la oportuna declaración judicial (sentencia condenatoria), tras haberse seguido un proceso con todas las garantías y en el que haya tenido lugar una prueba suficiente de cargo. En este sentido, la sentencia del Tribunal Constitucional nº 45/1997, de 11 de marzo, fundamento jurídico cuarto, declara lo siguiente:

*"Por lo que se refiere en concreto al derecho a la presunción de inocencia, hemos declarado en STC 120/1994 que «la presunción de inocencia sólo se destruye cuando un Tribunal independiente, imparcial y establecido por la Ley declara la culpabilidad de una persona tras un proceso celebrado con todas las garantías (art. 6.1y 2 del Convenio Europeo de 1950), al cual se aporte una suficiente prueba de cargo», de suerte que la presunción de inocencia es un principio esencial en materia de procedimiento, que opera también en el ejercicio de la potestad administrativa sancionadora (SSTC 73/1985 y 1/1987)..."*

Más particularmente, y puesto que, como se viene reiterando, son conductas constitutivas de ilícito penal las que están en la base de la regla del artículo 1.956 del Código Civil, debe tenerse en cuenta la doctrina recogida en la sentencia del Tribunal Constitucional nº 3/1990, de 15 de enero, en cuyo fundamento jurídico 1 se dice lo siguiente:

*"Bien es sabido que, conforme a reiterada doctrina de este Tribunal -SSTC 31/1981, 101/1985, 80/1986, 82/1988, 254/1988 y 44/1989, entre otras-, la presunción de inocencia exige para poder ser desvirtuada una actividad probatoria de cargo producida con las debidas garantías procesales y de las que pueda deducirse razonada y razonablemente la culpabilidad del acusado,*

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 26 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

4

debiendo, en principio, realizarse tal actividad probatoria, para dar cumplimiento a los principios de oralidad, inmediación y contradicción que presiden el proceso penal, en el acto del juicio oral, sin que, de otro lado, los órganos judiciales puedan formar su convicción acudiendo a atestados policiales realizados con anterioridad a la fase sumarial, ya que gozan solamente del valor de una denuncia, excepto cuando incorporan pruebas preconstituidas debidamente realizadas y reproducidas".

Finalmente, y como quiera que en el caso de que se trata el efecto jurídico que se anuda a la comisión de una infracción penal, cual es la aplicación del especial y muy gravoso régimen de prescripción (lo que, obviamente, dificulta la adquisición de domino por usucapión), es civil, resulta necesario indicar que no por ello puede prescindirse de la aplicación del principio constitucional del principio de inocencia y de las exigencias que comporta, ya que la funcionalidad de este principio se extiende a otros ámbitos distintos del sancionador. Así, la sentencia del Tribunal Constitucional nº 52/1989, de 22 de febrero, en su fundamento jurídico sexto, declara lo siguiente:

"La posibilidad de extender la presunción de inocencia fuera del ámbito de la jurisdicción penal ha sido reconocida en diversas ocasiones por este Tribunal -SSTC 13/1982, de 1 de abril; 24/1984, de 23 de febrero, y 36/1985, de 8 de marzo, entre otras-, quien ha puesto de manifiesto que dicho derecho fundamental no puede entenderse reducido al estricto campo del enjuiciamiento de conductas presuntamente delictivas, sino que ha de referirse también a la adopción de cualquier resolución, tanto administrativa como jurisdiccional, relativa a la condición o conducta de las personas, de cuya apreciación se derive un resultado sancionatorio o limitativo de sus derechos. No obstante, de ello no puede deducirse la aplicación del mencionado derecho fundamental, sin más, a todos los procesos civiles, y a la apreciación de la prueba en ellos, como parece entender el recurrente en la demanda, pues la extensión del mismo al ámbito probatorio civil y, en consecuencia, la posibilidad de su enjuiciamiento en vía de amparo constitucional, sólo procede en supuestos excepcionales y tras ponderar las singularidades que en cada caso concurran".

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

00014

5

-II-

De lo expuesto en el anterior apartado se desprende que para que resulte de aplicación el artículo 1956 del Código Civil es requisito necesario que previamente se haya tramitado un proceso penal con todas las garantías, en el que el acusado haya podido conocer el concreto delito que se le imputa y utilizar las alegaciones y los medios de prueba pertinentes para su defensa, y que dicho proceso haya concluido mediante una sentencia condenatoria firme y no susceptible de recurso, puesto que lo contrario vulneraría el derecho fundamental a la tutela judicial efectiva y le causaría una evidente indefensión.

Debe recordarse que el derecho fundamental a la presunción de inocencia se establece, como se ha indicado, en el inciso final del párrafo 2 del artículo 24 de la Constitución Española, y no puede interpretarse de forma aislada a lo que dispone el resto del precepto, que es del siguiente tenor literal:

*"1. Todas las personas tienen derecho a obtener la tutela efectiva de los jueces y tribunales en el ejercicio de sus derechos e intereses legítimos, sin que, en ningún caso, pueda producirse indefensión.*

*2. Asimismo, todos tienen derecho al Juez ordinario predeterminado por la ley, a la defensa y a la asistencia de letrado, a ser informados de la acusación formulada contra ellos, a un proceso público sin dilaciones indebidas y con todas las garantías, a utilizar los medios de prueba pertinentes para su defensa, a no declarar contra sí mismos, a no confesarse culpables y a la presunción de inocencia".*

Debe destacarse que el artículo 1956 del Código Civil apenas ha sido aplicado en el Derecho español por el orden jurisdiccional civil, siendo así que la sentencia del Tribunal Supremo español de 15 de julio de 2004 (RJ 2004\4209), que se cita por la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017, se dictó precisamente por la Sala de lo Penal de dicho Tribunal Supremo, en un asunto en el que impuso una condena por un delito de estafa y en el que aplicó el citado artículo 1956 del Código Civil al tratar la cuestión de la responsabilidad civil derivada del delito.

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

M.ª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195                          1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 28 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

6

En dicha sentencia el Alto Tribunal considera efectivamente que resulta aplicable el artículo 1956 del Código Civil (frente a las alegaciones de la acusada, que invocaba que no estaba obligada a devolver el dinero estafado por haberlo adquirido en virtud de la figura de la usucapión de bienes muebles prevista en el artículo 1955 del Código Civil), y establece que "en estos casos los plazos para la usucapión ordinaria o extraordinaria de cosas muebles han de comenzar a computarse una vez transcurrido el plazo para la prescripción penal y, además, el relativo a la prescripción extintiva civil, teniendo en cuenta que la acción correspondiente habría de ser la del artículo 1092, es decir la específica derivada del delito o falta cometidos, la de 15 años del artículo 1964 conforme a lo que acabamos de exponer. Esto es, el plazo de usucapión extraordinaria para los bienes muebles, fijado en seis años por el párrafo 2º del artículo 1955, sólo puede comenzar a computarse cuando hayan transcurrido sucesivamente otros dos: el correspondiente del artículo 131 CP para la prescripción del delito (los cinco años previstos para "los restantes delitos graves") y los quince antes referidos del artículo 1964. Total, 26 años (...)".

Pero dichas argumentaciones del Tribunal se contienen en el fundamento jurídico cuarto y último de la sentencia, en sede de responsabilidad civil derivada del delito, habiendo dedicado los tres fundamentos jurídicos anteriores, que constituyen la parte principal de la sentencia, a examinar la responsabilidad criminal de la acusada, a la que declara autora de un delito de, estafa, confirmando la pena de dos años y medio de prisión que le había sido impuesta por la sentencia del Tribunal de instancia. Por tanto, lo que se desprende de dicha sentencia es precisamente que la aplicación del artículo 1956 del Código Civil exige la existencia de una previa declaración judicial firme del orden jurisdiccional penal que condene como criminalmente responsable de un delito al usucapiente que pretende invocar los plazos del artículo 1955 para adquirir por prescripción con fundamento en la posesión obtenida precisamente por razón del hecho delictivo.

Es irrelevante a estos efectos que el ilícito penal consista en el encubrimiento de un delito de robo o de hurto (según la dicción literal del artículo 1956), en un delito patrimonial análogo como el de estafa {por el que condena la sentencia de 15 de julio de 2004), o de un delito autónomo de receptación, que la jurisprudencia considera análogo al encubrimiento.

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

00016

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

7

En efecto, la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017 señala que *"El Tribunal Supremo de España reconoció también la posibilidad de intercambiar los delitos de receptación de bienes robados y de ser un encubridor del hecho en la sentencia 77/2004, de 2 de enero (RJ 2004\485)"*. En dicha sentencia del Tribunal Supremo español se recoge la doctrina previamente sentada en la sentencia de S de julio de 1993 (RJ 1993\5881), también citada por el Tribunal de Estados Unidos, que había establecido que *"nos encontramos ante dos delitos homogéneos, con identidad de derechos protegidos y de hecho juzgados, y como la condena impuesta era menor (que la del delito establecido en la acusación) está claro que el principio de la acusación (de aviso justo) fue legalmente respetado"*.

Pero, siendo ello cierto, no lo es menos que las dos citadas sentencias dictadas por la Sala de lo Penal del Tribunal Supremo español están refiriéndose a supuestos en los que en todo caso se ha dictado una sentencia penal que condena al acusado por un delito, por más que en un inicio se le acusara por un delito distinto. Es decir, la aludida homogeneidad entre delitos (aquél por el que se acusa y aquél por el que finalmente se condena) no excluye la necesidad de que en ambos casos exista una sentencia firme que contenga dicha condena.

La propia sentencia de 21 de enero de 2004 establece expresamente que "*la proscripción de la indefensión constituye el verdadero fundamento de los límites que el principio acusatorio impone al Tribunal sentenciador en estos casos en que hay acusación por un delito y condena por otro*", refiriéndose a un caso en el que, aun tratándose de delitos distintos pero homogéneos, cuando menos hay una acusación formal y una posterior condena por un tribunal sentenciador. Si en ese supuesto el Tribunal establece como límite la proscripción de indefensión, qué duda cabe de que dicha indefensión se produce, con manifiesta infracción del principio acusatorio, en aquellos casos en los que no sólo no hay condena penal, sino ni que ni siquiera existe un proceso abierto con una acusación formal inicial de la que pueda defenderse la persona a la que se le imputa el ilícito criminal.

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

00017

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
18 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 30 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

8

Debe destacarse en este punto que la condena penal (sea por encubrimiento de un robo o hurto cometido por un tercero, sea por la autoría de un delito autónomo como el de receptación) debe referirse directa y personalmente al actual poseedor de la cosa mueble que pretende invocar la usucapión, por desprenderse así del tenor literal del artículo 1956 del Código Civil ("*las cosas muebles hurtadas o robadas no podrán ser prescritas por los que las hurtaron o robaron, ni por los cómplices o encubridores ...*"), y porque otra interpretación más extensiva violaría de nuevo los derechos fundamentales establecidos en el artículo 24 de la Constitución Española.

En conclusión, dado que la premisa de la aplicación de la regla especial de prescripción contenida en el artículo 1956 del Código Civil es la existencia de una conducta constitutiva de un ilícito criminal imputable directamente al poseedor de la cosa mueble, que, como ha quedado dicho y por respeto al derecho constitucional a la tutela judicial efectiva y a la presunción de inocencia, debe haber sido declarada por sentencia penal firme, no habiéndose producido el supuesto de hecho habilitante de la aplicación de la citada norma especial no existe razón suficiente que justifique el desplazamiento de la aplicación de la norma general de usucapión de bienes muebles prevista en el artículo 1955 del Código Civil, que establece en su párrafo segundo que se prescribe el dominio de los bienes muebles por la posesión no interrumpida de seis años, sin necesidad de ninguna otra condición.

- III -

Sentado que la aplicación del artículo 1956 del Código Civil exige la previa existencia de una sentencia penal que declare que el prescribiente es responsable criminalmente en la forma indicada en el apartado anterior de este informe, debe destacarse que los delitos que se han citado tienen un plazo de prescripción de cinco años desde la comisión del hecho presuntamente delictivo conforme al Derecho Penal sustantivo español. Así se reconoce en la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS :

SOCIEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurado de INGLÉS
N. c .115

1 8 SEP 2017

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

9

de 2017, que señala que *"Para el delito de encubrimiento y el delito de recibir bienes robados, los dos delitos que los Cassirer sostienen que la CTB cometió al comprar la pintura del barón en 1993, el período de prescripción penal es de cinco años, los artículos 30, 113, 546 (bis) (a) del Código Penal de 1973 y los artículos 131, 298 del Código penal de 1995".*

Dado que el artículo 130. 1 del Código Penal de 1995 establece que *"la responsabilidad criminal se extingue: 6º Por la prescripción del delito"* (en idéntico sentido se pronunciaba el artículo 112.1. 6º del Código Penal de 1973), cualquier procedimiento penal que pretendiera iniciarse hoy para perseguir unos delitos ya prescritos habría de terminar necesariamente con un sobreseimiento o, en su caso, con una sentencia absolutoria.

Tampoco puede tenerse en consideración el plazo de prescripción de la pena a que se refiere el artículo 1956 del Código Civil, ya que es principio básico del Derecho español el de nulla poena sine crimine, de modo que, a falta de declaración judicial de la existencia de un delito no cabe hablar de la existencia de una pena, ni, por tanto, de la prescripción de ésta.

Por último, tampoco es posible tener en cuenta el plazo de prescripción de la acción para exigir la responsabilidad civil derivada del delito a que también se refiere el artículo 1956 del Código Civil. Dicho plazo, que la resolución del tribunal estadounidense fija en quince años con cita de jurisprudencia española, exige la previa existencia de una sentencia penal que declare la existencia de un delito del que habría de nacer la obligación en que consiste la responsabilidad civil.

El artículo 1089 del Código Civil enumera las fuentes de obligaciones civiles en el Derecho español, estableciendo que *"las obligaciones nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".* Más adelante, el artículo 1092 dispone que *"Las obligaciones civiles que nazcan de los delitos o faltas se regirán por las disposiciones del Código Penal"*, dedicando a continuación un artículo diferente a las obligaciones *"que se deriven de actos u omisiones en que intervenga culpa o negligencia no penadas por la ley"*, que quedarán sometidas

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

00019

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
Nº 4285

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 32 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

10

a las disposiciones contenidas en los artículos 1902 y siguientes del propio Código Civil.

Pues bien, el artículo 1956 del Código Civil alude específicamente a la *"acción para exigir la responsabilidad civil, nacida del delito o falta"*, es decir, exclusivamente a la prevista en el artículo 1092 antes transcrito, que a su vez se remite a lo que disponga el Código Penal.

El artículo 109 del Código Penal de 1995, siguiendo la tradición penalista española, establece que *"la ejecución de un hecho descrito por la ley como delito obliga a reparar, en los términos previstos en las leyes, los daños y perjuicios por él causados"*, señalando a continuación el artículo 110 que *"la responsabilidad establecida en el artículo anterior comprende: 1º La restitución. 2º La reparación del daño. 3º La indemnización de perjuicios materiales y morales"*.

La acción para exigir la responsabilidad civil derivada del delito se puede ejercer en el proceso penal de forma acumulada a la acción criminal, o reservarse para ejercerla ante la jurisdicción civil, dado que el artículo 109.2 establece que *"el perjudicado podrá optar, en todo caso por exigir la responsabilidad civil ante la jurisdicción Civil"*. Pero en este segundo caso es de todo punto imprescindible, para que sea apreciada la existencia de dicha responsabilidad civil, la previa condena penal que declare la comisión de un delito y su autoría.

Así se desprende claramente de lo establecido por la Sala de lo Civil del Tribunal Supremo en su sentencia de 20 de septiembre de 1996 (RJ 1996\6818):

*"(...) ha de confirmarse, pues, la doctrina de la Audiencia de que ejercitada la acción de responsabilidad civil «ex delicto» ninguna otra puede ser estudiada, debiendo desestimarse por no existir sentencia penal condenatoria, presupuesto indeclinable para el nacimiento de aquélla. Es claro que cuando los hechos dan lugar a actuaciones penales éstas paralizan la posibilidad de actuar en vía civil o el proceso que haya comenzado, al imponerlo así el art. 114 de la LECrim, hasta que recaiga sentencia firme, obligando tal precepto a la jurisprudencia a extender*

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

LEEDAD VALCARCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 33 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

11

*la apertura de la vía civil a los supuestos de sobreseimiento libre e incluso a los de sobreseimiento provisional o al archivo de diligencias (SS. 16 noviembre 1985 20 octubre 1987, 30 noviembre 1989, o 20 enero 1992), pero en tal caso la acción civil que se ejercite ha de ser la del art. 1902, que prescribe al año conforme al art. 1968, mas no la «ex delicto» que requiere la existencia de condena así declarándolo, condena que existe en los supuesto de indulto o de muerte del reo, pero no cuando se produce el sobreseimiento o el archivo sin previa condena, ya que antes de la condena pervive la presunción de inocencia".*

Esta doctrina jurisprudencial de la Sala de lo Civil del Tribunal Supremo se ha mantenido invariablemente en sentencias posteriores, como la de 23 de enero de 2009 (RJ 2009\1269), que dispuso lo siguiente:

Debe señalarse, en primer término, que no cabe basar la acc1on en la existencia de responsabilidad civil "ex delicto", como se hace en la demanda, sin que exista una previa sentencia que en el orden penal declare la existencia del hecho delictivo. Así se recoge, entre otras, en la Sentencia de esta Sala de 31 de enero de 2004, cuando razona que «para aplicar la acción "ex delicto", se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados (Sentencias de 26-10-1993, 10-5-1994, 19-5-1997, 14-4-1998 y 20-11-2001)»

Y de forma más reciente, la sentencia de 27 de marzo de 2015 (RJ 2015\2688) confirma la misma línea jurisprudencial:

*"La doctrina más reciente de esta Sala viene expresada en la sentencia de la que dicho voto trae causa, citada en la de 23 de enero 2009, cuando razona que «para aplicar la acción "ex delicto", se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción*

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4385

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 34 of 38 | Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

12

civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados (Sentencias de 26-10-1993, 10-5-1994, 19-5-1997, 14-4-1998 y 20-11-2001)», lo que no ocurre en este caso en que el demandado no ha sido condenado en la causa penal que fue archivada por denuncia sobrevenida del acusado."

