IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

No. 19-55616

---

DAVID CASSIRER, THE ESTATE OF AVA CASSIRER, and UNITED JEWISH
FEDERATION OF SAN DIEGO, a California non-profit corporation,
Plaintiffs/Appellants

v.

THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or
instrumentality of the Kingdom of Spain
Defendant/Appellee

---

On Appeal from the United States District Court
for the Central District of California, Honorable John F. Walter
District Court No. CV-05-03459-JFW

---

**DEFENDANT/APPELLEE THYSSEN-BORNEMISZA COLLECTION
FOUNDATION'S RESPONSE TO PLAINTIFFS/APPELLANTS'
PETITION FOR REHEARING AND REHEARING EN BANC**

---

Thaddeus J. Stauber
Aaron M. Brian
Zachary C. Osinski
NIXON PEABODY LLP
300 S. Grand Avenue, 41st Floor
Los Angeles, California, 90071
Telephone (213) 629-6000
Facsimile (213) 629-6001

Attorneys for Defendant/Appellee
THYSSEN-BORNEMISZA COLLECTION FOUNDATION

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ....................... 1

STANDARD OF REVIEW ........................................................................... 3

ARGUMENT ............................................................................................. 4

I.    The Application of California's Choice-of-Law Test is Not a Question of Exceptional Importance .................................................................... 4

II.    Plaintiffs Failed to Demonstrate the Decision Requires Correction .............. 5

    A.    This Court Correctly Applied California's Choice-of-Law Test .......... 5

    B.    Spain Has a Strong Interest in Seeing its Law Applied California ....... 8

    C.    California's Interests are Not Impaired by the Application of Spanish Law ....................................................................... 11

    D.    Application of Spanish Law Results in the Maximum Attainment of Underlying Purpose by All Governmental Entities ....................... 13

    E.    The Legislature Cannot Mandate the Application of California Law and Recent Supreme Court Precedent Mandates Dismissal Under FSIA ...................................................................................... 15

CONCLUSION ....................................................................................... 19

CERTIFICATE OF COMPLIANCE .......................................................... 20

CERTIFICATE OF SERVICE .................................................................. 21

4887-3918-3282.14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Ins. Assoc. v. Garamendi*,
  539 U.S. 396 (2003)........................................................................12

*Bernhardt v. Cnty. of Los Angeles*,
  279 F.3d 862 (9th Cir. 2002) ........................................................18

*Cassirer v. Kingdom of Spain*,
  461 F. Supp. 2d 1157 (C.D. Cal. 2006) ........................................18

*Cassirer v. Kingdom of Spain*,
  616 F.3d 1019 (9th Cir. 2010) ........................................................1

*Cassirer v. Thyssen Bornemisza Collection Found.*,
  89 F.4th 554 (9th Cir. 2024) ..................................................*passim*

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  153 F. Supp. 3d 1148 (C.D. Cal. 2015) ..............................1, 11, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ...............................2

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  596 U.S. 107 (2002)....................................................................2, 17

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  69 F.4th 554 (9th Cir. 2023) ........................................................2, 5

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  737 F.3d 613 (9th Cir. 2013) ....................................................12, 16

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  824 F. App'x 452 (9th Cir. 2020) ..............................................10, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  862 F.3d 951 (9th Cir. 2017) .......................................1, 2, 8, 9, 10

4887-3918-3282.14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
No. CV 05-03459 GAF EX, 2014 WL 5510996 (C.D. Cal. Oct. 31,
2014) ...................................................................................................19

*Federal Republic of Germany v. Philipp*,
141 S. Ct. 703 (2021) ...................................................................17, 18

*Henderson ex rel. Henderson v. Shinseki*,
562 U.S. 428 (2011) ...........................................................................19

*Kipp v. Davis*,
986 F.3d 1281 (9th Cir. 2021) ..............................................................4

*McCann v. Foster Wheeler LLC*,
225 P.3d 516 (2010) .........................................................................6, 11

*Newdow v. United States Cong.*,
328 F.3d 466 (9th Cir. 2003) ............................................................3, 4

*Simon v. Republic of Hungary*,
77 F.4th 1077 (D.C. Cir. 2023) ..........................................................18

*United States v. Cooley*,
947 F.3d 1215 (9th Cir. 2020) ..............................................................5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ........................................................12, 16

**State Statutes**

California Code of Civil Procedure § 338(c)(3)(A) ....................................11, 12, 13