Es, por tanto, requisito inexcusable para apreciar la existencia de una acción para exigir la responsabilidad civil derivada del delito (y, por ende, para valorar el período de prescripción de la misma), la existencia de una previa sentencia condenatoria penal.

De hecho, las dos sentencias que se citan en la resolución de Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017 para fundamentar que el plazo de prescripción de la acción para exigir la responsabilidad civil derivada del delito a que se refiere el artículo 1956 del Código Civil es de quince años conforme al artículo 1964 del mismo Código[1] son sentencias que parten de la premisa de la previa existencia de una condena penal.

Así, la sentencia de 7 de enero de 1982 (RJ 1982\184), que efectivamente considera que la acción para exigir la responsabilidad civil derivada del delito tiene un plazo de prescripción de quince años, se dicta por la Sala

---

[1] La redacción del artículo 1964 del Código Civil fue modificada por la disposición final primera de la Ley 42/2015, de 5 de octubre, de reforma de la Ley 1/2000, de 7 de enero, de Enjuiciamiento Civil («B.O.E.» 6 octubre), que entró en vigor el 7 octubre 2015. En virtud de la reforma, el plazo de prescripción de las acciones personales que no tienen establecido un plazo especial se ha reducido de quince a cinco años:

"Artículo 1964
1.( ...).

2. Las acciones personales que no tengan plazo especial prescriben a los cinco años desde que pueda exigirse el cumplimiento de la obligación. En las obligaciones continuadas de hacer o no hacer, el plazo comenzará cada vez que se incumplan".

La disposición transitoria quinta de la Ley 42/2015, de 5 de octubre, establece que el tiempo de prescripción de las acciones personales que no tengan señalado término especial de prescripción, nacidas antes de la fecha de su entrada en vigor, 7 de octubre de 2015, se regirá por lo dispuesto en el artículo 1939 del Código Civil:

"Artículo 1939

La prescripción comenzada antes de la publicación de este código se regirá por las leyes anteriores al mismo; pero si desde que fuere puesto en observancia transcurriese todo el tiempo en él exigido para la prescripción, surtirá ésta su efecto, aunque por dichas leyes anteriores se requiriese mayor lapso de tiempo". .

Como consecuencia de la citada reforma, en la actualidad el plazo de la acción para exigir la responsabilidad civil derivada del delito es de cinco años y no de quince, sin perjuicio de la norma especial del artículo 1939 para los supuestos de acciones nacidas antes de la entrada en vigor de la reforma.

En el caso objeto de informe no se tienen cuenta el nuevo régimen de prescripción de las acciones civiles derivadas del delito puesto que se parte de la premisa de que dicha acción no ha nacido en la medida en que no ha habido una previa sentencia penal condenatoria que declare la existencia de un delito y su autoría.

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

13

de lo Civil del Tribunal Supremo en un asunto en el que previamente se había tramitado un proceso penal que había finalizado por sentencia condenatoria. Así se hace constar expresamente en los antecedentes fácticos de la sentencia:

*"CONSIDERANDO. Que, para un adecuado enjuiciamiento del presente recurso, procede establecer los siguientes antecedentes que han sido admitidos por las partes o declarados probados por la Sala de instancia o resultan del examen de las actuaciones: A) en accidente de circulación (...) resultó muerto aquél; siguiéndose Diligencias preparatorias resueltas por sentencia recaída en el Juzgado de Instrucción de Algeciras en fecha 11 julio 1975, declarada firme el 1 septiembre siguiente, en la que se apreció la existencia de un delito de imprudencia simple con infracción de reglamentos y resultado de muerte de que se conceptuó responsable, en el concepto de autora, a la demandada María Teresa C.T., concretándose, aparte de imponerle las penas correspondientes al delito, entre otras indemnizaciones, la pertinente al óbito de Antonio V.V.(...)".*

Por otro lado, en la sentencia de 15 de julio de 2004 (RJ 2004\4209) la Sala de lo Penal del Tribunal Supremo aplica el artículo 1956 del Código Civil para enervar la usucapión del artículo 1955 que había alegado la acusada con el fin de evitar la devolución de las cantidades que se le reclamaban, pero lo hace al final de la sentencia, en sede de responsabilidad civil, después de haber analizado la responsabilidad penal de la acusada y de haber confirmado la sentencia dictada por el tribunal de instancia, que la había condenado "como autora criminalmente responsable de un delito continuado de estafa, (...) a la *pena de dos años y seis meses de prisión(...)".*

En definitiva, debe concluirse que en los casos en los que ha prescrito la acción penal para perseguir un presunto delito (recordemos que en el supuesto objeto de informe dicho plazo es de cinco años), no puede tenerse en consideración el plazo de prescripción de quince años de la

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 36 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

14

acción para exigir la responsabilidad civil derivada de ese delito, puesto que sin la previa declaración del delito picha acción civil no llega a nacer.

En estos supuestos resulta de aplicación la doctrina establecida en la sentencia del Tribunal Supremo (Sala de lo Civil) de 31de enero de 2004 (RJ 2004\444) que dispone lo siguiente:

*"No estamos en presencia de una acción «ex delicto» del artículo 1092 que se integró en la demanda, ya que no se da ilícito penal, pues recayó sentencia absolutoria que hizo desaparecer los hechos denunciados, al decretar su extinción, por aplicación del instituto de la prescripción, y con ello la posible responsabilidad penal respecto a los mismos, lo que no autoriza la aplicación del artículo 1092 en relación al1964, ya que la acción no surge del delito o falta sino más bien de los hechos, que actúan como configurantes. Para aplicar la acción «ex delicto», se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados (Sentencias de 26-10-1993 [sic], 10-5-1994,19-5-199,14-4-199 y 20-11-2001)".*

Este criterio jurisprudencial sigue siendo a fecha de hoy el aplicado por los tribunales españoles, pudiendo destacarse la sentencia de la Audiencia Provincial de Navarra de 12 de diciembre de 2014 (AC 2014\255) que, además de transcribir la citada sentencia del Tribunal Supremo de 31de enero de 2014, reitera que "la jurisprudencia establece que no hay acción "ex delicto" cuando la sentencia penal es absolutoria por prescripción del delito y, por tanto, la acción civil está sometida a los plazos ordinarios de prescripción", excluyendo la prescripción de quince años del artículo 1964 del Código Civil en relación con el artículo 1092, y considerando que en este caso "sólo podía ejercitarse la acción de responsabilidad civil extracontractual del artículo 1902 CC", cuyo plazo de prescripción es el de un año del artículo 1968.2.

En atención a todo lo expuesto, esta Abogacía del Estado somete a su

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : F

00024

M.ª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 8 SEP 2017

Case: 15-55550, 09/18/2017, ID: 10585679, DktEntry: 138-2, Page 37 of 38

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

15

consideración la siguiente:

## CONCLUSIÓN

La aplicación de la regla especial de prescripción adquisitiva que establece el artículo 1956 del Código Civil español exige inexcusablemente que, tras haberse seguido un proceso con todas las garantías y en el que haya tenido lugar una prueba suficiente de cargo, se haya dictado sentencia firme que declare la existencia de una conducta constitutiva de un ilícito penal por razón de la cual condene a quien pretende adquirir por usucapión con fundamento en la posesión resultante de dicho ilícito.

**Madrid a, 13 de septiembre de 2017**
**LA ABOGADA DEL ESTADO-JEFE**

**María del Carmen Acedo Grande**

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

CSV : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29
DIRECCIÓN DE VALIDACIÓN : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm
FIRMANTE(1) : MARIA DEL CARMEN ACEDO GRANDE | FECHA : 13/09/2017 15:03 | NOTAS : SOLEDAD VALCÁRCEL CONDE

Traductora-Intérprete Jurada de INGLÉS

.00025

1 8 SEP 2017

16

**SR. SUBSECRETARIO DE EDUCACIÓN, CULTURA Y DEPORTE**

MINISTERIO
DE EDUCACIÓN,
CULTURA Y DEPORTE

Código seguro de Verificación : GEN-9d47-80a2-03a7-4516-baee-53d6-31a1-ea29 | Puede verificar la integridad de este documento en la siguiente dirección : https://sede.administracion.gob.es/pagSedeFront/servicios/consultaCSV.htm

00026

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 6125

18 SEP 2017

# ATTCHMENT 2

1  Amelia L. B. Sargent (Bar No. 280243)
2  asargent@willenken.com
   WILLENKEN WILSON LOH & DELGADO LLP
3  707 Wilshire Blvd., Suite 3850
4  Los Angeles, California 90017
   Telephone:  (213) 955-9240
5  Facsimile:  (213) 955-9250

6
   Attorneys for
7  THE KINGDOM OF SPAIN

8                   UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10

11  | DAVID CASSIRER, AVA | Case No.: 2:05-cv-03459-JFW-E |
12  | CASSIRER, and UNITED JEWISH | |
    | FEDERATION OF SAN DIEGO | **NOTICE OF UNOPPOSED** |
13  | COUNTY, a California non-profit | **MOTION AND MOTION FOR** |
14  | corporation, | **LEAVE TO FILE BRIEF OF** |
    | | **AMICUS CURIAE THE KINGDOM** |
15  | Plaintiffs, | **OF SPAIN IN SUPPORT OF** |
16  | | **DEFENDANT THYSSEN-** |
17  | v. | **BORNEMISZA COLLECTION** |
    | | **FOUNDATION** |
18  | THYSSEN-BORNEMISZA | |
19  | COLLECTION FOUNDATION, an | |
    | agency or instrumentality of the | |
20  | Kingdom of Spain, | Assigned to the Hon. John F. Walter |
21  | Defendant. | |
22
23
24
25
26
27
28

─────────────────────────────────────────────
UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

146865.2

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that proposed *Amicus Curiae* The Kingdom of

3 | Spain will, and hereby does, move for an order granting leave to file the attached

4 | *amicus curiae* brief, consisting of the official statement of The Kingdom of Spain

5 | on the meaning and interpretation of the provisions of Spanish law at issue in this

6 | suit. As set forth in the concurrently filed Declaration of Amelia L. B. Sargent,

7 | Plaintiffs do not oppose this motion.

8 |      This motion is based upon this Notice, the supporting Memorandum of

9 | Points and Authorities, the concurrently filed Declaration of Amelia L. B. Sargent,

10 | the attached *amicus curiae* brief, any matters of which the Court may take judicial

11 | notice, the entire record on file in this action, and upon any other or further papers

12 | filed or arguments made in support of the motion.

13 |

14 |                    Respectfully submitted,

15 | Dated: November 27, 2018     WILLENKEN WILSON LOH &

16 |                    DELGADO LLP

17 |

18 |                    By: */s/ Amelia L. B. Sargent*

19 |                        Amelia L. B. Sargent

20 |                        Attorneys for

                       THE KINGDOM OF SPAIN

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

---

UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

i

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Kingdom of Spain respectfully seeks leave to provide the Court with its view of the foreign law at issue in this case through the attached *amicus* brief consisting of the legal opinion of its Solicitor General Consuelo Castro Rey. Leave should be granted because a "foreign government's submission" of an "official statement on the meaning and interpretation of its domestic law" should be accorded "respectful consideration" by the Courts. *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S.Ct. 1865, 1869 (2018). Plaintiffs have informed the Kingdom of Spain that they do not oppose the motion. Declaration of Amelia L. B. Sargent, ¶ 2 (concurrently filed).

### II.    SPAIN HAS AN INTEREST IN THE CORRECT INTEPRETATION OF ITS LAWS BY FOREIGN COURTS

Spain is a foreign sovereign committed to the rule of law, with an interest in the proper interpretation, application, and enforcement of its civil and criminal laws. The Ministry of Justice is the department of the Spanish Government tasked with, among other things, preparing and implementing the Government's policy for the development of the legal system, including in the fields of criminal, civil, commercial, and procedural law; providing organization and support of the justice system; facilitating international legal cooperation; and appearing as the legal persona of the State. The Solicitor General of Spain advises and advocates the positions of the State, and represents the Kingdom of Spain before the Spanish courts and in international or supranational tribunals, among her other duties.

In *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 862 F.3d 951, 963 (9th Cir. 2017) (*Cassirer III*), the Ninth Circuit analyzed conflict of laws principles to determine that Spanish law governs the question of whether title to the painting, *Rue Saint-Honoré, après-midi, effet de pluie*, by Camille Pissarro, passed to the Thyssen-Bornemisza Collection Foundation (the "Foundation") by

1  acquisitive prescription.  That is, if the Court finds that the owner, Baron Hans

2  Heinrich Thyssen-Bornemisza, lacked good title to the painting when it was sold

3  through his art trust, Favorita Trustees Ltd., to the Foundation in 1993 (a question

4  of Swiss law), the Foundation could nevertheless have acquired good title under

5  Spanish law – specifically Spanish Civil Code art. 1955.  Article 1955 provides

6  that "[o]wnership of movable property prescribes by three years of uninterrupted

7  possession in good faith. Ownership of movable property also prescribes by six

8  years of uninterrupted possession, without any other condition." Art. 1955,

9  Spanish Civil Code.  The Ministry of Justice, as the department whose charge

10  includes the promulgation of Spanish law including the Civil Code, has an interest

11  in ensuring the proper application of Article 1955 in this tribunal.

12       Spain has particular interest because this case involves rights in property,

13  where (1) the transfer between Favorita Trustees and the Foundation took place in

14  Spain, (2) the painting currently resides in Spain, and (3) the Foundation is located

15  in Spain.  This interest is enshrined in the very conflicts of laws analysis the Ninth

16  Circuit applied.  Because "'[i]n contrast to torts, protection of the justified

17  expectations of the parties is of considerable importance in the field of property,'"

18  *Cassirer III*, 862 F.3d at 963 (citing Restatement (Second) of Conflict of Laws §

19  222, cmt. b), Spain has an interest that the justified expectations of the Foundation

20  are protected, as it would of any Spanish resident.  And moreover, "The state

21  where a chattel is situated has *the dominant interest* in determining the

22  circumstances under which an interest in the chattel will be transferred by adverse

23  possession or by prescription." *Id.* (citing Second Restatement, § 246, cmt. a)

24  (emphasis added by Ninth Circuit).

25       Finally, as the Ninth Circuit also recognized, Spain has an additional interest

26  here because the Foundation is an instrumentality of the State itself: "Spain's

27  interest in having its substantive law applied is significant.  In a highly publicized

28  sale, Spain provided TBC public funds to purchase the Collection, including the

---

UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

2

1  Painting.  TBC, an instrumentality of Spain, has possessed the Painting for over

2  twenty years and displayed it in the Museum" dedicated to the Collection.  *Id.*

3  Spain is thus triply interested in the fair and correct application of Spanish

4  acquisitive prescription laws to the Foundation.

5  **III.    THE COURT SHOULD GRANT LEAVE BECAUSE IT MUST**

6  **"CAREFULLY CONSIDER" SPAIN'S VIEWS OF ITS OWN LAWS,**

7  **AND THE ATTACHED AMICUS BRIEF PROVIDES UNIQUE**

8  **INFORMATION TO THE COURT**

9      Federal Rule of Civil Procedure 44.1 allows a Court determining foreign law

10  to consider "any relevant material or source . . . whether or not submitted by a

11  party."  Fed. R. Civ. Proc. 44.1.  As recognized by the United States Supreme

12  Court, "[f]ederal courts deciding questions of foreign law under Rule 44.1 are

13  sometimes provided with the views of the relevant foreign government" through an

14  *amicus* brief.  *Animal Sciences*, 138 S.Ct. at 1973.  Although not bound to adopt

15  those views, the Supreme Court has advised that a federal court "should carefully

16  consider a foreign state's views about the meaning of its own laws."  *Id.*  To follow

17  this guidance, the Court should grant leave for the Ministry to file the attached

18  *amicus* brief.