**Federal Statues**

Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ...................1, 15, 17, 18

Holocaust Expropriated Art Recovery Act, Pub. L. No. 114-308, 130
Stat. 1524 .......................................................................................10

Federal Rule of Appellate Procedure 35(a) .........................................................1, 3

**Foreign Statutes**

Spanish Civil Code Article 1955 .............................................................9, 10, 11, 14

iii

4887-3918-3282.14

Spanish Civil Code Article 1956 ................................................................9

**Other Authorities**

https://www.state.gov/best-practices-for-the-washington-conference-
    principles-on-nazi-confiscated-art/ ....................................................10

https://www.state.gov/prague-holocaust-era-assets-conference-terezin-
    declaration/...........................................................................................9

Jason A. Cantone & Carly Giffin, *Certified Questions of State Law:
    An Empirical Examination of Use in Three U.S. Courts of Appeals*,
    53 U. Tol. L. Rev. 1, 38 (2021) ...........................................................5

iv

**INTRODUCTION**

This panel's January 9, 2024, opinion correctly applied California's choice-of-law test. *See Cassirer v. Thyssen Bornemisza Collection Found.*, 89 F.4th 554 (9th Cir. 2024) ("the Decision" or "*Cassirer VII*"). Plaintiffs have not set forth *any* basis for rehearing under Federal Rule of Appellate Procedure 35(a)

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This case was filed against the Kingdom of Spain and the Foundation, an agency or instrumentality of Spain, in 2005. This Court previously found that an exception to the Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ("FSIA") applied to permit jurisdiction over the Foundation. *See Cassirer v. Kingdom of Spain,* 616 F.3d 1019, 1028-32 (9th Cir. 2010) (en banc) ("*Cassirer I*").

In cross motions for summary judgment, the district court was asked to determine whether Spanish or California substantive law should apply. Recognizing a split of decision among the federal circuits whether federal common law or the forum's choice-of-law test should govern, the district court analyzed each test and found they *both* resulted in application of Spanish law. *See Cassirer v. Thyssen-Bornemisza Collection Found.,* 153 F. Supp. 3d 1148, 1154 (C.D. Cal. 2015).

On appeal, the panel agreed that federal choice-of-law rules applied and that Spanish law governed this dispute. *Cassirer v. Thyssen-Bornemisza Collection*

1

*Found.,* 862 F.3d 951, 961-64 (9th Cir. 2017) ("*Cassirer III*"). On remand and following a trial on the merits, the district court found the Foundation did not have actual knowledge that the painting was stolen, and that it acquired title to the painting through Spanish acquisitive prescription. *See Cassirer v. Thyssen-Bornemisza Collection Found*., 2019 WL 13240413, at *20-22 (C.D. Cal. Apr. 30, 2019). Judge Walter's factual findings and determination that Spanish law applied were unanimously affirmed by this Court.

The Supreme Court reversed the panel's decision, holding that California's choice-of-law test should have been applied. *See Cassirer v. Thyssen-Bornemisza Collection Found.,* 596 U.S. 107, 114-17 (2002) ("*Cassirer V*"). On remand, and over Judge Bea's strong dissent, the panel majority granted plaintiffs' motion to certify to the California Supreme Court the question of whether under California's choice-of-law test the law of Spain or California should apply. The panel majority noted that Judge Walter concluded Spanish law applied under this test. In his dissent, Judge Bea detailed why "Spain is the only interested jurisdiction" and that "[t]his is a simple, straightforward analysis that requires no certification to the California Supreme Court." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554, 575 (9th Cir. 2023) ("*Cassirer VI*") (Bea, J., dissenting); *see also id.* at 586 ("Each and every relevant factor favors Spanish law. The majority has not identified a single factor that goes the other way.").

2

The California Supreme Court declined the panel majority's request to answer the certified question by a 6-1 vote. The panel thereafter affirmed that California's choice-of-law test mandates the application of Spanish law. *See Cassirer VII*, 89 F.4th at 1235-45.

## STANDARD OF REVIEW

"An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. Proc. 35(a). Plaintiffs do not contend that en banc consideration is necessary to maintain uniformity of this Court's decision or that the opinion conflicts with any relevant, controlling precedent. Instead, plaintiffs address the second factor only.