19      This comports with the general guidance that district courts should accept

20  *amicus* briefs when third-parties have "unique information or perspective" that can

21  aid the Court beyond what the parties themselves can provide.  *NGV Gaming, Ltd.*

22  *v. Upstream Point Molate, LLC*, 355 F.Supp.2d 1061, 1067 (N.D. Cal. 2005).  The

23  Ministry of Justice brings such unique information in the attached brief, which

24  provides a detailed exposition of how the provisions of the Spanish Civil Code at

25  issue here interact with Spanish criminal procedure and Constitutional rights, and

26  thus offers guidance for how a Spanish court would approach the substantive legal

27  issues in this case.

28

---

146865.2

## IV. THE COURT SHOULD ACCORD SIGNIFICANT WEIGHT TO SPAIN'S INTERPRETATION OF ITS OWN LAWS

The United States Supreme Court has recognized the importance of considering a foreign state's views in the spirit of international comity, and has provided guidance to courts weighing those views in the recent decision *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S.Ct. 1865 (2018). *See* 138 S.Ct. at 1873 (citing *Société Nationale Industrielle Aérospatiale v. United States Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 543, and n. 27 (1987)).

In *Animal Sciences*, the United States Supreme Court analogized a foreign government's submissions to "submissions from the States of the United States," noting that "[i]f the relevant state law is established by a decision of 'the State's highest court," that decision is 'binding on the federal courts,'" while "views of the State's attorney general" attract "respectful consideration." *Id.* at 1874. The appropriate weight to accord a foreign government's views "depend upon the circumstances"—including five factors set out by the Supreme Court: "the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions." *Id.* at 1873-1874.

Applying these five factors, the Solicitor General's opinion should be accorded significant weight. First, it is thoroughly reasoned and based on the relevant provisions of the Spanish Constitution and Civil and Criminal Codes, as well as a review of cases from the highest tribunals in the land:  The Constitutional Court (for constitutional issues), and the Civil and Criminal Chambers of the Supreme Court (for civil and criminal issues, respectively).  Those decisions are excerpted at length in the relevant parts in the Solicitor General's opinion for the Court's independent review.

146865.2

1    Second, the context and purpose of the opinion is to construe the application
2  of a narrow provision of Spanish law, Article 1956 of the Spanish Civil Code, in
3  light of the requirements of Spanish criminal procedure and Constitutional rights.
4  This Article provides an exception to the general acquisitive prescription statute in
5  Spanish Civil Code art. 1955 that

6       Title to stolen moveable property may not be obtained through
7       adverse possession by those who stole such property, or by their
8       accomplices or accessories after the fact, unless the felony or
9       misdemeanor or its sentence, and the action to claim civil liability
10      arising therefrom, should have become barred by the statute of
11      limitations.

12  Art. 1956, Spanish Civil Code.

13      The Spanish legal system divides civil and criminal liability determinations
14  into two separate tribunals, and a civil court is not competent to find an individual
15  criminally liable for an action. Instead, any civil liability arising out of a felony or
16  misdemeanor ("ex delicto" civil liability) must be preceded by a non-appealable
17  conviction in the criminal courts. The civil liability referred to in Article 1956 is
18  precisely this type of "ex delicto" liability. Therefore, as the opinion explains in
19  greater detail, Article 1956 cannot apply at all if there has been no conviction
20  determining that the adverse possessor in fact stole the property, or was an
21  accomplice or accessory after the fact. To apply Article 1956 without such a
22  conviction would be a serious violation of the right to the presumption of
23  innocence under Art. 24.2 of the Spanish Constitution 1978, and the ensuing right
24  to due process of law. This is not a mere litigation argument—it is an explanation
25  of how Spanish law operates.

26      The third and fourth factors, transparency of the legal system and authority
27  of the official offering the statement, offer no barrier to deference. There can be no
28  question regarding the "transparency" of the Spanish legal system, and there is no

1    suggestion here that the Spanish legal system lacks such transparency.  And the

2    opinion here is offered by the Solicitor General, a high-ranking official in the

3    Ministry of Justice, whose role—akin to the United States Solicitor General—

4    comprises both advising the State on legal issues, advocating on behalf of the

5    State, and appearing in legal matters where Spain is a Party.

6         Fifth, and finally, this opinion is consistent with Spain's past positions.

7    Most importantly, as the Court itself can see from the citations to direct sources, it

8    is consistent with Spanish law, its Constitution, Codes, and myriad cases decided at

9    the highest tribunals for Civil and Criminal law.  It is also consistent with Spain's

10   prior position in *this* case, the opinion of the Ministry of Education, Culture, and

11   Sport offered in support of the Foundation's Petition for Rehearing En Banc before

12   the Ninth Circuit.  The Ministry of Justice reviewed that opinion, found it a correct

13   statement of Spanish law, and has fully adopted it here.

14   **V.    CONCLUSION**

15        For the foregoing reasons, the Kingdom of Spain respectfully requests the

16   Court grant leave to file the attached *amicus* brief, and accord it the appropriate

17   weight under principles of international comity and the guidance of the U.S.

18   Supreme Court.

19

20                              Respectfully submitted,

21   Dated:  November 27, 2018        WILLENKEN WILSON LOH &
22                                    DELGADO LLP

23

24                              By: */s/ Amelia L. B. Sargent*
25                                   Amelia L. B. Sargent
                                     Attorneys for
26                                   THE KINGDOM OF SPAIN

27

28

---

146865.2

# ATTACHMENT A

1  Amelia L. B. Sargent (Bar No. 280243)
   asargent@willenken.com
2  WILLENKEN WILSON LOH & DELGADO LLP
3  707 Wilshire Blvd., Suite 3850
   Los Angeles, California 90017
4  Telephone: (213) 955-9240
5  Facsimile: (213) 955-9250

6
   Attorneys for
7  THE KINGDOM OF SPAIN

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 | DAVID CASSIRER, AVA               | Case No.: 2:05-cv-03459-JFW-E
12 | CASSIRER, and UNITED JEWISH       |
   | FEDERATION OF SAN DIEGO           | **BRIEF OF AMICUS CURIAE THE**
13 | COUNTY, a California non-profit   | **KINGDOM OF SPAIN IN**
   | corporation,                      | **SUPPORT OF DEFENDANT**
14 |                                   | **THYSSEN-BORNEMISZA**
15 |            Plaintiffs,            | **COLLECTION FOUNDATION**
16 |                                   |
17 | v.                                |
18 | THYSSEN-BORNEMISZA                | Assigned to the Hon. John F. Walter
19 | COLLECTION FOUNDATION, an         |
   | agency or instrumentality of the  |
20 | Kingdom of Spain,                 |
21 |                                   |
   |            Defendant.             |
22

23

24

25

26

27

28

# I.   **INTRODUCTION**

The Kingdom of Spain, through its Solicitor General Consuelo Castro Rey, hereby submits this official legal opinion regarding whether Article 1956 of the Spanish Civil Code—which extends the adverse possession period for moveable property possessed by the person who stole such property, or by their accomplices or accessories after the fact—must be preceded by a non-appealable conviction of that relevant crime in the Spanish criminal courts.  The answer to this question is yes.  Because the answer is yes, it follows that Article 1956 cannot be applied to the Foundation.  This Opinion should be accorded significant weight.  *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S.Ct. 1865, 1874-75 (2018).

The Kingdom of Spain is a foreign sovereign with an interest in the proper interpretation, application, and enforcement of its civil and criminal laws.  Its interest in this matter has been set forth fully in the concurrently filed Motion for Leave.  No portion of this brief was authored by any party or by counsel for any party in this matter.  No one other than the Kingdom of Spain and its counsel made any monetary contribution intended to fund the preparation or submission of the brief.

# II.   **SUMMARY OF ATTACHED LEGAL OPINION**

The Opinion of the Solicitor General consists of three sections.  Section One explains that Article 1956 implicates Spanish criminal law, and therefore requires the application of fundamental constitutional rights and protections such as the presumption of innocence and criminal due process.  Section Two sets forth how the application of Article 1956 by the Spanish Supreme Court demonstrates the need for a prior criminal conviction.  Section Three explains that Article 1956's reference to "civil liability" does not obviate the need for a criminal conviction because it refers only to "ex delicto" civil liability—that is, civil liability arising from a criminal conviction.  A summary of the Opinion is included below; the full

---

BRIEF OF AMICUS CURIAE THE KINGDOM OF SPAIN

1

1 Opinion of The Kingdom of Spain, followed by a certified translation, is attached
2 as Attachment 1.[1]

3    **A.    Section I explains that because Article 1956 implicates Spanish**
4         **criminal law, it requires the application of the fundamental**
5         **Constitutional rights to the presumption of innocence and due**
6         **process of law.**

7 Roman law provided the maxim, *possessio nec vi, nec clam, nec precario*:
8 Possession must be without violence, without secrecy, and as of right, to be valid.
9 Op. at 15. Violence, such as theft, prevented valid possession, and thus (as has
10 been adopted into U.S. jurisprudence), a thief could not pass good title to even a
11 good faith purchaser of stolen goods.

12 In Spanish law, however, as in many civil law jurisdictions, there is a
13 recognition that rights in moveable property must eventually be settled, even if a
14 crime has in the past been committed. Therefore, Spain has adopted laws
15 regulating the concept of adverse possession for moveable property, including
16 Article 1955 of the Spanish Civil Code, that "[o]wnership of movable property
17 prescribes by three years of uninterrupted possession in good faith. Ownership of
18 movable property also prescribes by six years of uninterrupted possession, without
19 any other condition." Art. 1955, Spanish Civil Code. And Spanish law even
20 provides that a thief, or his or her accomplice or accessory after the fact, may
21 eventually obtain good title to the moveable property they stole—but only after a
22 much longer passage of time set out in Article 1956:

23         Title to stolen moveable property may not be obtained through
24         adverse possession by those who stole such property, or by their
25         accomplices or accessories after the fact, unless the felony or

26

27 ───────────────
28 [1] Citations to the Opinion ("Op.") refer to the certified translation, paginated in
   the lower right-hand corner.

147110.1

1    misdemeanor, or its sentence and the action to claim civil liability

2    arising therefrom, should have become barred by the statute of

3    limitations.

4  Thus, Article 1956 provides the appropriate calculation of the length of time

5  required to elapse when a person convicted of a crime against property seeks to

6  possess that property adversely.

7        Article 1956 applies only to those *convicted* of a crime against property.

8  The requirement of a conviction is made clear by the plain language of the statute;

9  as the Opinion states: "Article 1956 is based on criminal conduct[.]"  Op. at 16.

10  Because it is premised on criminal conduct, a non-appealable conviction is

11  required prior to application of the statute in order to ensure that the fundamental

12  right to the presumption of innocence is protected.  Article 24.2 of the Spanish

13  Constitution (1978) provides that "everyone has the right . . . to not admit guilt and

14  to the presumption of innocence."  The Spanish Constitutional Court has ruled that

15  the presumption of innocence is only overcome "when an independent, impartial

16  Tribunal that has been established by Law declares the guilt of a person after a

17  proceeding conducted with full due process of law . . . in which sufficient evidence

18  for the prosecution is presented."  Op. at 16 (quoting Spanish Constitutional Court

19  Judgment No. 45/1997 of 11 March).  The specific requirements of Spanish

20  criminal due process are set forth further in the Opinion and in subsequent Spanish

21  Constitutional Court judgments.  Op. at 17 (citing Spanish Constitutional Court

22  Judgment No. 3/1990, of 15 January).

23        Critically, the fundamental right to the presumption of innocence extends to

24  "civil effect[s]" of criminal offenses, including the application of Article 1956.

25  The Spanish Constitutional Court has recognized that the presumption of

26  innocence does not only apply to "proceedings involving alleged criminal conduct

27  [*conductas presuntamente delictivas*]," but "must also apply to the issuance of any

28  . . . judicial ruling relating to a persons' . . . conduct [*conducta*], the determination

1  of which results in a sanction or a limitation of a person's rights." Op. at 17 (citing

2  Spanish Constitutional Court Judgment No. 52/1989, of 22 February). Article

3  1956 is, as the Opinion previously stated, "based on *criminal conduct* [*una*

4  *conducta delictiva*]," Op. at 16 (emphasis added), and limits the rights of a person

5  to acquire property under adverse possession. Thus, the Opinion concludes that

6  this "special and very burdensome . . . rule" set forth in Article 1956 may only

7  apply when the right to the presumption of innocence has been overcome with full

8  due process of law.[2] Op. at 17.

9  **B.    Section II sets forth how the application of Article 1956 by the**

10     **Spanish Supreme Court demonstrates the need for a prior**

11     **criminal conviction.**

12      Section Two begins by stating the conclusion from Section I: "that for art.

13  1956 of the Civil Code to apply, there must have previously been a criminal

14  proceeding with full due process of law, in which the defendant was informed of

15  the specific charges against him or her, the defendant was able to use the relevant

16  pleadings and evidence for his or her defense, and that ended in a non-appealable

17  conviction." Op. at 17. To do otherwise would violate the defendant's

18  fundamental constitutional rights—not only the right to the presumption of

19  innocence (set forth in Section I), but also the right to "effective protection [of due

20  process] from judges and the courts" and the "right to a legal defense." Op. at 17-

21  18.

22      The Spanish Supreme Court case cited by the Ninth Circuit itself in *Cassirer*

23  *v. Thyssen-Bornemisza Collection Foundation*, 862 F.3d 951, 963 (9th Cir. 2017)

24  (*Cassirer III*), had handed down a non-appealable conviction before applying

25  _____

26  [2]  This is different from the regime provided for in many U.S. statutes, where civil
27     liability for criminal conduct may attach under the "preponderance of the
     evidence" standard, even if criminal liability cannot be proven to the higher
28     "reasonable doubt" standard.

147110.1

1  Article 1956. As noted in the Opinion, Article 1956 is rarely applied by civil

2  courts. Instead, it is usually applied by the criminal courts after a conviction is

3  obtained, when those courts deal with concurrent questions of civil liability arising

4  from the offense. Thus, as the Solicitor General opines, in the opinion of the

5  Criminal Chamber of the Spanish Supreme Court of 15 July 2004 (RJ 2004/4209)

6  cited in *Cassirer III*, "the previous three legal grounds, which constitute the main

7  part of the judgment, [examine] the defendant's criminal liability. [. . .] Thus, it is

8  clear from this judgment that for art. 1956 of the Spanish Civil Code to apply, there

9  must have previously been a non-appealable judicial ruling in the criminal

10 jurisdiction that convicts the adverse possessor as criminally liable for an offense"

11 by which he obtained the property he is seeking to obtain. Op. at 18.

12      Even if one could sustain that receipt of stolen property and being an

13 accessory after the fact to robbery are interchangeable in Spanish criminal law—

14 something the Ninth Circuit discussed—this distinction would be irrelevant. Op. at

15 18-19. A non-appealable conviction of some crime against the desired property is

16 required. This judgment must "refer directly and personally to the current

17 possessor of the moveable property who is seeking to claim adverse possession."

18 Op. at 18. Absent such a judgment, "the enabling fact for the application of the

19 aforementioned special rule," the three or six-year time limit in Article 1955

20 applies. Op. at 19.

21      **C.    Section III explains that Article 1956's reference to "civil**

22           **liability" does not obviate the need for a criminal conviction**

23           **because it refers only to "ex delicto" civil liability—that is, civil**

24           **liability arising from a criminal conviction.**

25      As emphasized in the prior two Sections, without a criminal conviction,

26 Article 1956 cannot apply at all. Section Three of the Opinion further explicates

27 that, without this key "enabling fact," none of the extending time periods (the five-

28 year limitations period of the crimes, the period of the sentence, or the 15-year

147110.1

1   limitations period for civil liability arising therefrom) can apply.

2       First, the statute of limitations for the offence of *encubrimiento*, and for

3 receipt of stolen property, is the same—five years. This time period has passed

4 with respect to the Foundation. Therefore, no criminal proceeding brought against

5 the Foundation today would end in a successful conviction. Op. at 20.

6       Because there has been no conviction, there too can be no consideration

7 taken of the period of the "sentence" for such a crime (the second prong), since

8 there is no punishment without the law (*nulla poena sine lege*). Op. at 20.

9       Finally, the third prong referring to civil liability also cannot apply, because

10 the fifteen-year statute of limitations on civil liability referred to in Article 1956 is

11 "ex delicto" civil liability—and thus also requires a criminal conviction as a

12 prerequisite.[3] *See* Op. at 20-23.

13       *Ex delicto* civil liability is governed by Article 1092, et seq., of the Spanish

14 Civil Code, which states that "civil obligations arising from offenses or violations[4]

15 [*nazcan de los delitos o faltas*] shall be governed by the provisions of the Spanish

16 Criminal Code." Op. at 20 (citing Art. 1092, Spanish Civil Code). Articles 109

17 and 110 of the Spanish Criminal Code in turn enumerate the types of liability that

18 can arise: "1. Restitution; 2. Redress for the harm; [or] 3. Compensation for

19 economic and non-economic harm." Op. at 20 (citing Art. 110, Spanish Criminal

20 Code). These types of actions may be brought in combination with the criminal

21 proceeding or reserved and brought before a civil court. Op. at 21. However, if

22 brought before a civil court, per the Solicitor General, "there absolutely must be a

23 previous criminal conviction holding that an offence was committed and by whom

24

25 —————————————

26 [3] This, again, is different from the U.S. regime, where certain criminal statutes

27    have a private right of action that can proceed independently of a criminal
   conviction.