However, "[h]undreds of important cases are filed each year in the Ninth Circuit. These include cases involving the constitutionality of state and federal laws, multimillion dollar claims and the interpretation of critical federal statutes. The court rarely grants en banc rehearing based solely on the 'exceptional importance' of a case." Chris Goelz et al., Rutter Group Practice Guide: Federal Ninth Circuit Appellate Practice Ch. 11-B (2024).

Moreover, a petition for rehearing en banc may not be granted unless the case is "*both* of exceptional importance and the decision *requires correction*."

3

*Newdow v. United States Cong.*, 328 F.3d 466, 470 (9th Cir. 2003) (Reinhardt, J., concurring in denial of petitions for rehearing). *Neithe*r requirement is present here.

## ARGUMENT

### I. The Application of California's Choice-of-Law Test is Not a Question of Exceptional Importance

The question at issue is the straightforward application of California's well-established choice-of-law test. These non-novel issues do not present a question of exceptional importance. As this Court cautioned, "[w]e cannot lose sight of the standards for what constitutes an appropriate case for rehearing en banc. This case is not one of them—it involves the application of settled legal standards to a set of facts." *Kipp v. Davis*, 986 F.3d 1281, 1285 (9th Cir. 2021) (Paez, J.. concurring).

To support their petition, plaintiffs cite to Judge Callahan's concurrence, asserting the Decision is "at odds with our moral compass." *Cassirer VII*, 89 F.4th at 1246 (Callahan, J., concurring). However, as Judge Callahan then acknowledged, the Decision is nonetheless correct and "compelled by the district court's findings of fact and the applicable law[.]" Plaintiffs also rely on the panel majority's previous comments that this case involves "important, unresolved public policy ramifications" sufficient to certify the choice-of-law question to the California Supreme Court. Pet. at 8. However, the California Supreme Court denied the request to weigh in on this "unresolved" issue, one of the rare instances

4

where it declined to answer a certified question from this Court.[1]  Moreover, the "simple, straightforward analysis" involved in applying California's choice-of-law test to the facts of this case "is clearly mapped out by decades of California Supreme Court precedent . . . [and] [t]here is nothing novel about this case that obfuscates this result [and application of Spanish law]."  *Cassirer VI*, 69 F.4th at 586 (Bea, J., dissenting).

Even if this "case involve[d] an unusual factual scenario and a technical issue of [law] . . . [i]t certainly does not present a 'question of exceptional importance' meriting en banc consideration." *United States v. Cooley*, 947 F.3d 1215, 1216 (9th Cir. 2020) (Berzon, J. and Hurwitz, J., concurring in denial of petition for rehearing).  Nor is *en banc* consideration necessary to secure or maintain uniformity of the Court's decisions, as the unanimous Decision demonstrates.

## II.    Plaintiffs Failed to Demonstrate the Decision Requires Correction

### A.    This Court Correctly Applied California's Choice-of-Law Test

Applying California's choice-of-law test, the panel found the first two elements met: Spanish law differs from California law regarding acquisition of personal property by adverse possession; and there was a "true conflict" because

---

[1] *See generally* Jason A. Cantone & Carly Giffin, *Certified Questions of State Law: An Empirical Examination of Use in Three U.S. Courts of Appeals*, 53 U. Tol. L. Rev. 1, 38 (2021) (cited in *Cassirer VI*, 69 F.4th at 588 n. 22).

both jurisdictions have an interest in having their laws applied, and both seek to 'create certainty of title, discourage theft, and encourage owners of stolen property to seek return of their property in a timely fashion.'" *Cassirer VII*, 89 F.4th at 1235.

Considering the third element, the panel cited the California Supreme Court's guidance in *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (2010), acknowledging it should "not 'weigh' the conflicting governmental interest in the sense of determining which conflicting law manifested the 'better' or the 'worthier' social policy on the specific issue[,]" and reiterated *McCann's* holding that the governmental interest test "continues to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders" and in being able to assure individuals and business operating in the jurisdiction "that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Cassirer VII,* 89 F.4th at 1236, 1239 (cleaned).