28 [4] These terms are also translated as "felonies and misdemeanors."

1  it was committed." Op. at 21. As explained in the Opinion, the statutory language

2  of Article 1956 makes clear that it refers specifically to "ex delicto" liability.

3  Article 1956 refers to an "action to claim civil liability arising from the felony or

4  misdemeanor [*nacida del delito o falta*]"—the same language as Article 1092 of

5  the Civil Code. Op. at 20.

6      The Spanish Supreme Court has reaffirmed in numerous opinions the fact

7  that "ex delicto" civil liability must be preceded by a criminal conviction. The

8  Opinion excerpts a number of these opinions from both the Civil and Criminal

9  Chambers of the Supreme Court, including the two opinions cited by the Ninth

10 Circuit. *See* Op. at 21-22 (citing RJ 1996/6818 and RJ 2009/1269) (both holding

11 that an *ex delicto* claim requires a previous criminal judgment); *see also* Op. at 22

12 (referencing RJ 1982/184 and RJ 2004/4209). The Judgment of 7 January 1982

13 (RJ 1982/184), which established the fifteen-year limitations period for civil

14 liability "arising from" the offense, expressly stated a "finding of fact" "in which a

15 judgment was handed down by the Court . . . which was held to be non-appealable

16 on 1 September of that year." Op. at 8 (citing RJ 1982/184). And, as discussed

17 *supra* at p. 5, the Criminal Chamber's opinion applying Article 1956 to render

18 invalid a convicted defendant's adverse possession of money obtained by fraud

19 only "did so at the end of its judgment, considering civil liability, after analyzing

20 the defendant's criminal responsibility and upholding the judgment given by the

21 lower court . . . ." Op. at 22 (citing RJ 2004/4209).

22     Thus, "[i]t clearly should be concluded" that "where criminal prosecution of

23 an alleged offense is barred by the statute of limitations . . . , it is not possible to

24 apply the statute of limitations of fifteen years for actions to claim civil liability

25 arising from such offence, given that such civil action does not arise without a

26 previous ruling on the offence." Op. at 22. The running of the statute of

27 limitations on the criminal offence extinguishes both criminal and "ex delicto"

28 civil liability. Op. at 22-23. Without a conviction, there is no "ex delicto" civil

1  liability—in such cases only an ordinary tort liability claim may be brought (if

2  appropriate) under the ordinary one-year statute of limitations.  Op. at 23.

3  **III.   <u>CONCLUSION</u>**

4       The Solicitor General of the Kingdom of Spain thus concludes that the

5  application of Article 1956 requires a non-appealable criminal conviction after full

6  due process of law, which is personal to the adverse possessor, where such person

7  is seeking to obtain property by adverse possession based on possession resulting

8  from the crime.  Where no such criminal conviction exists and the statute of

9  limitations for any possible criminal offense has run, only the time periods

10 prescribed by Article 1955 apply.

11

12                                   Respectfully submitted,

13 Dated:  November 27, 2018        WILLENKEN WILSON LOH &

14                                   DELGADO LLP

15

16                                   By: */s/ Amelia L. B. Sargent*

17                                       Amelia L. B. Sargent
                                         Attorneys for
18                                       THE KINGDOM OF SPAIN

19

20

21

22

23

24

25

26

27

28

147110.1

# ATTACHMENT 1

 **MINISTERIO
DE JUSTICIA**


SUBDIRECCIÓN GENERAL DE LOS
SERVICIOS CONSULTIVOS

**A.G. CULTURA Y DEPORTE 4/18 (R-1126-2018)**

La Abogacía General del Estado-Dirección del Servicio Jurídico del Estado ha examinado su consulta sobre si la aplicación de la regla especial de prescripción adquisitiva que establece el artículo 1956 del Código Civil español exige que previamente se haya dictado sentencia firme del orden jurisdiccional penal por la que se condene a quien pretende adquirir por dicho título. En relación con dicha consulta, este Centro Directivo emite el siguiente informe:

- I -

La adecuada resolución de la cuestión reseñada en el encabezamiento del presente informe ha de partir necesariamente del supuesto fáctico-jurídico sobre el que descansa la regla del artículo 1.956 del Código Civil español, conforme al cual: "las cosas muebles hurtadas o robadas no podrán ser prescritas por los que las hurtaron o robaron, ni por los cómplices o encubridores, a no haber prescrito el delito o falta, o su pena, y la acción para exigir la responsabilidad civil, nacida del delito o falta".

La regla que sanciona este precepto enlaza directamente con una de las tres exigencias o requisitos que ha de cumplir la posesión que sirve de base a la prescripción adquisitiva y que se formulan ya en el Derecho Romano: *possessio nec vi, nec clam, nec precario*, esto es, que la posesión lo sea sin violencia (posesión pacífica), sin clandestinidad (posesión pública) y a título de dueño (el poseedor –prescribiente– no sólo ha de considerarse subjetivamente dueño, sino que ha de actuar y comportarse externamente como dueño de la cosa).

Obviamente, la regla del artículo 1.956 atañe al primer requisito o exigencia de la posesión de los indicados, es decir, que la posesión sea pacífica,

CORREO ELECTRÓNICO:
aeconsultivo@mjusticia.es

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

1 3 NOV 2018

C/ AYALA, 5
28001 MADRID
TEL: 91 390 47 55
FAX: 91 390 46 92

1

ABOGACÍA
GENERAL DEL
ESTADO

entendiendo que no lo es cuando la situación posesoria del que pretende adquirir por usucapión es la posesión resultante de un ilícito penal, sea a título de delito o a título de falta, que le sea imputable penalmente.

Ahora bien, frente al régimen del Derecho Romano en el que la violencia (posesión no pacífica por resultar de un acto ilícito) viciaba definitivamente la posesión, imposibilitando así la consumación de la usucapión y, por tanto, la adquisición del dominio, en el Derecho moderno la violencia vicia la posesión sólo transitoriamente, posibilitando así que, una vez cesada la violencia, se inicie una posesión hábil o útil para adquirir el dominio (cfr. artículo 2.233.2 del Código Civil francés; artículo 1163 del Código Civil italiano de 1942). El Código Civil español no lo establece de una forma tan expresa, pero conduce a la misma conclusión no sólo por la regla del artículo 460.4 ("el poseedor puede perder la posesión:... 4º por la posesión de otro, aun contra la voluntad del antiguo poseedor, si la nueva posesión hubiere durado más de un año"), sino, y muy claramente, por la regla que establece el artículo 1.956.

El artículo 1.956 tiene por base, pues, una conducta delictiva (el precepto alude a cosas hurtadas o robadas, refiere la situación posesoria viciada por el ilícito penal no sólo al autor, sino también al cómplice y encubridor como destinatarios de la regla que establece –prescribientes– y, finalmente, alude a la prescripción del delito o falta su pena y a la acción civil nacida del delito o falta).

Partiendo de la anterior premisa –la conducta constitutiva de ilícito penal como base de la regla de prescripción adquisitiva que establece el precepto en cuestión–, resulta necesario examinar, en primer término, la aplicación del principio constitucional de presunción de inocencia que sanciona el artículo 24.2, inciso final, de la Constitución Española de 1978 ("asimismo, todos tienen derecho... a no confesarse culpables y a la presunción de inocencia"), y ello por cuanto que no tendría sentido alguno que pudiera aplicarse la regla del precepto de continua referencia si no existiese un pronunciamiento judicial que apreciase, y así lo declarase, la comisión del ilícito penal del que deriva la posesión en que se fundamenta la prescripción adquisitiva de quien intervino en aquél, siéndole

2

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

MINISTERIO
DE JUSTICIA

1 3 NOV 2010

2

ABOGACÍA
GENERAL DEL
ESTADO

imputable, lo que, ha de insistirse, constituye la base fundamento de la aplicación de la regla civil, ciertamente especial, de prescripción adquisitiva de cosas muebles que establece el precepto de continua referencia.

Pues bien, el principio de presunción de inocencia exige ineludiblemente para poder ser desvirtuada la oportuna declaración judicial (sentencia condenatoria), tras haberse seguido un proceso con todas las garantías y en el que haya tenido lugar una prueba suficiente de cargo. En este sentido, la sentencia del Tribunal Constitucional nº 45/1997, de 11 de marzo, fundamento jurídico cuarto, declara lo siguiente:

"Por lo que se refiere en concreto al derecho a la presunción de inocencia, hemos declarado en STC 120/1994 que «la presunción de inocencia sólo se destruye cuando un Tribunal independiente, imparcial y establecido por la Ley declara la culpabilidad de una persona tras un proceso celebrado con todas las garantías (art. 6.1 y 2 del Convenio Europeo de 1950), al cual se aporte una suficiente prueba de cargo», de suerte que la presunción de inocencia es un principio esencial en materia de procedimiento que opera también en el ejercicio de la potestad administrativa sancionadora (SSTC 73/1985 y 1/1987)…"

Más particularmente, y puesto que, como se viene reiterando, son conductas constitutivas de ilícito penal las que están en la base de la regla del artículo 1.956 del Código Civil, debe tenerse en cuenta la doctrina recogida en la sentencia del Tribunal Constitucional nº 3/1990, de 15 de enero, en cuyo fundamento jurídico 1 se dice lo siguiente:

"Bien es sabido que, conforme a reiterada doctrina de este Tribunal -SSTC 31/1981, 101/1985, 80/1986, 82/1988, 254/1988 y 44/1989, entre otras-, la presunción de inocencia exige para poder ser desvirtuada una actividad probatoria de cargo producida con las debidas garantías procesales y de las que pueda deducirse razonada y razonablemente la culpabilidad del acusado, debiendo, en principio, realizarse tal actividad probatoria, para dar cumplimiento a los principios de oralidad, inmediación y contradicción que presiden el proceso penal, en el acto del juicio oral, sin que, de otro lado, los órganos judiciales puedan formar su convicción acudiendo a atestados policiales realizados con anterioridad a la fase sumarial, ya que gozan solamente del valor de una denuncia, excepto cuando incorporan pruebas preconstituidas debidamente realizadas y reproducidas".

3

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
Nº 4195                    13 NOV 2019         3

ABOGACÍA
GENERAL DEL
ESTADO

Finalmente, y como quiera que en el caso de que se trata el efecto jurídico que se anuda a la comisión de una infracción penal, cual es la aplicación del especial y muy gravoso régimen de prescripción (lo que, obviamente, dificulta la adquisición de domino por usucapión), es civil, resulta necesario indicar que no por ello puede prescindirse de la aplicación del principio constitucional del principio de inocencia y de las exigencias que comporta, ya que la funcionalidad de este principio se extiende a otros ámbitos distintos del sancionador. Así, la sentencia del Tribunal Constitucional nº 52/1989, de 22 de febrero, en su fundamento jurídico sexto, declara lo siguiente:

"La posibilidad de extender la presunción de inocencia fuera del ámbito de la jurisdicción penal ha sido reconocida en diversas ocasiones por este Tribunal -SSTC 13/1982, de 1 de abril; 24/1984, de 23 de febrero, y 36/1985, de 8 de marzo, entre otras-, quien ha puesto de manifiesto que dicho derecho fundamental no puede entenderse reducido al estricto campo del enjuiciamiento de conductas presuntamente delictivas, sino que ha de referirse también a la adopción de cualquier resolución, tanto administrativa como jurisdiccional, relativa a la condición o conducta de las personas, de cuya apreciación se derive un resultado sancionatorio o limitativo de sus derechos. No obstante, de ello no puede deducirse la aplicación del mencionado derecho fundamental, sin más, a todos los procesos civiles, y a la apreciación de la prueba en ellos, como parece entender el recurrente en la demanda, pues la extensión del mismo al ámbito probatorio civil y, en consecuencia, la posibilidad de su enjuiciamiento en vía de amparo constitucional, sólo procede en supuestos excepcionales y tras ponderar las singularidades que en cada caso concurran".

- II -

De lo expuesto en el anterior apartado se desprende que para que resulte de aplicación el artículo 1956 del Código Civil es requisito necesario que previamente se haya tramitado un proceso penal con todas las garantías, en el que el acusado haya podido conocer el concreto delito que se le imputa y utilizar las alegaciones y los medios de prueba pertinentes para su defensa, y que dicho proceso haya concluido mediante una sentencia condenatoria firme y no

4

1 3 NOV 2013
MINISTERIO DE JUSTICIA
Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
4'

ABOGACÍA
GENERAL DEL
ESTADO

susceptible de recurso, puesto que lo contrario vulneraría el derecho fundamental a la tutela judicial efectiva y le causaría una evidente indefensión.

Debe recordarse que el derecho fundamental a la presunción de inocencia se establece, como se ha indicado, en el inciso final del párrafo 2 del artículo 24 de la Constitución Española, y no puede interpretarse de forma aislada a lo que dispone el resto del precepto, que es del siguiente tenor literal:

> "1. Todas las personas tienen derecho a obtener la tutela efectiva de los jueces y tribunales en el ejercicio de sus derechos e intereses legítimos, sin que, en ningún caso, pueda producirse indefensión.
>
> 2. Asimismo, todos tienen derecho al Juez ordinario predeterminado por la ley, a la defensa y a la asistencia de letrado, a ser informados de la acusación formulada contra ellos, a un proceso público sin dilaciones indebidas y con todas las garantías, a utilizar los medios de prueba pertinentes para su defensa, a no declarar contra sí mismos, a no confesarse culpables y a la presunción de inocencia".

Debe destacarse que el artículo 1956 del Código Civil apenas ha sido aplicado en el Derecho español por el orden jurisdiccional civil, siendo así que la sentencia del Tribunal Supremo español de 15 de julio de 2004 (RJ 2004\4209), que se cita por la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017, se dictó precisamente por la Sala de lo Penal de dicho Tribunal Supremo, en un asunto en el que impuso una condena por un delito de estafa y en el que aplicó el citado artículo 1956 del Código Civil al tratar la cuestión de la responsabilidad civil derivada del delito.

En dicha sentencia el Alto Tribunal considera efectivamente que resulta aplicable el artículo 1956 del Código Civil (frente a las alegaciones de la acusada, que invocaba que no estaba obligada a devolver el dinero estafado por haberlo adquirido en virtud de la figura de la usucapión de bienes muebles prevista en el artículo 1955 del Código Civil), y establece que "*en estos casos los plazos para la usucapión ordinaria o extraordinaria de cosas muebles han de comenzar a computarse una vez transcurrido el plazo para la prescripción penal y, además, el*

5

1 3 NOV 2018

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS   MINISTERIO DE JUSTICIA
N.º 1295

ABOGACÍA
GENERAL DEL
ESTADO

*relativo a la prescripción extintiva civil, teniendo en cuenta que la acción correspondiente habría de ser la del artículo 1902 (aquí se aprecia una errata, pues debe decir 1092), es decir la específica derivada del delito o falta cometidos, la de 15 años del artículo 1964 conforme a lo que acabamos de exponer. Esto es, el plazo de usucapión extraordinaria para los bienes muebles, fijado en seis años por el párrafo 2º del artículo 1955, sólo puede comenzar a computarse cuando hayan transcurrido sucesivamente otros dos: el correspondiente del artículo 131 CP para la prescripción del delito (los cinco años previstos para "los restantes delitos graves") y los quince antes referidos del artículo 1964. Total, 26 años (…)".*

Pero dichas argumentaciones del Tribunal se contienen en el fundamento jurídico cuarto y último de la sentencia, en sede de responsabilidad civil derivada del delito, habiendo dedicado los tres fundamentos jurídicos anteriores, que constituyen la parte principal de la sentencia, a examinar la responsabilidad criminal de la acusada, a la que declara autora de un delito de estafa, confirmando la pena de dos años y medio de prisión que le había sido impuesta por la sentencia del Tribunal de instancia. Por tanto, lo que se desprende de dicha sentencia es precisamente que la aplicación del artículo 1956 del Código Civil exige la existencia de una previa declaración judicial firme del orden jurisdiccional penal que condene como criminalmente responsable de un delito al usucapiente que pretende invocar los plazos del artículo 1955 para adquirir por prescripción con fundamento en la posesión obtenida precisamente por razón del hecho delictivo.

Es irrelevante a estos efectos que el ilícito penal consista en el encubrimiento de un delito de robo o de hurto (según la dicción literal del artículo 1956), en un delito patrimonial análogo como el de estafa (por el que condena la sentencia de 15 de julio de 2004), o de un delito autónomo de receptación, que la jurisprudencia considera análogo al encubrimiento.

En efecto, la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017 señala que *"El Tribunal Supremo de España reconoció también la posibilidad de intercambiar los delitos de*

6

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

13 NOV 2018

6

ABOGACÍA
GENERAL DEL
ESTADO

*receptación de bienes robados y de ser un encubridor del hecho en la sentencia 77/2004, de 2 de enero (RJ 2004\485)"*. En dicha sentencia del Tribunal Supremo español se recoge la doctrina previamente sentada en la sentencia de 5 de julio de 1993 (RJ 1993\5881), también citada por el Tribunal de Estados Unidos, que había establecido que *"nos encontramos ante dos delitos homogéneos, con identidad de derechos protegidos y de hecho juzgados, y como la condena impuesta era menor (que la del delito establecido en la acusación) está claro que el principio de la acusación (de aviso justo) fue legalmente respetado"*.