The panel recognized that "because the relevant conduct ([the Foundation's] purchase of the painting and its display in the museum) occurred in Spain—or at least not in California—*McCann* teaches that Spain has the 'predominant interest' in applying its laws to that conduct" which occurred within its borders. *Id.* at 1242. The panel further recognized that:

6

> [A]pplying California law based only on the Cassirers' choice of residence would mean that Spain could not provide any "reasonable assurance[s]" to persons who possess property within Spain's borders that Article 1955 would ever protect them from replevin or damages actions by California claimants . . . [and] would mean that Spain's law would not apply to property possessed within Spain's borders, so long as the initial owner (1) happened to be a California resident (a fact over which, as in *McCann*, the defendant has "no way of knowing or controlling"), and (2) the California resident did not know where the property is located and who possessed it—contrary to Article 1955 of the Spanish Civil Code.

*Id.* at 1243.

The panel correctly affirmed Judge Walter's factual findings and determination that Spanish law applies, finding "none of the relevant conduct occurred in California." *Id.* at 1241. The claimed property is located in Spain; the Foundation acquired the property for public display pursuant to a Spanish Royal decree using Spanish public funds; and the Foundation has publicly displayed the property as its owner since 1993. Conversely, no key events took place in California. Lily Neubauer had no connection to California; the painting was taken from her in 1939 in Germany. Ms. Neubauer litigated ownership of the painting after the war (while residing in England), and received payments from a 1958 settlement of her claims (based on the painting's agreed-upon value) while residing in Ohio.

California's interest in this case is not based on any facts relevant to Mrs. Neubauer's loss or the Foundation's purchase. Rather, it is based on a claim being

7

asserted in 2005 by Mrs. Neubauer's grandson, who retired here in 1980.  Spain's interest is premised on the fact that this dispute concerns property located and purchased in Spain with Spanish public funds, as Spain's government has explained in four separate amicus briefs.

The panel recognized that applying California law based "only on Claude Cassirer's decision to move to California would 'strike at the essence of a compelling [Spanish] law' . . . [and] would contradict the principles from *McCann* and *Offshore Rental* which recognize the strong interest that Spain has in ensuring its laws will predictably regulate conduct that occurs within its borders." *Cassirer VII,* 89 F.4th at 1243.

## B.    Spain Has a Strong Interest in Seeing its Law Applied

As previously recognized on two occasions:

> The property laws of both Spain and California seek to create certainty of title, discourage theft, and encourage owners of stolen property to seek return of their property in a timely fashion.  Although these states have chosen different rules for movable property, both sets of rules further the basic polices underlying property law.

*Cassirer III*, 862 F.3d at 964; *see also Cassirer VII*, 89 F.4th at 1235.

Plaintiffs readily acknowledge that Spain recently reaffirmed its commitment to the Washington Principles on Nazi-Confiscate Art when it signed the Terezin Declaration on Holocaust Era Assets and Related Issues.  Pet. at 13-14.

8

Plaintiffs, however, incorrectly posit that these recent commitments demonstrate that Spain has "conflicting expressions of policy." *Id.*

Spain does not have an interest in protecting knowing receivers of stolen property. To the contrary, as the panel held, the application of Spanish acquisitive prescription is tolled where the possessor is an encubridor (an accessory) within the meaning of Spanish Civil Code Article 1956. *Cassirer III*, 862 F.3d at 964-73. Like California, Spain "seek[s] to create certainty of title, discourage theft, and encourage owners of stolen property to seek return of their property in a timely fashion." *Id.* at 964. That Spain reaffirmed its commitment to the Washington Principles, while also leaving intact Civil Code Article 1955, demonstrates that Spain has "chosen different rules for movable property" to address the same "basic polices underlying property law" addressed by California law. *Id.*

As the panel correctly found, Spain has not "'shown any lack of interest in seeing its own law applied.'" *Cassirer VII*, 89 F.4th at 1238 (quoting *Cassirer IV,* 69 F.4th at 569). Moreover, the Terezin Declaration, on which plaintiffs rely, makes clear that "*different legal traditions*" must be taken into account.[2] This Court previously rejected plaintiffs' reliance on the Washington Principles, the

---

[2] https://www.state.gov/prague-holocaust-era-assets-conference-terezin-declaration/ (emphasis added).

Terezin Declaration, *and* the Holocaust Expropriated Art Recovery Act, Pub. L. No. 114-308, 130 Stat.1524, finding that the Terezin Declaration's "'*legally non-binding*' principles" do not compel a different result, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 824 F. App'x 452, 457 n.3 (9th Cir. 2020) ("*Cassirer IV*"), and that the "HEAR [Act] does not alter the choice of law analysis this Court uses to decide which State's law will govern" this dispute, *Cassirer III*, 862 F.3d 951 at 964.