Pero, siendo ello cierto, no lo es menos que las dos citadas sentencias dictadas por la Sala de lo Penal del Tribunal Supremo español están refiriéndose a supuestos en los que en todo caso se ha dictado una sentencia penal que condena al acusado por un delito, por más que en un inicio se le acusara por un delito distinto. Es decir, la aludida homogeneidad entre delitos (aquél por el que se acusa y aquél por el que finalmente se condena) no excluye la necesidad de que en ambos casos exista una sentencia firme que contenga dicha condena.

La propia sentencia de 21 de enero de 2004 establece expresamente que *"la proscripción de la indefensión constituye el verdadero fundamento de los límites que el principio acusatorio impone al Tribunal sentenciador en estos casos en que hay acusación por un delito y condena por otro"*, refiriéndose a un caso en el que, aun tratándose de delitos distintos pero homogéneos, cuando menos hay una acusación formal y una posterior condena por un tribunal sentenciador. Si en ese supuesto el Tribunal establece como límite la proscripción de indefensión, qué duda cabe de que dicha indefensión se produce, con manifiesta infracción del principio acusatorio, en aquellos casos en los que no sólo no hay condena penal, sino ni que ni siquiera existe un proceso abierto con una acusación formal inicial de la que pueda defenderse la persona a la que se le imputa el ilícito criminal.

Debe destacarse en este punto que la condena penal (sea por encubrimiento de un robo o hurto cometido por un tercero, sea por la autoría de un delito autónomo como el de receptación) debe referirse directa y personalmente al actual poseedor de la cosa mueble que pretende invocar la

7

ABOGACÍA
GENERAL DEL
ESTADO

usucapión, por desprenderse así del tenor literal del artículo 1956 del Código Civil ("*las cosas muebles hurtadas o robadas no podrán ser prescritas por los que las hurtaron o robaron, ni por los cómplices o encubridores ...*), y porque otra interpretación más extensiva violaría de nuevo los derechos fundamentales establecidos en el artículo 24 de la Constitución Española.

En conclusión, dado que la premisa de la aplicación de la regla especial de prescripción contenida en el artículo 1956 del Código Civil es la existencia de una conducta constitutiva de un ilícito criminal imputable directamente al poseedor de la cosa mueble, que, como ha quedado dicho y por respeto al derecho constitucional a la tutela judicial efectiva y a la presunción de inocencia, debe haber sido declarada por sentencia penal firme, no habiéndose producido el supuesto de hecho habilitante de la aplicación de la citada norma especial no existe razón suficiente que justifique el desplazamiento de la aplicación de la norma general de usucapión de bienes muebles prevista en el artículo 1955 del Código Civil, que establece en su párrafo segundo que se prescribe el dominio de los bienes muebles por la posesión no interrumpida de seis años, sin necesidad de ninguna otra condición.

- III -

Sentado que la aplicación del artículo 1956 del Código Civil exige la previa existencia de una sentencia penal que declare que el prescribiente es responsable criminalmente en la forma indicada en el apartado anterior de este informe, debe destacarse que los delitos que se han citado tienen un plazo de prescripción de cinco años desde la comisión del hecho presuntamente delictivo conforme al Derecho Penal sustantivo español. Así se reconoce en la resolución del Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017, que señala que "*Para el delito de encubrimiento y el delito de recibir bienes robados, los dos delitos que los Cassirer sostienen que la CTB cometió al comprar la pintura del barón en 1993, el período de prescripción penal es de cinco años, los artículos 30, 113, 546 (bis) (a) del Código Penal de 1973 y los artículos 131, 298 del Código penal de 1995*".

8

Mª SOLEDAD VALCÁRCEL CONDE  MINISTERIO
Traductora-Intérprete Jurada de I...

13 NOV 2018

8

ABOGACÍA
GENERAL DEL
ESTADO

Dado que el artículo 130. 1 del Código Penal de 1995 establece que *"la responsabilidad criminal se extingue: 6° Por la prescripción del delito"* (en idéntico sentido se pronunciaba el artículo 112.1. 6° del Código Penal de 1973), cualquier procedimiento penal que pretendiera iniciarse hoy para perseguir unos delitos ya prescritos habría de terminar necesariamente con un sobreseimiento o, en su caso, con una sentencia absolutoria.

Tampoco puede tenerse en consideración el plazo de prescripción de la pena a que se refiere el artículo 1956 del Código Civil, ya que es principio básico del Derecho español el de *nulla poena sine crimine*, de modo que, a falta de declaración judicial de la existencia de un delito no cabe hablar de la existencia de una pena, ni, por tanto, de la prescripción de ésta.

Por último, tampoco es posible tener en cuenta el plazo de prescripción de la acción para exigir la responsabilidad civil derivada del delito a que también se refiere el artículo 1956 del Código Civil. Dicho plazo, que la resolución del tribunal estadounidense fija en quince años con cita de jurisprudencia española, exige la previa existencia de una sentencia penal que declare la existencia de un delito del que habría de nacer la obligación en que consiste la responsabilidad civil.

El artículo 1089 del Código Civil enumera las fuentes de obligaciones civiles en el Derecho español, estableciendo que *"las obligaciones nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia"*. Más adelante, el artículo 1092 dispone que *"Las obligaciones civiles que nazcan de los delitos o faltas se regirán por las disposiciones del Código Penal"*, dedicando a continuación un artículo diferente a las obligaciones *"que se deriven de actos u omisiones en que intervenga culpa o negligencia no penadas por la ley"*, que quedarán sometidas a las disposiciones contenidas en los artículos 1902 y siguientes del propio Código Civil.

9

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

1 3 NOV 2018

MINISTERIO
DE JUSTICIA

9

ABOGACÍA
GENERAL DEL
ESTADO

Pues bien, el artículo 1956 del Código Civil alude específicamente a la *"acción para exigir la responsabilidad civil, nacida del delito o falta"*, es decir, exclusivamente a la prevista en el artículo 1092 antes transcrito, que a su vez se remite a lo que disponga el Código Penal.

El artículo 109 del Código Penal de 1995, siguiendo la tradición penalista española, establece que *"la ejecución de un hecho descrito por la ley como delito obliga a reparar, en los términos previstos en las leyes, los daños y perjuicios por él causados"*, señalando a continuación el artículo 110 que *"la responsabilidad establecida en el artículo anterior comprende: 1º La restitución. 2º La reparación del daño. 3º La indemnización de perjuicios materiales y morales"*.

La acción para exigir la responsabilidad civil derivada del delito se puede ejercer en el proceso penal de forma acumulada a la acción criminal, o reservarse para ejercerla ante la jurisdicción civil, dado que el artículo 109.2 establece que *"el perjudicado podrá optar, en todo caso por exigir la responsabilidad civil ante la jurisdicción Civil"*. Pero en este segundo caso es de todo punto imprescindible, para que sea apreciada la existencia de dicha responsabilidad civil, la previa condena penal que declare la comisión de un delito y su autoría.

Así se desprende claramente de lo establecido por la Sala de lo Civil del Tribunal Supremo en su sentencia de 20 de septiembre de 1996 (RJ 1996\6818):

> "(...) ha de confirmarse, pues, la doctrina de la Audiencia de que ejercitada la acción de responsabilidad civil «ex delicto» ninguna otra puede ser estudiada, debiendo desestimarse por no existir sentencia penal condenatoria, presupuesto indeclinable para el nacimiento de aquélla. Es claro que cuando los hechos dan lugar a actuaciones penales éstas paralizan la posibilidad de actuar en vía civil o el proceso que haya comenzado, al imponerlo así el art. 114 de la LECrim, hasta que recaiga sentencia firme, obligando tal precepto a la jurisprudencia a extender la apertura de la vía civil a los supuestos de sobreseimiento libre e incluso a los de sobreseimiento provisional o al archivo de diligencias (SS. 16 noviembre 1985  20 octubre 1987, 30 noviembre 1989, o 20 enero 1992), pero en tal caso la acción civil que se ejercite ha de ser la del art. 1902, que prescribe al año conforme al art. 1968, mas no la «ex delicto» que requiere

Mª SOLEDAD VALCÁRCEL CONDE   MINISTERIO
                                        DE JUSTICIA
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

1 3 NOV 2013          10



ABOGACÍA
GENERAL DEL
ESTADO

la existencia de condena así declarándolo, condena que existe en los supuesto de indulto o de muerte del reo, pero no cuando se produce el sobreseimiento o el archivo sin previa condena, ya que antes de la condena pervive la presunción de inocencia"

Esta doctrina jurisprudencial de la Sala de lo Civil del Tribunal Supremo se ha mantenido invariablemente en sentencias posteriores, como la de 23 de enero de 2009 (RJ 2009\1269), que dispuso lo siguiente:

"Debe señalarse, en primer término, que no cabe basar la acción en la existencia de responsabilidad civil "ex delicto", como se hace en la demanda, sin que exista una previa sentencia que en el orden penal declare la existencia del hecho delictivo. Así se recoge, entre otras, en la Sentencia de esta Sala de 31 de enero de 2004, cuando razona que «para aplicar la acción "ex delicto", se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados (Sentencias de 26-10-1993 , 10-5-1994, 19-5-1997, 14-4-1998 y 20-11-2001)»

Y de forma más reciente, la sentencia de 27 de marzo de 2015 (RJ 2015\2688) confirma la misma línea jurisprudencial:

"La doctrina más reciente de esta Sala viene expresada en la sentencia de la que dicho voto trae causa, citada en la de 23 de enero 2009, cuando razona que «para aplicar la acción "ex delicto ", se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados ( Sentencias de 26-10-1993 , 10-5-1994 , 19-5-1997 , 14-4-1998 y 20-11-2001)», lo que no ocurre en este caso en que el demandado no ha sido condenado en la causa penal que fue archivada por denuncia sobrevenida del acusado"

Es, por tanto, requisito inexcusable para apreciar la existencia de una acción para exigir la responsabilidad civil derivada del delito (y, por ende, para valorar el período de prescripción de la misma), la existencia de una previa sentencia condenatoria penal.

11

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 6195                          MINISTERIO
                                 DE JUSTICIA

1 3 NOV 2018

11



ABOGACÍA
GENERAL DEL
ESTADO

De hecho, las dos sentencias que se citan en la resolución de Tribunal de Apelación de los Estados Unidos del Noveno Distrito de 10 de julio de 2017 para fundamentar que el plazo de prescripción de la acción para exigir la responsabilidad civil derivada del delito a que se refiere el artículo 1956 del Código Civil es de quince años conforme al artículo 1964 del mismo Código, son sentencias que parten de la premisa de la previa existencia de una condena penal.

Así, la sentencia de 7 de enero de 1982 (RJ 1982\184), que efectivamente considera que la acción para exigir la responsabilidad civil derivada del delito tiene un plazo de prescripción de quince años, se dicta por la Sala de lo Civil del Tribunal Supremo en un asunto en el que previamente se había tramitado un proceso penal que había finalizado por sentencia condenatoria. Así se hace constar expresamente en los antecedentes fácticos de la sentencia:

*CONSIDERANDO. Que, para un adecuado enjuiciamiento del presente recurso, procede establecer los siguientes antecedentes que han sido admitidos por las partes o declarados probados por la Sala de instancia o resultan del examen de las actuaciones: A) en accidente de circulación (...) resultó muerto aquél; siguiéndose Diligencias preparatorias resueltas por sentencia recaída en el Juzgado de Instrucción de Algeciras en fecha 11 julio 1975, declarada firme el 1 septiembre siguiente, en la que se apreció la existencia de un delito de imprudencia simple con infracción de reglamentos y resultado de muerte de que se conceptuó responsable, en el concepto de autora, a la demandada María Teresa C.T., concretándose, aparte de imponerle las penas correspondientes al delito, entre otras indemnizaciones, la pertinente al óbito de Antonio V.V.(...)".*

Por otro lado, en la sentencia de 15 de julio de 2004 (RJ 2004\4209) la Sala de lo Penal del Tribunal Supremo aplica el artículo 1956 del Código Civil para enervar la usucapión del artículo 1955 que había alegado la acusada con el fin de evitar la devolución de las cantidades que se le reclamaban, pero lo hace al final de la sentencia, en sede de responsabilidad civil, después de haber analizado la responsabilidad penal de la acusada y de haber confirmado la sentencia dictada

12

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
Nº 6195

13 NOV 2018                    12

ABOGACÍA
GENERAL DEL
ESTADO

por el tribunal de instancia, que la había condenado "*como autora criminalmente responsable de un delito continuado de estafa, (…) a la pena de dos años y seis meses de prisión (…)*".

En definitiva, debe concluirse que en los casos en los que ha prescrito la acción penal para perseguir un presunto delito (recordemos que en el supuesto objeto de informe dicho plazo es de cinco años), no puede tenerse en consideración el plazo de prescripción de quince años de la acción para exigir la responsabilidad civil derivada de ese delito, puesto que sin la previa declaración del delito dicha acción civil no llega a nacer.

En estos supuestos resulta de aplicación la doctrina establecida en la sentencia del Tribunal Supremo (Sala de lo Civil) de 31 de enero de 2004 (RJ 2004\444) que dispone lo siguiente:

> "No estamos en presencia de una acción «ex delicto» del artículo 1092 que se integró en la demanda, ya que no se da ilícito penal, pues recayó sentencia absolutoria que hizo desaparecer los hechos denunciados, al decretar su extinción, por aplicación del instituto de la prescripción, y con ello la posible responsabilidad penal respecto a los mismos, lo que no autoriza la aplicación del artículo 1092 en relación al 1964, ya que la acción no surge del delito o falta sino más bien de los hechos, que actúan como configurantes. Para aplicar la acción «ex delicto», se requiere la existencia de condena y no en los supuestos tanto de absolución, sobreseimiento, como archivo, al resultar precisa declaración penal al efecto y mal puede surgir la acción civil derivada, en relación a la ausencia de ilicitud penal de los hechos denunciados (Sentencias de 26-10-1993 [sic], 10-5-1994, 19-5-199 , 14-4-199 y 20-11-2001)".

Este criterio jurisprudencial sigue siendo a fecha de hoy el aplicado por los tribunales españoles, pudiendo destacarse la sentencia de la Audiencia Provincial de Navarra de 12 de diciembre de 2014 (AC 2014\255) que, además de transcribir la citada sentencia del Tribunal Supremo de 31 de enero de 2014, reitera que "*la jurisprudencia establece que no hay acción "ex delicto" cuando la sentencia penal es absolutoria por prescripción del delito y, por tanto, la acción civil está sometida a los plazos ordinarios de prescripción*", excluyendo la prescripción de quince

13

Mª SOLEDAD VALCÁRCEL CONDE   MINISTERIO DE JUSTICIA
Traductora-Intérprete Jurada de …
N.º 4195

15 NOV 2019

13



ABOGACÍA
GENERAL DEL
ESTADO

años del artículo 1964 del Código Civil en relación con el artículo 1092, y considerando que en este caso *"sólo podía ejercitarse la acción de responsabilidad civil extracontractual del artículo 1902 CC"*, cuyo plazo de prescripción es el de un año del artículo 1968.2.

En atención a todo lo expuesto, la Abogacía General del Estado-Dirección del Servicio Jurídico del Estado somete a su consideración la siguiente

## CONCLUSIÓN

La aplicación de la regla especial de prescripción adquisitiva que establece el artículo 1956 del Código Civil español exige inexcusablemente que, tras haberse seguido un proceso con todas las garantías y en el que haya tenido lugar una prueba suficiente de cargo, se haya dictado sentencia firme que declare la existencia de una conducta constitutiva de un ilícito penal por razón de la cual condene a quien pretende adquirir por usucapión con fundamento en la posesión resultante de dicho ilícito.

Madrid, 12 de noviembre de 2018
LA ABOGADA GENERAL DEL ESTADO

Consuelo Castro Rey

14

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de
N°9410E

1 3 NOV 2018

14

[*The following text appears on the bottom right-hand corner of page one:* C/ AYALA, 5; *28001 Madrid; TEL: 91 391 47 55; FAX: 91 390 46 92*]

[*The following text appears on the bottom left-hand corner of page one:* EMAIL: aeconsultivo@mjusticia.es]

[*The following text appears on the bottom right-hand corner of pages 2-14*: MINISTRY OF JUSTICE

[*There appears the coat of arms of the Spanish state*]
**MINISTRY OF JUSTICE**

**GOVERNMENT ATTORNEYS OFFICE DIRECTORATE FOR STATE LEGAL SERVICES**

**SUBDIRECTORATE**

**GENERAL**

**FOR ADVISORY SERVICES**

**GOVERNMENT ATTORNEYS OFFICE FOR CULTURE AND SPORTS 4/18 (R-1126-2018)**

The Government Attorneys Office – Directorate for State Legal Services has examined your enquiry as to whether to apply the special adverse possession rule under art. 1956 of the Spanish Civil Code, a judgment not subject to appeal must first be handed down by a criminal court, convicting the person seeking to acquire property through adverse possession. With regard to this enquiry, this Directorate issues the following report:

I

In order to properly resolve the issue set forth above, we must begin with the factual and legal situation providing the basis for the rule in art. 1956 of the Spanish Civil Code. Article 1956 states that "*title to stolen movable property may not be obtained through adverse possession by those who stole such property, or by their accomplices or accessories after the fact, unless the felony or misdemeanor or its sentence, and the action to claim civil liability arising therefrom, should have become barred by statute of limitations.*"

The rule set forth in such provision directly relates to one of the three requirements that must be met by the possession providing the basis for the adverse possession. These requirements are laid out in Roman law: *Nec vi, nec clam, nec precario* possession. This means that possession is without violence (peaceful possession), without secrecy (public possession), and as of right (the possessor — the adverse possessor — must not only be subjectively considered the owner, but must act and behave to the outside world as the owner of the property).