Further, on March 5, 2024, the United States once again confirmed its commitment to the Terezin Guidelines and Washington Principles by endorsing the Best Practices for the Washington Conference Principles on Nazi-Confiscated Art, (the "Best Practices") which "were drafted with the awareness that there are differing legal systems and that states act within the context of their own laws. Countries will apply the best practices that follow in accordance with national laws."[3] The United States did not seek to impose its property laws or the property laws of its own states on other foreign sovereigns. Here, the relevant national law is Spain's Civil Code Article 1955.

That California and Spanish law diverge on the issue of acquisitive prescription is not reason to apply one over the other; a conflict is simply the first

---

[3] https://www.state.gov/best-practices-for-the-washington-conference-principles-on-nazi-confiscated-art/

4887-3918-3282.14

prerequisite to any choice-of-law analysis. Nor should the fact that one set of laws produces a certain result in a certain case favor one over another. Plaintiffs' invitation to apply California law because it achieves a better result for them, is expressly forbidden. *See McCann*, 225 P.3d at 534 ("our task is not to determine [which] . . . rule is the better or worthier rule, but rather to decide . . . which jurisdiction should be allocated the predominating lawmaking power under the circumstances").

### C. California's Interests are Not Impaired by the Application of Spanish Law

The panel and the district court recognized that "California's interest in the application of its laws related to adverse possession of personal property (or lack thereof) is not as strong as Spain's interest, given that neither a California statute nor case law expressly prohibits a party from obtaining ownership of personal property through adverse possession . . . [whereas] Spain has enacted laws, as part of its Civil Code, that specifically and clearly govern adverse possession of movable property." *Cassirer*, 153 F. Supp. 3d at 1159; *see also Cassirer VII*, 89 F.4th at 1229 n.3.

Plaintiffs' argument that "[Section] 338(c)(3) specifically addresses . . . 'the particular issue presented to the court' – recovery of stolen art from a museum – while Article 1955 does not" is contradicted by the Decision and the district court's findings of fact and the applicable law. While Plaintiffs point to Section 338(c)(3)

11

as evidence that California has a greater interest than Spain in this Holocaust-era stolen art claim, California's procedural law was intentionally not focused on Holocaust-era taken property claims—for good reason.

In *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954 (9th Cir. 2010) this Court recognized that Section 354.3, the precursor to Section 338(c)(3), was preempted because it established a cause of action and remedy for Holocaust-era property claims. *See id.* at 966. Because Section 354.3 "at its core, concern[ed] restitution for injuries inflicted by the Nazi regime during World War II," the statute was preempted by the federal government's foreign affairs power. *Id.* at 965-67; *see also American Ins. Assoc. v. Garamendi,* 539 U.S. 396, 413-14 (2003) (invalidating California statute conflicting with foreign policy). To avoid federal pre-emption, Section 338(c)(3) was drafted with more generic terms to cover actions for "recovery of a work of fine art" against a "museum, gallery, auctioneer, or dealer[.]" Cal. Code Civ. Proc. § 338(c)(3)(A). This Court confirmed that Section 338(c)(3) was a statute of general application that *did not* target claims for Holocaust-era artwork and, therefore, did not intrude into the area of foreign affairs. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613, 618-19 (9th Cir. 2013) ("*Cassirer II*").

Plaintiffs' reliance on Section 338(c)(3) as evidence of California's interest in Holocaust-era injuries ignores the prohibition against California, or any state,

12

intruding into the area of foreign affairs, and the state's intentional drafting to avoid that prohibition.  The March 5, 2024, Best Practices reiterate that Holocaust-era claims remain within the foreign affairs' realm and pre-empts California law on these issues.

### D.     Application of Spanish Law Results in the Maximum Attainment of Underlying Purpose by All Governmental Entities

The application of Spanish law also results in the "'maximum attainment of underlying purpose by all governmental entities.'"  *Cassirer VII*, 89 F.4th at 1243 (quoting *Offshore Rental*, 583 P.2d at 728).

The panel correctly noted, "California law already contemplates that a person whose art . . . is stolen may eventually lose the ability to reclaim possession: namely, if the person fails to bring a lawsuit within six years after he discovers the [art's] whereabouts[.]"  *Cassirer VII*, 89 F.4th at 1244 (citing Cal. Code Civ. Proc. § 338(c)(3)(A)).  Notably, 338(c)(3)(A) was limited to claims "against a *museum*, *gallery*, *auctioneer*, or *dealer*," thus leaving the three-year limitations period in place for all such claims against private purchasers and non-art-related businesses.