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS

Obviously, the rule under art. 1956 concerns the first of the aforementioned requirements for possession, i.e., that possession must be peaceful. It is understood that possession is not peaceful when the possession by the party seeking title through adverse possession results from a criminal offence, whether a felony or misdemeanor, for which such party is criminally liable.

Under Roman law, violence (possession that is not peaceful due to an unlawful act) definitively vitiated the possession, so preventing the adverse possession and, therefore, the acquisition of title. However, under modern law, violence vitiates possession only temporarily. This means that the possession enabling acquisition of the title may begin once the violence has ceased (see art. 2.233.2 of the French Civil Code; art. 1163 of the Italian Civil Code 1942). The Spanish Civil Code does not establish this as explicitly, but it leads to the same conclusion, not only by the rule under art. 460.4 ("*the possessor may lose possession: ... 4. due to the possession by another party, even if against the will of the former possessor, if the new possession has lasted more than one year*"), but also, very clearly, by the rule established in art. 1956.

Article 1956 is based on criminal conduct (the provision refers to stolen property; the possession vitiated by the criminal offence refers not only to the perpetrator, but also to the accomplice and accessory after the fact — the adverse possessors — as subject to the rule set forth therein; and finally, the provision refers to the expiration of the statute of limitations for the felony , the penalty for such offence, and the civil action arising from the felony or misdemeanor).

Under the above premise — the conduct constituting a criminal offence as the basis for the adverse possession rule under the provision in question — it is necessary to examine, first, the application of the constitutional principle of presumption of innocence enshrined in art. 24.2, final section, of the Spanish Constitution 1978 ("*furthermore, everyone has the right ... to not admit guilt and to the presumption of innocence*"). This is because it would make no sense if the rule in the aforementioned provision could be applied in the absence of a judicial ruling finding, and declaring, that the criminal offence was committed, when such criminal offence gave rise to the possession that is the basis for the adverse possession by the person involved therein, who is criminally liable for such offence. It must be emphasized that this constitutes the basis for the application of the civil rule, certainly special, on the adverse possession of movable property set forth in the aforementioned provision.

In order to render invalid the principle of the presumption of innocence, the relevant judicial ruling (conviction) must absolutely be handed down, after a proceeding has been conducted with full due process of law, in which sufficient evidence for the prosecution has been presented. In this regard, the Constitutional Court judgment 45/1997 of 11 March stated the following in its fourth legal ground:

*"With regard to the right to the presumption of innocence, we held in Constitutional Court Judgment 120/1994 that 'the presumption of innocence is only destroyed when an independent, impartial Tribunal that has been established by Law declares the guilt of a person after a proceeding conducted with full due process of law (art. 6.1 and 2 of the 1950 European Convention), in which sufficient evidence for the prosecution is presented'. Thus, the presumption of innocence is an essential procedural principle that also operates in applying the administrative punitive authority (Constitutional Court Judgments 73/1985 and 1/1987)*
. ...."

Mª SOLEDAD VALCARCEL CON D..
Traductora-Intérprete Jurada de ...
. . . . . . .

16

More specifically, and given that as has been stated, the conduct providing the basis for the rule in art. 1956 of the Spanish Civil Code is conduct constituting a criminal offence, we must take into consideration the case law set forth in Constitutional Court Judgment No. 3/1990, of 15 January, whose legal ground no. 1 states the following:

*"It is well known that, according to the repeated case law of this Court — Constitutional Court Judgments 31/1981, 101/1985, 80/1986, 82/1988, 254/1988, and 44/1989, inter alia — in order to render invalid the presumption of innocence, evidence for the prosecution must be presented with due process of law, and such evidence must allow for a reasoned and reasonable determination of the defendant's guilt. In principle, such evidence must be presented during the oral proceedings, in order to fulfill the principles of the oral nature of proceedings, immediacy, and the right to object to the other party's evidence. Moreover, the courts may not issue their conviction based on police reports drafted prior to the preliminary investigation in the case, since these only have the value of a criminal complaint, except when pre-trial evidence is submitted that has been properly gathered and presented."*

Lastly, in the case at hand, the legal effect connected to the commission of a criminal offence is a civil effect, which is the application of the special and very burdensome adverse possession rule (that obviously hampers the acquisition of title through adverse possession). It must be stated this does not provide grounds for not applying the constitutional principle of the presumption of innocence and the requirements thereof, since this principle also operates in areas other than the imposition of penalties. In this regard, Constitutional Court Judgment 52/1989, of 22 February, in its sixth legal ground, states the following:

*"The possibility of extending the presumption of innocence beyond the scope of criminal courts has been recognized on several occasions by this Court — Constitutional Court Judgments 13/1982, of 1 April; 24/1984, of 23 February; and 36/1985, of 8 March, inter alia. This Court has demonstrated that such fundamental right cannot be understood to be strictly confined to proceedings involving alleged criminal conduct. Rather, it must also apply to the issuance of any administrative or judicial ruling relating to persons' condition or conduct, the determination of which results in a sanction or a limitation of the person's rights. However, the above does not imply that the aforementioned fundamental right simply applies to all civil proceedings, and the weighing of the evidence therein, as the appellant seems to understand in the statement of claim. This is because this right may only be applied to the area of civil evidence and, consequently, an amparo action may only be filed before the Constitutional Court to protect such right, in exceptional cases and after weighing the unique characteristics present in each case."*

## II

The above section implies that for art. 1956 of the Civil Code to apply, there must have previously been a criminal proceeding with full due process of law, in which the defendant was informed of the specific charges against him or her, the defendant was able to use the relevant pleadings and evidence for his or her defense, and that ended in a non-appealable conviction. If these requirements are not met, it would violate the fundamental right to effective remedy and would imply a clear violation of the right to legal defense.

It must be recalled, as has been stated, that the fundamental right to the presumption of innocence is set forth in the final section of paragraph 2 of art. 24 of the Spanish Constitution. This must not be construed in isolation from the rest of the article, which reads as follows:

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4105

17

*"1. All persons have the right to obtain effective protection from judges and the courts in the exercise of their rights and legitimate interests, and in no case may there be a violation of the right to legal defense.*

*2. Likewise, all persons have a right to the ordinary judge established by law; to defense and assistance by a lawyer; to be informed of the charges brought against them; to a public trial without undue delays and with full due process of law; to the use of evidence appropriate to their defense; not to self-incriminate; to not plead guilty; and to the presumption of innocence."*

It must be noted that art. 1956 of the Civil Code has rarely been applied in Spanish law by the civil jurisdiction. Thus, the Spanish Supreme Court Judgment of 15 July 2004 (RJ 2004\4209), cited by the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017, was issued by the Criminal Chamber of the Supreme Court, in a case in which the Court handed down a conviction for the offence of fraud and applied the aforementioned art. 1956 of the Civil Code in dealing with the question of civil liability arising from the offence.

In that judgment, the Supreme Court indeed held that art. 1956 of the Civil Code applied (in response to the defendant's arguments that she was not required to repay the money obtained through fraud because she had acquired it by virtue of the adverse possession of movable property set forth in art. 1955 of the Civil Code). The Court held that *"in these cases, the periods for the ordinary or extraordinary adverse possession of movable property must begin to be calculated after the expiration of the statute of limitations for criminal prosecution, as well as the statute of limitations extinguishing a right under civil law. The relevant action would be that set forth in art. 1902(sic), that is to say the specific action arising from the felony or misdemeanor, which of 15 years set forth in art. 1964 according to what we have stated above. That is, the period for extraordinary adverse possession for movable property, set at six years by paragraph 2 of art. 1955, may only begin to be calculated when the other two periods have successively expired: the period set forth in art. 131 of the Spanish Criminal Code for the statute of limitations for criminal offences (the five years provided for "other serious offences") and the aforementioned fifteen years set forth in art. 1964. A total of 26 years (...)."*

However, these arguments by the Court are in the fourth and final legal ground of the Judgment, considering the civil liability arising from the offence. The Court devoted the previous three legal grounds, which constitute the main part of the Judgment, to examining the defendant's criminal liability. The Court held her to have committed an offence of fraud and confirmed the sentence of two and a half years' imprisonment issued by the lower court judgment. Thus, it is clear from this judgment that for art. 1956 of the Spanish Civil Code to apply, there must have previously been a non-appealable judicial ruling in the criminal jurisdiction that convicts the adverse possessor as criminally liable for an offence, where the adverse possessor is seeking to invoke the periods under art. 1955 in order to acquire property through adverse possession based on the possession obtained as a result of the offence.

For these purposes, it is irrelevant whether the criminal offence involves acting as an accessory after the fact to the offence of robbery or theft (as under art. 1956); an analogous property offence such as the offence of fraud (which is the subject of the conviction of the judgment of 15 July 2004); or a separate offence of receiving stolen goods, which case law has deemed to be analogous to acting as an accessory.

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉ:
N.º 4195

18

Indeed, the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017 states that *"The Spanish Supreme Court also recognized the interchangeability of the offences of receiving stolen goods and of being an accessory after the fact in Judgment 77/2004, of 2 January (RJ2004/485)."* Such Spanish Supreme Court judgment reviews the case law previously established in the judgment of 5 July 1993 (RJ 1993/5881), also cited by the United States Court. Such judgment had held that *"we find ourselves before two interchangeable offences, with the same rights protected and in fact dealt with in the proceeding; given that the sentence imposed was less (than that of the offence laid out in the charge), it is clear that the principle of (fair notice of the) charge was lawfully respected."*

However, while this is true, it is also true that the two aforementioned judgments handed down by the Criminal Chamber of the Spanish Supreme Court refer to cases in which, in any event, a criminal judgment was issued convicting the defendant of an offence, even if the defendant was at first charged with a different offence. That is to say, the aforementioned interchangeability between offences (the offence with which the defendant was changed and the offence for which the defendant was eventually convicted) does not exclude the need in both cases for a non-appealable judgment setting forth such conviction.

The judgment of 21 January 2004 specifically states that the *"prohibition of violation of the right to legal defense constitutes the true basis for the limits that the adversarial principle imposes on the court giving judgment in these cases, in which there is a charge for one offence and a conviction for another."* This refers to a case in which, even though the offences are different but interchangeable, there is at least a formal charge and a subsequent conviction by a court giving judgment. For such a case, the Court established as a limit the prohibition of a violation of the right to legal defense. Thus, there can be no doubt that the right to legal defense is violated, with a clear violation of the adversarial principle, in those cases in which not only is there no criminal conviction, but there is not even an open proceeding with an initial formal charge against which the person charged with the offence may raise a defense.

On this matter, it must be noted that a criminal conviction (whether for acting as an accessory after the fact for a robbery or theft committed by a third party, or for committing a separate offence such as that of receiving stolen goods) must refer directly and personally to the current possessor of the movable property who is seeking to claim adverse possession. This follows from art. 1956 of the Spanish Civil Code (which states that *"title to stolen movable property may not be obtained through adverse possession by those who stole such property, or by their accomplices or accessories after the fact..."*). Furthermore, any more extensive construal would again violate the fundamental rights set forth in art. 24 of the Spanish Constitution.

In conclusion, given that the requirement for applying the special adverse possession rule set forth in art. 1956 of the Spanish Civil Code is the existence of conduct constituting a criminal offence, for which the possessor of the movable property is directly criminally liable, and that, as stated above, and in compliance with the constitutional right to effective remedy and the presumption of innocence, a conviction for such conduct must have been issued in a non-appealable criminal judgment, in the absence of the enabling fact for the application of the aforementioned special rule, there are not grounds sufficient to justify not applying the general rule for the adverse possession of movable property set forth in art. 1955 of the Spanish Civil Code. Paragraph 2 of art. 1955 which establishes that adverse possession of movable property takes place after six years of uninterrupted possession, with no requirement for any other condition to be met.

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

## III

Article 1956 of the Spanish Civil Code requires that there be a previous criminal judgment holding that the adverse possessor is criminally liable as indicated in the previous section of this report. Furthermore, it should be noted that the offences mentioned above have a statute of limitations of five years from the commission of the alleged criminal offence, under substantive Spanish criminal law. This was recognized by the United States Court of Appeals for the Ninth Circuit judgment of 10 July 2017, which stated that *"For the offence of "encubrimiento" (accessory after the fact) and the offence of receiving stolen property, the two offences the Cassirers argue TBC committed when it purchased the Painting from the Baron in 1993, the criminal limitations period is five years, 1973 Spanish Criminal Code arts. 30, 113, 546(bis)(a) and 1995 Spanish Criminal Code arts. 131, 298."*

Since art. 130.1 of the 1995 Spanish Criminal Code establishes that *"criminal liability is extinguished: 6. Due to the expiration of the statute of limitations for the offence"* (as was also established by art. 112.1.6 of the 1973 Spanish Criminal Code), any criminal proceeding that today sought to begin to prosecute offences already barred by the statute of limitations would necessarily end with a dismissal or, if applicable, with an acquittal.

The statute of limitations for the penalty referred to in art. 1956 of the Civil Code may not be taken into account, either, because *nulla poena sine lege* is a fundamental principle of Spanish law. Thus, in the absence of a judicial ruling on the commission of an offence, it is not possible to discuss the existence of a penalty, or, therefore, the statute of limitations for such penalty.

Finally, neither is it possible to apply the statute of limitations for an action claiming civil liability for the offence, also referred to by art. 1956 of the Civil Code. Such statute of limitations period, which the US court set at fifteen years with a citation of Spanish case law, requires that there be a previous criminal judgment holding that an offence was committed, which would give rise to the obligation of the civil liability.

Article 1089 of the Civil Code lists the sources of civil obligations in Spanish law, stating that *"obligations arise from law, contracts, quasi-contracts, and unlawful acts and omissions involving any kind of willful misconduct or negligence."* Later, art. 1092 states that *"civil obligations arising from offences or violations shall be governed by the provisions of the Spanish Criminal Code."* A different article is then dedicated to obligations *"arising from acts or omissions involving willful misconduct or negligence that are not punished by law,"* which shall be subject to the provisions of arts. 1902 et seq. of the Spanish Civil Code.

Article 1956 of the Spanish Civil Code specifically refers to the *"action to claim civil liability arising from the felony or misdemeanor."* That is to say, it refers exclusively to the action provided for in art. 1092, transcribed above, which in turn refers to the provisions of the Spanish Criminal Code.

Article 109 of the 1995 Spanish Criminal Code, in keeping with the Spanish criminal law tradition, establishes that *"the commission of an act described by the law as an offence creates an obligation to provide redress for the harm caused thereby, as established by law."* The Spanish Criminal Code then states in art. 110 that *"the liability established in the previous article includes: 1. Restitution. 2. Redress for the harm. 3. Compensation for economic and non-economic harm."*

..19 SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 6195

The action to claim civil liability arising from the offence may be combined with the criminal proceeding, or it may be reserved to be brought before a civil court, given that art. 109.2 states that "*the injured party may choose, in any event, to claim civil liability before a civil court.*" However, in the latter case, for there to be a ruling that such civil liability exists, there absolutely must be a previous criminal conviction holding that an offence was committed and by whom it was committed.

This is clear from the judgment of the Civil Chamber of the Supreme Court of 20 September 1996 (RJ 1996\6818):

*"(...) thus, it is necessary to uphold the Provincial Court judgment holding that once an "ex delicto" civil liability claim has been brought, no other action may be heard. It must be dismissed because there is no criminal conviction, an essential requirement in order for civil liability to arise. It is clear under art. 114 of the Spanish Criminal Procedure Act (Ley de Enjuiciamiento Penal) that when the facts give rise to criminal proceedings, such proceedings suspend the possibility of bringing a civil claim or suspend any proceeding that may have begun, until a non-appealable judgment is handed down. Such provision requires courts to extend the possibility of bringing civil claims to situations of the definitive dismissal of proceedings and even the provisional dismissal or discontinuance of proceedings (Judgments of 16 November 1985, 20 October 1987, 30 November 1989, or 20 January 1992). However, in these cases, the civil claim that is brought must be that under art. 1902, a claim that is statute barred after one year according to art. 1968, and not an 'ex delicto' claim, which requires the existence of a conviction. Such conviction exists in the case of the pardon or death of the convicted offender, but not when the case is dismissed or discontinued without a previous conviction, since the presumption of innocence continues to exist before a conviction."*

This case law of the Civil Chamber of the Supreme Court has been consistently upheld in subsequent judgments, such as that of 23 January 2009 (RJ 2009\1269), which stated the following:

*"Firstly, it should be noted that the action may not be based on the existence of* "ex delicto" *civil liability, as was the case in the statement of claim, without there being a previous criminal judgment holding that the criminal offence was committed. This is established, inter alia, by the Judgment of this Court of 31 January 2004, holding that "in order for an 'ex delicto' claim to apply, there must be a conviction, not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an 'ex delicto' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993, 10/5/1994, 19/5/1997, 14/4/1998, and 20/11/2001)."*

More recently, the judgment of 27 March 2015 (RJ 2015\2688) confirmed the same line of case law:

*"The most recent case law of this Court is expressed in the judgment that prompted such opinion, cited in the judgment of 23 January 2009. This judgment stated that 'in order for an 'ex delicto' claim to apply, there must be a conviction, not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an 'ex delicto' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993, 10/5/1994, 19/5/1997, 14/4/1998, and 20/11/2001).' This has not taken place in this case, in which the defendant was not convicted*

M.ª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

*in the criminal proceeding, which was discontinued due to the subsequent statement of claim by the accused."*

Therefore, the existence of a previous criminal conviction is an essential requirement for recognizing the existence of an action to claim civil liability arising from the offence (and, therefore, for assessing the statute of limitations of such claim).