Moreover, the Foundation *is not* a thief, and California's interests in discouraging theft are not impaired by the application of Spanish law.  The painting was stolen by *Germany* during World War II, the Foundation does not traffic in stolen goods, and it has displayed the painting as the owner for almost

13

thirty years, after it was purchased by Spain in a highly publicized sale following significant due diligence by attorneys around the world. If the Foundation were a trafficker or knowing receiver of stolen property, the application of Spanish acquisitive prescription would be tolled. However, the district court found the Foundation did not have actual knowledge the painting had been stolen; a factual finding the panel agreed with when it unanimously affirmed the holding the Foundation acquired ownership pursuant to Spain's law of acquisitive prescription. *See Cassirer IV*, 824 F. App'x at 454-57.

Finally, the district court noted, "unlike a statute of limitations, the law of adverse possession does not present a procedural obstacle, but rather concerns the *merits* of an aggrieved party's claim." *Cassirer*, 153 F. Supp. 3d at 1160. Because California's primary interest in actions involving Holocaust-era takings claims is allowing otherwise stale claims to be adjudicated on the merits and not dismissed on procedural grounds, California's interest is wholly satisfied where, as here, plaintiffs were allowed to pursue their claims to a trial on the merits.

Subjecting a defendant within Spain to a different rule of law based on the unpredictable choice of residence by a successor-in-interest (to a foreign predecessor) would "significantly impair Spain's interest in applying Article 1955" and undermine Spain's interest in certainty of title. *Cassirer VII*, 89 F.4th at 1242-43. Plaintiffs' unsupported assertions that applying "California law would have

14

*zero* impact on the billions of other sales transactions every year in Spain," Pet. at 15, 26, ignores the sound and well-reasoned Decision and provides no basis for en banc reconsideration. California may have an interest in discouraging theft and trafficking of stolen art through California, but that interest is limited and cannot overcome Spain's more compelling interests in governing conduct that takes place within her borders.

### E. The Legislature Cannot Mandate the Application of California Law and Recent Supreme Court Precedent Mandates Dismissal Under FSIA

Recent efforts by the California legislature further confirm the panel's Decision was correct. On March 18, 2024, Assemblymember Jesse Gabriel introduced legislation to add C.C.P. Section 338.2, providing, in relevant part:

> A California resident . . . may bring an action for damages, other financial recovery, title, recovery, or ownership, of artwork or other personal property that was taken or otherwise lost as a result of political persecution . . . [and] [n]otwithstanding any other provision of law or prior judicial decision, in any action brought pursuant to this section or in the Holocaust Expropriated Art Recovery Act of 2016 (HEAR) (Pub. L. No. 114-308), *California substantive law shall apply*.

CA AB2867, 2023-2024 Reg. Sess. ("AB2867") (emphasis added).

AB2867 would apply to any action still "pending on the date this becomes operative" and, according to the bill's sponsor would "correct" the panel's

15

Decision in this case and "make sure that something like this doesn't happen again[.]"[4]

The proposed legislation confirms the Decision was correct—as it would re-write California's well-established choice-of-law test for this and similar cases and would mandate application of California's substantive law regardless of the facts. However, the bill is unconstitutional on its face. Legislation which, "at its core, concerns restitution for injuries inflicted by the Nazi regime during World War II" is preempted by the federal government's foreign affairs power. *Von Saher,* 592 F.3d at 965-67. AB2867's text and intent ignore the pre-emptive effect of federal law and prohibition against states intruding into the area of foreign affairs: "Our effort will make it crystal clear that California law must triumph over foreign law, that California stands with Holocaust survivors[.]"[5] By creating a cause of action for artworks lost as a result of "political persecution" and mandating that "California substantive law shall apply" to "any action brought pursuant to the Holocaust Expropriated Art Recovery Act[,]" AB2867 plainly seeks to "create [its] own remed[y] to the problem of looted Holocaust-era art or other wartime injuries . . . [and] establish [the State's] own foreign policy." *Cassirer II*, 737 F.3d at, 618-19

---

[4] https://www.algemeiner.com/2024/03/28/california-lawmaker-introduces-legislation-help-restitution-property-stolen-holocaust/ ("Algemeiner Article").