In fact, the two judgments cited by the United States Court of Appeal of the Ninth Circuit judgment of 10 July 2017, in order to demonstrate that the statute of limitations for the action to claim civil liability arising from the offence, referred to by art. 1956 of the Civil Code, is fifteen years under art. 1964 of the Civil Code, are judgments based on the premise of the prior existence of a criminal conviction.

Thus, the judgment of 7 January 1982 (RJ 1982\184), which effectively holds that actions to claim civil liability arising from an offence have a statute of limitations of fifteen years, was issued by the Civil Chamber of the Supreme Court in a case in which a criminal proceeding had already occurred and had ended in a conviction. This is expressly stated in the factual background of the judgment:

*"WHEREAS. In order to properly hear this appeal, we must establish the following findings of fact, which have been accepted by the parties, have been held to be proven by the lower court, or may be concluded from a review of the proceedings: A) (...) died in a traffic accident. This was followed by preliminary proceedings in which a judgment was handed down by the Court of First Instance of Algeciras on 11 July 1975, which was held to be non-appealable on 1 September of that year. Such judgment held that an offence of simple recklessness was committed, with a violation of regulations and with death as the result. The defendant Maria Teresa C.T. was held liable as the perpetrator, and in addition to the sentence for the offence imposed on the defendant, she was required to pay, inter alia, damages for the death of Antonio V.V. (...)."*

On the other hand, in its judgment of 15 July 2004 (RJ 2004\4209), the Criminal Chamber of the Supreme Court applied art. 1956 of the Civil Code to render the adverse possession invalid under art. 1955, which the defendant had cited in order to avoid repaying the amounts claimed. The Court did so at the end of its judgment, considering civil liability, after analyzing the defendant's criminal responsibility and upholding the judgment given by the lower court, which had convicted her as *"the criminally liable perpetrator of a continuing offence of fraud, (...) and sentenced her to two years and six months' imprisonment (...)."*

It clearly should be concluded that in cases where criminal prosecution of an alleged offence is barred by the statute of limitations (it should be remembered that, in the case at hand in this report, such period is five years), it is not possible to apply the statute of limitations of fifteen years for actions to claim civil liability arising from such offence, given that such civil action does not arise without a previous ruling on the offence.

In these situations, the case law set forth in the Supreme Court (Civil Chamber) judgment of 31 January 2004 (RJ 2004\444) applies. Such judgment held the following:

*"This is not an 'ex officio' action under art. 1092, as was included in the statement of claim, because there is no criminal offence. This is because the acquittal issued made the facts in the complaint disappear, by ruling that such facts were extinguished by application of the statute*

MB SOLEDAD VALCARCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

22

*of limitations, and thus any possible criminal liability with respect thereto was also extinguished. This means that art. 1092 in relation to art. 1964 does not apply, since the action does not arise from the felony or misdemeanor but rather from the facts, which serve as elements of the felony or misdemeanor. In order for an 'ex delicto' claim to apply, there must be a conviction; not a situation of acquittal, dismissal, or discontinuance, because a criminal judgment is required for an 'ex delicto' claim to apply. The resulting civil claim may not be brought if the facts contained in the statement of claim involve no criminal offence. (Judgments of 26/10/1993 [sic], 10/5/1994, 19/5/1997, 14/4/199 [sic], and 20/11/2001)."*

This case law criterion continues to be applied today by Spanish courts. We can refer to the Navarra Provincial Court judgment of 12 December 2014 (AC 2014\255), which, in addition to transcribing the above-mentioned Supreme Court judgment of 31 January 2014, repeated that "*case law establishes that there is no 'ex delicto' claim when the criminal judgment is for acquittal due to the expiration of the statute of limitations for the offence and, therefore, the civil claim is subject to the ordinary statute of limitations.*" This excludes the statute of limitations of fifteen years under art. 1964 of the Civil Code in relation to art. 1092, and stated that in such case "*only a claim for tort liability under art. 1902 of the Civil Code may be brought*"; the statute of limitations for such claim is one year, as set forth in art. 1968.2.

In light of all of the foregoing, this Government Attorneys Office – Directorate for State Legal Services submits the following for your consideration:

## CONCLUSION

The application of the special adverse possession rule established by art. 1956 of the Spanish Civil Code absolutely requires: that a proceeding be conducted with full due process of law, in which sufficient evidence has been presented; that a non-appealable judgment be handed down, finding that conduct constituting a criminal offence was committed; that such judgment convict the person for this criminal offence, where such person is seeking to obtain property by adverse possession based on possession resulting from such offence.

**Madrid, November 12, 2018**
**THE STATE ATTORNEY GENERAL**

*[Illegible signature]*
*[Stamp of the Spanish Ministry of Justice]*

**Consuelo Castro Rey**

Mª SOLEDAD VALCARCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

SOLEDAD VALCARCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

24 .

| | |
|---|---|
| Mrs. Mª Soledad Valcárcel Conde, Sworn English Translator-Interpreter, designated by the Ministry of Foreign Affairs and Cooperation, hereby certifies that the foregoing is an accurate and complete translation into English of a document written in Spanish. Madrid, 13 November 2018. Signed: Mª Soledad Valcárcel Conde | Doña Mª Soledad Valcárcel Conde, Traductor-Intérprete Jurado de Inglés, nombrado por el Ministerio de Asuntos Exteriores y de Cooperación, certifica que la que antecede es una traducción fiel y completa al inglés de un documento redactado en español. En Madrid, a 13 de noviembre de 2018. Firmado: Mª Soledad Valcárcel Conde |

Mª SOLEDAD VALCÁRCEL CONDE
Traductora-Intérprete Jurada de INGLÉS
N.º 4195

# ATTACHMENT 3

Docket No. 19-55616

*In the*

# UNITED STATES COURT OF APPEALS

*For the*

# NINTH CIRCUIT

DAVID CASSIRER, THE ESTATE OF AVA CASSIRER, and
UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY,
a California non-profit corporation,
*Plaintiffs-Appellants,*

*vs.*

THYSSEN-BORNEMISZA COLLECTION FOUNDATION,
*Defendant-Appellee.*

APPEAL FROM JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:05-CV-03549-JFW-E
HON. JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

## BRIEF OF *AMICUS CURIAE* THE KINGDOM OF SPAIN IN SUPPORT OF APPELLEE THYSSEN-BORNEMISZA COLLECTION FOUNDATION

Amelia L. B. Sargent, California State Bar No. 280243
WILLENKEN LLP
707 WILSHIRE BLVD., SUITE 3850
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 955-9240
FACSIMILE: (213) 955-9250

*Attorney for Amicus Curiae*
The Kingdom of Spain

## CORPORATE DISCLOSURE STATEMENT

The Kingdom of Spain is a foreign sovereign entity, and as such, pursuant to

Rule 29(a)(4)(A), no corporate disclosure statement is required.


Respectfully submitted,

Dated:  January 15, 2020          WILLENKEN LLP


By:  */s/ Amelia L. B. Sargent*
       Amelia L. B. Sargent
       Attorney for *Amicus Curiae*
       The Kingdom of Spain

i

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .........................................................i

INTRODUCTION AND INTEREST OF AMICUS .................................................1

SUMMARY OF ARGUMENT ................................................................................2

ARGUMENT ..........................................................................................................4

CONCLUSION ........................................................................................................5

CERTIFICATE OF COMPLIANCE.........................................................................6

STATEMENT OF RELATED CASES .....................................................................7

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.,*
    138 S.Ct. 1865 (2018)............................................................................5

*Cassirer v. Thyssen-Bornemisza Collection Foundation,*
    862 F.3d 951 (9th Cir. 2017) ...............................................................2


## Other Authorities

Spanish Civil Code, Article 3.1 ........................................................ passim

Spanish Civil Code, Article 1956 ..................................................... passim


## Constitution of the Kingdom of Spain

Spanish Constitution of 1978........................................................... passim

162154.1

## INTRODUCTION AND INTEREST OF AMICUS[1]

The Kingdom of Spain has an interest in the proper interpretation, application, and enforcement of its constitution and civil and criminal laws in foreign tribunals. The Kingdom of Spain also has an interest in ensuring the correct application of its laws to its own residents, citizens, and entities, including Appellee Thyssen-Bornemisza Collection Foundation (the "Foundation").

Following the District Court's April 30, 2019 Order, the Ministry of Culture and Sport certified the question to the Ministry of Justice as to whether, in order to apply the special rule of acquisitive prescription under article 1956 of the Spanish Civil Code, a final judgment must first be handed down by a criminal court convicting the person seeking to acquire property through acquisitive prescription. The Ministry of Justice also reviewed the District Court's Order. It has issued a report for the Court's consideration, attached and incorporated here as Attachment 1 with an official certified translation, signed by its Solicitor General Consuelo Castro Rey (the "Ministry Report"). The short answer to the certified question is yes. Ministry Rep., p. 13. The District Court concluded to the contrary, which is legal error and should be corrected by this Court on appeal.

---

[1] No portion of this brief was authored by any party or by counsel for any party in this matter. No one other than the Kingdom of Spain and its counsel made any monetary contribution intended to fund the preparation or submission of the brief.

1

## SUMMARY OF ARGUMENT

As set forth in the Ministry Report, the District Court's conclusion that article 1956 of the Spanish Civil Code may be applied to a civil defendant in the absence of a criminal conviction contravenes the fundamental constitutional right to the presumption of innocence, enshrined in article 24.2 of the Spanish Constitution of 1978. It also violates Spanish substantive due process, pursuant to which it is impossible for a civil court judge to resolve criminal matters such as declaring that someone has participated in a crime of theft or robbery. The District Court's decision to interpret article 1956 according to legal commentators is not in accordance with the Spanish Constitution, the criteria set forth in article 3.1 of the Spanish Civil Code, or Spanish case law.

This Court previously recognized that article 1956 of the Spanish Civil Code was enacted in 1889, and stated that it has not been modified since then. *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 862 F.3d 951, 967 (9th Cir. 2017) ("Article 1956 has not been modified since 1889."). It therefore interpreted the law by its plain text meaning according to article 3.1 of the Spanish Civil Code, *id.* at 968-970, as the District Court purportedly also did, ER32.

While it may be true that the text of article 1956 has not been modified since 1889, however, the meaning has. After the death of General Francisco Franco, Spain transitioned its government to a democracy and enacted the Spanish

2

Constitution of 1978. The Spanish Constitution enshrines certain fundamental rights and provisions that are superior to all other Spanish law. Critically, **no interpretation of any law may be carried out contrary to the provisions of the Constitution.** Ministry Rep., p. 5. The Spanish Constitutional Court has stated that "the approach reiterated in our case law" is "to establish the principle of supremacy of the Constitution over the rest of the legal system." Id. The supremacy of the Spanish Constitution provides a lens through which all the laws, including the Civil Code, must be viewed. In the Ministry Report, the Solicitor General of Spain states clearly that "we must once again insist on the importance of interpreting article 1956 of the Spanish Civil Code – like the rest of the Spanish legal system – pursuant to the provisions of the Spanish Constitution of 1978." Id.

The Ministry Report makes several key points that are dispositive of the issue of the application of article 1956:

- "Article 1956 is . . . based on criminal behaviour." Id., p. 2.
- Because it has its basis in a criminal determination, the constitutional right to the presumption of innocence is triggered. Id., p. 3. The fact that the application of article 1956 is ultimately a civil matter "does not provide grounds for not applying the constitutional principle of the presumption of innocence and the requirements thereof." Id., p. 4.
- "[I]n order to render invalid the principle of the presumption of

3

innocence, the relevant judicial ruling (conviction) must inevitably be handed down, after a proceeding has been conducted with full due process of law, in which sufficient evidence for the prosecution has been presented." Id., p. 3.

- "[N]o interpretation pursuant to the criteria [in article 3.1 of the Spanish Civil Code] may be carried out that is contrary to the provisions enshrined in the Fundamental Law of the State [i.e., the Constitution]." Id., p. 5.

- As a matter of substantive due process, "[w]hat cannot occur under any circumstances under Spanish Law is for a civil court judge to resolve, not even for the purposes of preliminary points of law or civil matters, a criminal matter[.]" Id., p. 7.

- The interpretation of article 1956 adopted by the District Court based on the doctrinal opinion of Manuel Albaladejo Garcia "cannot be shared by this Government Attorney's Office" because it is "contrary to the provisions of article 24.2 of said Fundamental Law." Id., p. 10.

## ARGUMENT

Spain respectfully refers the Court to the Ministry Report, which it fully incorporates and is attached hereto as Attachment 1. The certified translation of the Ministry Report has been included in the word count of this brief.

4

162154.1

The Ministry Report refers to an earlier report dated November 12, 2018.

This was submitted in an *amicus* brief to the District Court on November 27, 2018,

in the record at Dkt. 449, and deemed filed on November 28, 2018, Dkt. 455. The

District Court's opinion did not address Spain's prior submission in its opinion,

which, as noted in the accompanying Motion for Leave, runs afoul of the Supreme

Court's guidance that "views of the State's attorney general" should "attract[]

respectful consideration" by the federal courts. *Animal Science Products, Inc. v.*

*Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S.Ct. 1865, 1874 (2018).

## CONCLUSION

The judgment of the District Court should be affirmed.


Respectfully submitted,

Dated: January 15, 2020        WILLENKEN LLP


By: */s/ Amelia L. B. Sargent*
   Amelia L. B. Sargent
   Attorney for *Amicus Curiae*
   The Kingdom of Spain


5

162154.1

# CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 19-55616

I am the attorney or self-represented party.

**This brief contains 5,645 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
   29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
   *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint
   brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Respectfully submitted,

Dated: January 15, 2020         WILLENKEN LLP

By: */s/ Amelia L. B. Sargent* _____
   Amelia L. B. Sargent
   Attorney for *Amicus Curiae*
   The Kingdom of Spain

6

162154.1

## STATEMENT OF RELATED CASES

(9th Cir. R. 28-2.6)

Amicus Kingdom of Spain is not aware of any related cases, as defined by

Ninth Circuit Rule 28-2.6, that are currently pending in this Court.


Respectfully submitted,

Dated:  January 15, 2020          WILLENKEN LLP


By:  */s/ Amelia L. B. Sargent*
     Amelia L. B. Sargent
     Attorney for *Amicus Curiae*
     The Kingdom of Spain

162154.1

# ATTACHMENT 4

Docket No. 19-55616

*In the*

# UNITED STATES COURT OF APPEALS

*For the*

# NINTH CIRCUIT

---

DAVID CASSIRER, THE ESTATE OF AVA CASSIRER, and
UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY,
a California non-profit corporation,
*Plaintiffs-Appellants,*

*vs.*

THYSSEN-BORNEMISZA COLLECTION FOUNDATION,
*Defendant-Appellee.*

---

APPEAL FROM JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:05-CV-03549-JFW-E
HON. JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

---

## BRIEF OF *AMICUS CURIAE* THE KINGDOM OF SPAIN IN SUPPORT OF APPELLEE THYSSEN-BORNEMISZA COLLECTION FOUNDATION

---

Amelia L. B. Sargent, California State Bar No. 280243
Kirby Hsu, California State Bar No. 312535
WILLENKEN LLP
707 WILSHIRE BLVD., SUITE 3850
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 955-9240
FACSIMILE: (213) 955-9250

*Attorney for Amicus Curiae*
The Kingdom of Spain

## CORPORATE DISCLOSURE STATEMENT

The Kingdom of Spain is a foreign sovereign entity, and as such, pursuant to

Federal Rule of Appellate Procedure 29(a)(4)(A), no corporate disclosure

statement is required.