[5] Algemeiner Article.

(cleaned). The proposed legislation is facially unconstitutional, provides no basis for reconsideration of the Court's Decision, and is the type of impermissible overreach contemplated by the United States in its amicus brief to the Supreme Court in this action. *See* Brief for the United States as Amicus Curiae Supporting Petitioners, *Cassirer V*, 596 U.S. 107 (2002) (No. 20-1566) (noting "there could be instances in which a State's choice-of-law rules were hostile to or improperly dismissive of a foreign state's interests-especially its interests in regulating certain matters within its own territory-that state law should not control[,] [b]ut those concerns are best addressed by applying limits on the application of state law derived from the Constitution, applicable treaties or statutes, international comity, the Act of State doctrine, or other sources reflecting distinctly federal interests.") This last-minute attempt to rewrite the rules only confirms the Decision, applying a well-established choice-of-law test, was correct.

Moreover, contrary to AB2867, the March 5, 2024, Best Practices reiterate that Holocaust-era claims remain within the foreign affairs' realm and that "there are differing legal systems and that states act within the context of their own laws." AB2867 ignores the pre-emptive effect of federal law and the fact that foreign entities like the Foundation, are immune from suit under the FSIA unless a specific exception applies. *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703, 713 (2021) ("FSIA's express goal of codifying the restrictive theory of sovereign

immunity . . . would be of little consequence if human rights abuses could be packaged as violations of property rights and thereby brought within the expropriation exception to sovereign immunity.")

The *Philipp* decision confirmed the expropriation exception does not provide jurisdiction for a state's taking of property from its own citizens, even in Holocaust-era cases. Specifically, the Supreme Court found the expropriation exception incorporates the *domestic takings rule* which states that "what a country does to property belonging to its own citizens within its own borders is not the subject of international law", and held that such a taking does not satisfy the expropriation exception. *Philipp,* 141 S. Ct. at 709, 715. Recent case law from the D.C. Circuit confirms *Philipp* applies equally to a state's taking of property from a "stateless" person, which contradicts the district court's holding in this case. *Simon v. Republic of Hungary*, 77 F.4th 1077, 1098 (D.C. Cir. 2023) (finding "a state's taking of *de facto* stateless person's property" does not violate the international law of expropriation); *compare Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1165–66 (C.D. Cal. 2006).

Based on *Philipp*, the Foundation reasserts its lack subject matter jurisdiction defense under the FSIA, an issue this Court *must* consider in deciding plaintiffs' petition. *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) (court "must raise issues concerning our subject matter jurisdiction sua

18

sponte"); *see also Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-03459 GAF EX, 2014 WL 5510996, at *3 (C.D. Cal. Oct. 31, 2014) (finding the Foundation "is correct that subject matter jurisdiction is never waived"); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, (2011) ("federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction . . . [and] must raise and decide jurisdictional questions").

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiffs' petition for rehearing and rehearing en banc.

Dated: April 5, 2024              Respectfully submitted,

                                  */s/Thaddeus J. Stauber*
                                  Thaddeus J. Stauber
                                  Aaron M. Brian
                                  Zachary C. Osinski

                                  Nixon Peabody LLP
                                  Attorneys for Defendant/Appellee
                                  Thyssen-Bornemisza Collection Foundation

## CERTIFICATE OF COMPLIANCE

The foregoing response to petition for rehearing/petition for rehearing en banc complies with the requirements of Ninth Circuit Rule 32 and this Court's Order of March 15, 2024.  The brief is proportionately spaced in Times New Roman 14-point type.  According to the word processing system used to prepare the brief, the word count of the brief is 4,190, not including the items listed in Federal Rule of Appellate Procedure 32(f).

Dated: April 5, 2024                    Nixon Peabody LLP
                                        Attorneys for Defendant/Appellee
                                        Thyssen-Bornemisza Collection Foundation


                                        By   */s/Aaron M. Brian*

20

## CERTIFICATE OF SERVICE

I, hereby certify that on April 5, 2024, I electronically filed the foregoing **DEFENDANT/APPELLEE THYSSEN-BORNEMISZA COLLECTION FOUNDATION'S RESPONSE TO PLAINTIFFS/APPELLANTS' PETITION FOR REHEARING AND REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By ___*/s/Aaron M. Brian*___
Aaron M. Brian

4887-3918-3282.14