Respectfully submitted,

Dated:  July 15, 2022          WILLENKEN LLP

By:  */s/ Amelia L. B. Sargent* _____
     Amelia L. B. Sargent
     Attorney for *Amicus Curiae*
     The Kingdom of Spain

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...........................................................i

INTRODUCTION AND INTEREST OF AMICUS .................................................1

SUMMARY OF ARGUMENT ...............................................................................2

ARGUMENT ..........................................................................................................3

CONCLUSION .......................................................................................................4

CERTIFICATE OF COMPLIANCE ......................................................................5

STATEMENT OF RELATED CASES ...................................................................6

ii

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Animal Sci. Products, Inc. v. Hebei Welcome Pharm. Co. Ltd.,*
  138 S. Ct. 1865 (2018) ........................................................................................... 3

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
  142 S. Ct. 1502 (2022) ........................................................................................... 1

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
  153 F. Supp. 3d 1148 (C.D. Cal. 2015) ................................................................. 3

## **Other Authorities**

Fed. R. Civ. P. 44.1 ..................................................................................................... 4

## INTRODUCTION AND INTEREST OF AMICUS[1]

The Kingdom of Spain ("Spain") has an interest in ensuring the application

of its constitutional and substantive laws to its own citizens and instrumentalities,

including Appellee Thyssen-Bornemisza Collection Foundation ("Foundation"), in

foreign courts.  Spain's Ministry of Culture and Sports ("Ministry") has reviewed

the Supreme Court's decision finding that this Court should make a new

determination under California's choice-of-law rules as to whether Spanish or

California law applies. *See Cassirer v. Thyssen-Bornemisza Collection Found.*,

142 S. Ct. 1502, 1510 (2022).  The Ministry has issued the legal report of

Undersecretary Eduardo Fernández Palomares ("Ministry Report") for the Court's

consideration, attached and incorporated here as Attachment 1 with an official

certified translation.

Through the Ministry Report, Spain asserts its substantial interest in the

application of Spanish law to the adjudication of the Foundation's ownership in the

painting *Rue Saint-Honoré, après-midi, effet de pluie* by Camille Pissaro

("Painting").  The Court should apply Spanish law, based on Spain's

overwhelming interest, and affirm the District Court's judgment.

---

[1] No portion of this brief was authored by any party or by counsel for any party in
this matter.  No one other than the Kingdom of Spain and its counsel made any
monetary contribution intended to fund the preparation or submission of the brief.

1

## **SUMMARY OF ARGUMENT**

As set forth in the Ministry Report, Spain has a considerable interest in the application of its law to the determination of the Painting's ownership:

- Spain's enactment of Royal Decree-Law 11/1993 ("Decree-Law"), in 1993, authorized the Foundation, a Spanish person (instrumentality), to acquire the Thyssen-Bornemisza Collection, which includes the Painting, and provided the financing for the purchase. Ministry Report at 1.

- The Decree-Law established the "inalienable and unseizable" status of the Painting and gave the Foundation rights that are "specifically and expressly recognized" by the Spanish Legislature. *Id.*

- The contract through which the Foundation acquired the Painting was entered in Spain, where the Foundation publicly displayed the Painting for about 30 years. *Id.*

- Acquisitive prescription (adverse possession), the legal doctrine allowing a party to legitimately acquire ownership of property through the passage of time and peaceful possession, is a "fundamental institution" of Spanish law. *Id.* at 2.

- Because of acquisitive prescription, the Foundation has vested ownership rights in the Painting, rights that are protected by Spanish

2

property law and the Foundation's due process rights. *Id.*

- A judgment based on the law of another jurisdiction depriving the

  Foundation of ownership rights in the Painting would be "blatantly

  contrary to Spanish law" and "seriously affect" Spain's interest in

  ensuring a legal framework governing the enforcement of contracts,

  ownership in private property, and the exercise of rights granted under

  Spanish law to Spain's citizens and instrumentalities. *Id.*

## ARGUMENT

Spain respectfully refers the Court to the Ministry Report, which it fully

incorporates and is attached hereto as Attachment 1. The certified translation of

the Ministry Report has been included in the word count of this brief.

The Ministry Report makes clear Spain's substantial interest in having its

law apply. Indeed, the District Court, applying California's choice-of-law rules,

previously concluded that Spanish law should apply given Spain's interest in the

adjudication of the Painting's ownership. *See Cassirer v. Thyssen-Bornemisza

Collection Found.*, 153 F. Supp. 3d 1148, 1155-60 (C.D. Cal. 2015), *rev'd and

remanded*, 862 F.3d 951 (9th Cir. 2017). Even if this Court is not inclined to adopt

the District Court's findings, the Court should consider Spain's assertion of its own

interests when analyzing the choice-of-law issue. *See Animal Sci. Products, Inc. v.

Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1869 (2018) (explaining that a

3

"foreign government's submission" of an "official statement on the meaning and

interpretation of its domestic law" should be accorded "respectful consideration");

Fed. R. Civ. P. 44.1 (allowing courts to "consider any relevant material or source"

to determine foreign law).

## **CONCLUSION**

The Court should find that Spanish law applies and affirm the judgment of

the District Court.

Respectfully submitted,

Dated: July 15, 2022                WILLENKEN LLP

By:  */s/ Amelia L. B. Sargent*
    Amelia L. B. Sargent
    Attorney for *Amicus Curiae*
    The Kingdom of Spain

4

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 19-55616

I am the attorney or self-represented party.

**This brief contains 1,603 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Amelia L. B. Sargent*        **Date** July 15, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

5

## STATEMENT OF RELATED CASES

### (9th Cir. R. 28-2.6)

*Amicus* Kingdom of Spain is not aware of any related cases, as defined by

Ninth Circuit Rule 28-2.6, that are currently pending in this Court.

Respectfully submitted,

Dated: July 15, 2022                    WILLENKEN LLP


By:  */s/ Amelia L. B. Sargent* _____
        Amelia L. B. Sargent
        Attorney for *Amicus Curiae*
        The Kingdom of Spain

6

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on July 15, 2022.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

*/s/ Amelia L. B. Sargent*

Amelia L. B. Sargent

# ATTACHMENT 1

*[Coat of Arms of Spain]* **MINISTRY OF CULTURE AND SPORTS**



## TO THE COURT OF APPEALS OF THE NINTH CIRCUIT OF THE UNITED STATES OF AMERICA

Mr. Eduardo Fernández Palomares, Undersecretary of the Ministry of Culture and Sports, pursuant to the appointment made by Royal Decree 870/2021, of October 5 (Official State Gazette [BOE] No. 239, of October 6, 2021), and subject to the powers conferred upon him by Section 63 of Law 40/2015, of October 1, of the Legal Regime of the Public Sector, and Section 6 of Royal Decree 509/2020, of May 5, for the development of the basic organizational structure of the Ministry of Culture and Sports, HEREBY EXPRESSES:

The Ministry of Culture and Sports of the Kingdom of Spain has been informed that, pursuant to the proceedings brought against the Fundación Colección Thyssen-Bornemisza (the Thyssen-Bornemisza Collection Foundation), by Mr. David Cassirer and others, regarding the claim of ownership of the painting *Rue Saint-Honoré, après midi, effet de pluie*, by Camille Pissarro, recently it has been brought before the Court mentioned above an alleged lack of legitimate interest of the Kingdom of Spain in the application of Spanish law, preferring the law of the State of California, for the determination of the ownership title of the Thyssen-Bornemisza Collection Foundation over the aforementioned painting.

Considering this matter, this Ministry considers that it is its duty, as a way of helping the Court to correctly resolve the dispute, to emphasize that the Kingdom of Spain has an unquestionable interest in ensuring that the matter of the ownership of the painting is analyzed and resolved pursuant to Spanish law on the acquisition of property:

1. Spain abides by the rule of law, and totally respects human rights and international law. The Government of Spain has the utmost respect for the sovereignty of the other states of the International Community and deems it fair to demand respect for its sovereignty and for its legitimacy to enact laws on fundamental issues of private law, such as the regime of acquisition and transmission of the right to ownership of movable property.

2. The hypothetical enforcement of the laws of another state to determine the validity of the title of ownership of a property purchased by a Spanish person under a contract of sale entered in Spain, on a property located in Spain, and whose acquirer has possessed publicly and notoriously in Spanish territory for more than 30 years, would unduly infringe on the interest of the Kingdom of Spain in legislating on the ownership of property located in its territory.

3. The purchase of the Thyssen-Bornemisza Collection, which includes the painting in question, was done with funds provided by the Spanish State to the Thyssen Bornemisza Collection Foundation and in accordance with Royal Decree-Law 11/1993, of June 18, 1993, concerning measures regulating the contract for the acquisition of the Thyssen-Bornemisza Collection, ratified by the Congress of Deputies. Said Decree-Law not only granted the Foundation the power to purchase the Collection and the financing for the same, but it also established the inalienable and unseizable condition of the works in the Collection. Therefore, depriving the Foundation of its rights over the painting would also infringe an interest specifically and expressly recognized by the Spanish legislator.

*[Coat of Arms of Spain]* **MINISTRY OF CULTURE AND SPORTS**



4. A hypothetical ruling that would deprive the Foundation of the ownership of a painting from said Collection for the benefit of a third party, pursuant to the regulations of a territory alien to that transaction, would not only be blatantly contrary to Spanish law, but it would also severely affect the legitimate interest of Spain to ensure a framework of legal certainty for private property, for the effectiveness of contracts and transactions undertaken in Spain, and for the exercise of the rights granted by Spanish law to Spanish citizens and citizens of third countries who conduct activities or transactions in the territory of Spain legitimately relying on the complete validity of the laws of Spain.

5. In this case, this is especially true, given that the Foundation's rightful ownership was vested pursuant to substantive Spanish private property law long before the claim that is the subject of the present legal proceedings was made. To divest the Foundation of its validly acquired property rights forfeits significant damage to the interests of the State of Spain and violates its rights as a cultural institution. Specifically, this is true because the trial held in the United States on the merits of the case established unequivocally that the Foundation had no knowledge of the circumstances in which the painting was removed in the past, and when the United States Court of First Instance recognized the diligent pre-acquisition investigation undertaken by the Kingdom of Spain and the Foundation before carrying out the necessary investment to acquire and maintain the collection for the purpose of public exhibition in Madrid.

6. The Spanish provisions for the acquisition of property, and more specifically the regime to be applied to acquisitive prescription, are a fundamental institution of Spanish private law, and can be fully equated with those prevailing in the legal schemes of the most developed countries.

7. The acquisition of property through the passing of time and peaceful possession —in good faith, moreover, in this case— is an accepted and consolidated principle, and under no circumstances infringes international treaties or conventions.

Consequently, the Ministry of Culture and Sports finds it clear that the Kingdom of Spain has a legitimate interest when it comes to the application of Spanish law to determine the ownership of the painting *Rue Saint-Honoré, après midi, effet de pluie*, by Camille Pissarro. Such an interest would be grossly infringed if the Thyssen-Bornemisza Collection Foundation becomes deprived of the ownership of the painting pursuant to the laws of the State of California or any other state.

In Madrid on July 12, 2022
Undersecretary of the Ministry of Culture and Sports
*[Signature]*
*[Stamp of the Undersecretariat of the Ministry of Culture and Sports]*

Eduardo Fernández Palomares

MORNINGSIDE
A Questel Company

# TRANSLATION CERTIFICATION

Date: July 14, 2022

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Spanish (Spain)

To:

- English (USA)

The documents are designated as:
- Apelacion-cuadro-Thyssen-EEUU.pdf

Leslie Yale, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

*Leslie Yale*

Signature of Leslie Yale

MINISTERIO
DE CULTURA
Y DEPORTE

## A LA CORTE DE APELACIONES DEL NOVENO CIRCUITO DE LOS ESTADOS UNIDOS DE AMÉRICA

D. Eduardo Fernández Palomares, Subsecretario del Ministerio de Cultura y Deporte en virtud del nombramiento efectuado por Real Decreto 870/2021, de 5 de octubre (BOE nº 239, de 6 de octubre de 2021), y conforme a las atribuciones que le confiere el artículo 63 de la Ley 40/2015, de 1 de octubre, de Régimen Jurídico del Sector Público y el artículo 6 del Real Decreto 509/2020, de 5 de mayo, por el que se desarrolla la estructura orgánica básica del Ministerio de Cultura y Deporte, EXPONE:

Este Ministerio de Cultura y Deporte del Reino de España tiene conocimiento de que, en el marco del procedimiento seguido frente a la Fundación Colección Thyssen-Bornemisza por D. David Cassirer y otros en reclamación de la propiedad del cuadro *Rue Saint-Honoré, après midi, effet de pluie*, de Camille Pissarro, se ha suscitado recientemente ante la Corte a la que me dirijo la cuestión de una supuesta falta de interés legítimo del Reino de España en la aplicación de la ley española, con preferencia sobre la legislación del Estado de California, para la determinación del título de propiedad de la Fundación Colección Thyssen-Bornemisza sobre el referido cuadro.

A la vista del planteamiento de esa cuestión, este Ministerio considera que es su deber, para ayudar al Tribunal a resolver correctamente en derecho el litigio planteado, poner de manifiesto que el Reino de España tiene un interés incuestionable en que el asunto de la propiedad del cuadro se analice y se resuelva con arreglo a la legislación española en materia de adquisición de la propiedad:

1    España es un estado de derecho, plenamente respetuoso de los Derechos Humanos y del derecho internacional. El Gobierno de España respeta la soberanía de los demás estados de la Comunidad Internacional, y considera justo exigir respeto por su soberanía y por su legitimidad para legislar sobre cuestiones fundamentales del derecho privado, como es el régimen de adquisición y transmisión del derecho a la propiedad sobre bienes muebles.

2    La hipotética aplicación de las leyes de otro estado para determinar la validez del título de propiedad sobre un bien adquirido por una persona española en virtud de un contrato de compraventa celebrado en España, sobre un bien situado en España, y cuyo adquirente ha poseído de manera pública y notoria en territorio español desde hace más de 30 años, lesionaría injustificadamente el interés del Reino de España en legislar sobre la propiedad de los bienes situados en su territorio.

3    La compra de la Colección Thyssen-Bornemisza, de la que forma parte el cuadro que nos ocupa, se llevó a cabo con fondos aportados por el Estado Español a la Fundación Colección Thyssen-Bornemisza, y al amparo del Real Decreto-ley 11/1993, de 18 de junio, sobre medidas reguladoras del contrato de adquisición de la colección Thyssen-Bornemisza, ratificado por el Congreso de los Diputados. El mencionado Decreto-Ley no solo facultaba a la Fundación para la compra de la Colección y concedía la financiación para la misma, sino que establecía el carácter inalienable e inembargable de las obras de la Colección. La privación a la Fundación de sus derechos sobre el cuadro lesionaría por ello también un interés reconocido específicamente y de manera expresa por el legislador español.

MINISTERIO
DE CULTURA
Y DEPORTE

4   Una hipotética sentencia que privase a la Fundación de la propiedad de un cuadro de esa Colección en favor de un tercero, con arreglo a la normativa de un territorio ajeno a esa transacción, no solo sería manifiestamente contraria a la legislación española, sino que afectaría gravemente al interés legítimo de España en garantizar un marco de seguridad jurídica para la propiedad privada, para la eficacia de los contratos y las transacciones realizadas en España, y para el ejercicio de los derechos reconocidos por la legislación española a los ciudadanos españoles y a los ciudadanos de terceros países que actúen u operen en el territorio de España en la confianza legítima de la vigencia plena de las leyes de España.

5   Esto es especialmente cierto en este caso, en el que la propiedad legítima de la Fundación se adquirió de acuerdo con la legislación sustantiva española en materia de propiedad privada antes de que se formulase la reclamación de la que trae causa el procedimiento judicial que nos ocupa. Despojar a la Fundación de sus derechos de propiedad válidamente adquiridos supondría un daño significativo para los intereses del Estado español, y vulneraría sus derechos como institución cultural. Esto es así especialmente por cuanto que el juicio celebrado en Estados Unidos sobre el fondo de la cuestión estableció de manera indubitada que la Fundación no tenía conocimiento de las circunstancias en que el cuadro fue expoliado en el pasado, y cuando el Tribunal de Primera Instancia de Estados Unidos reconoció la diligente investigación previa a la adquisición llevada a cabo por parte del Reino de España y de la Fundación antes acometer la inversión necesaria para adquirir y mantener la colección con el fin de exponerla públicamente en Madrid.

6   Las normas españolas relativas a la adquisición de la propiedad, y en particular el régimen aplicable a la prescripción adquisitiva son una institución fundamental del derecho privado español, y son plenamente equiparables a las que rigen en los sistemas legales de los países más desarrollados.

7   La adquisición de la propiedad por el transcurso del tiempo y la posesión pacífica –de buena fe, además, en este caso– es un principio aceptado y consolidado, y que de ningún modo contraviene tratados o convenios internacionales.

En atención a lo expuesto, el Ministerio de Cultura y Deporte considera evidente la existencia de un interés legítimo del Reino de España en la aplicación de la legislación española a la determinación de la propiedad del cuadro *Rue Saint-Honoré, après midi, effet de pluie*, de Camille Pissarro. Ese interés quedaría gravemente lesionado si se privase a la Fundación Colección Thyssen-Bornemisza de la propiedad del cuadro al amparo de la normativa del Estado de California o de cualquier otro estado.

En Madrid, a 12 de julio de 2022

El Subsecretario de Cultura y Deporte

Eduardo Fernández Palomares