# No. 19-55616

## In the
## United States Court of Appeals for the Ninth Circuit

DAVID CASSIRER, THE ESTATE OF AVA CASSIRER, and
UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY,
a California non-profit corporation,
*Plaintiffs-Appellants,*

v.

THYSSEN-BORNEMISZA COLLECTION FOUNDATION,
*Defendant-Appellee.*

Appeal from the United States District Court,
Central District of California, Case No. 2:05-cv-03549-JFW-E,
Honorable John F. Walter, District Judge

## PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF PETITION FOR REHEARING AND REHEARING EN BANC

| | | |
|---|---|---|
| LAURA W. BRILL<br>KENDALL BRILL & KELLY LLP<br>10100 Santa Monica Blvd.<br>Los Angeles, CA 90067<br>(310) 556-2700 | SAMUEL J. DUBBIN, P.A.<br>DUBBIN & KRAVETZ LLP<br>1200 Anastasia Avenue<br>Coral Gables, FL 33134<br>(305) 371-4700 | DAVID BOIES<br>BOIES SCHILLER FLEXNER LLP<br>333 Main Street<br>Armonk, NY 10504<br>(914) 749-8200 |
| | STEPHEN N. ZACK<br>BOIES SCHILLER FLEXNER LLP<br>100 S.E. 2nd Street<br>Miami, FL 33131<br>(305) 539-8400 | DAVID A. BARRETT<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards<br>New York, NY 10001<br>(212) 446-2300 |

*Counsel for Plaintiffs-Appellants*


COUNSEL PRESS · (213) 680-2300      PRINTED ON RECYCLED PAPER 

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

A.     Standard for Rehearing En Banc .................................................................1

B.     Exceptional Importance ...............................................................................1

C.     Interests of Justice and Need for Correction ...............................................5

       1.     Federal Interests Must Be Weighed ..................................................5

       2.     Particular Circumstances of this Case ...............................................6

       3.     Minimal Impact on Spain's Interests .................................................7

       4.     Importance of the Discovery Rule .....................................................8

       5.     International Agreements ...................................................................8

D.     California's Proposed Legislation – A.B. 2867 ............................................9

E.     Subject Matter Jurisdiction .........................................................................10

CONCLUSION ........................................................................................................11

# **TABLE OF AUTHORITIES**

## **Cases**

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
 737 F.3d 613 (9th Cir. 2013) ("*Cassirer II*") ................................................. 9, 10

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
 862 F.3d 951 (9th Cir. 2017) ("*Cassirer III*") ................................................... 3, 8

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
 596 U.S. 107 (2022) ("*Cassirer V*") ...................................................................... 11

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
 89 F.4th 1226 (9th Cir. 2024) ("*Cassirer VII*") ...................................................... 8

*Federal Republic of Germany v. Philipp*,
 592 U.S. 169 (2021) ............................................................................................ 10

*Forcellati v. Hylands, Inc.*,
 876 F.Supp.2d 1155 (C.D. Cal. 2012) .................................................................... 7

*Newdow v. U.S. Cong.*,
 328 F.3d 466 (9th Cir. 2003) .................................................................................. 1

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
 592 F.3d 954 (9th Cir. 2010) ............................................................................ 2, 3

## **Statutes**

California Assembly Bill 2867,
 A.B. 2867, 2023-24 Assemb., Reg. Sess. (Cal. 2024) ................................. 2, 9-10

California Code of Civil Procedure (CCP) §338(c)(3) .................................. *passim*

Foreign Sovereign Immunities Act (FSIA) §1605 .................................................. 10

Holocaust Expropriated Art Recovery (HEAR) Act,
 Pub. L. No. 114-308, 130 Stat. 1524 (2016) ................................................ *passim*

Holocaust Victims Redress Act (HVRA),
 Pub. L. No. 105-158, §202, 112 Stat. 15 (1998) .................................................... 6

Spanish Civil Code Article 1955 .................................................................................9

U.S. Military Law No. 52, 59,
   10 C.F.R., 1947 Supp. §§3.15, 3.75 (1947) .............................................................6

**Treaties and International Agreements**

Convention on Means of Prohibiting and Preventing the Illicit Import,
   Export and Transfer of Ownership of Cultural Property (UNESCO
   Convention 1970) ....................................................................................................6

Hague Convention (1907) ...........................................................................................6

Terezin Declaration on Holocaust Era Assets and Related Issues,
   U.S. Dep't of State (June 30, 2009) ...................................................................6, 7

Washington Conference Principles on Nazi-Confiscated Art,
   U.S. Dep't of State (Dec. 3, 1998) ........................................................................6

**Other Authorities**

Kevin Rector, "California legislators push law change after ruling against
   family in Nazi looted art case,"
   *Los Angeles Times*, Mar. 28, 2024. ........................................................................3

Secretary of State Antony J. Blinken, Remarks at the 25th Anniversary of the
   Washington Principles on Nazi Confiscated Art,
   U.S. Dep't of State (March 5, 2024) ................................................................4, 8

William Dodge, "A Legislative Fix for the Cassirer Case,"
   Transnational Law Blog, Apr. 17, 2024. ...............................................................9

## INTRODUCTION

The Cassirers' Petition for Rehearing and Rehearing En Banc ("Pet.") demonstrates that the Panel Decision ("Decision") raises issues of exceptional importance, and misapplies the comparative impairment criteria of California's choice-of-law rules.[1] In doing so, the decision fails the fundamental requirement of federalism that relevant Federal laws, policies, and international agreements must be incorporated into application of state law. TBC's response ("Opp.") fails to address these fundamental errors, nor does it seriously argue that this is not a case of exceptional importance.

### A. Standard for Rehearing En Banc

TBC acknowledges that the Court "should rehear a case en banc when it is both of exceptional importance and the decision requires correction." *Newdow v. U.S. Cong.*, 328 F.3d 466, 469 (9th Cir. 2003) (Reinhardt, J., concurring). However, TBC ignores the additional ground for rehearing where "the interests of justice require that the decision be corrected." *Id.* at 470. This case satisfies all three criteria.

### B. Exceptional Importance

TBC's claim that this case is "simple" and "straightforward," Opp. at 5, is belied by its extraordinary legal and factual circumstances.

---

[1] This Reply uses the shorthand descriptions for prior decisions in the *Cassirer* litigation that are set forth in the Petition at 5, n.2.

The applicable California statute, CCP §338(c)(3), stems from the Legislature's decisive action in 2010 immediately rejecting this Court's holding in *Von Saher v. Norton Simon Museum*, 592 F.3d 954 (9th Cir. 2010), that constructive notice is a defense to stolen art claims. The Legislature effectively overruled *Von Saher* by adopting a six-year statute of limitations for stolen art claims against museums, accruing from the owners' *actual notice* of their rights and the location of the art. CCP §338(c)(3)(A). It specifically rejected "constructive notice imputed by law," §338(c)(3)(C)(i), which is the basis for Spain's adverse possession rule. Pet. 11-12. Yet the Decision ignores the essential role played by the actual knowledge principle in defining California's interests.

The California Attorney General underlined the State's interests in two amicus briefs: "[U]sing adverse possession to strip the heirs of Holocaust survivors of art Nazis took by force flies in the face of overwhelming state, federal, and international policy supporting its return....California's interests, which Section 338(c) seeks to advance, mirror the commitments of the Federal government and international community." D.E. 97 at 8-9; D.E. 137-2.

Further showing the case's exceptional importance, the Legislature is again considering statutory reversal of this Court's misinterpretation of California law in the Decision. *See* Opp. 15-17. Assembly Bill 2867 would require application of California substantive law where CCP §338(c)(3) or the HEAR Act applies. *See*

2

Kevin Rector, "California legislators push law change after ruling against family in Nazi looted art case," *Los Angeles Times*, Mar. 28, 2024.[2]

Moreover, the Decision fails to apply (and TBC ignores) applicable Federal law. The 2016 Holocaust Expropriated Art Recovery (HEAR) Act followed California's lead in expressly rejecting *Von Saher*. It requires a six-year limitations period from actual discovery, specifically applicable to Nazi-looted art, "notwithstanding…any defense at law relating to the passage of time." §5(a). Because Spain's law of acquisitive prescription is literally a "defense at law relating to the passage of time," it is unenforceable under this Federal statute which is directly on point. Pet. 27-28.[3]

As discussed below, the Decision's more general failure to address the Federal interests that are incorporated into California law under the Supremacy Clause is another matter of exceptional importance.

Exceptional importance is further reflected by the amicus briefs supporting rehearing en banc:

---

[2] https://www.latimes.com/california/story/2024-03-28/california-legislators-push-law-change-after-ruling-against-family-in-nazi-looted-art-case

[3] En banc review will enable the Court to reconsider the Panel's erroneous rejection of the plain meaning of the HEAR Act in *Cassirer III*, 862 F.3d at 964. *See* Pet. 28, n.20.

3

- Monuments Men and Women Foundation ("MMWF"), a charity whose mission is to recognize, honor, and continue the work begun during World War II to achieve restitution of stolen artworks, shows that Federal treaties, statutes, and policies outlawing pillage and requiring restitution of war booty, especially Nazi-looted art, preempt interpretations of California law that would recognize "good title" to Nazi-looted art. D.E. 159-2.

- Several of the most prominent Holocaust scholars and Jewish and Survivor organizations explain that "[t]he panel decision minimizes the history of the Nazis' brutal campaign of dispossession against the Jewish people by treating this case as an ordinary commercial property dispute, thereby anesthetizing history and fact." D.E. 158-1, at 16.

Secretary of State Antony Blinken recently expressed U.S. policy in similar terms: "[T]oo many governments, museums...still resist restitution efforts....These efforts are more important than ever, as Holocaust distortion and denial are again on the rise...and societies who downplay or refute the Shoah foster antisemitism and violence against Jews."[4]

---

[4] https://www.state.gov/secretary-of-state-antony-j-blinken-video-remarks-at-the-25th-anniversary-of-the-washington-principles-on-nazi-confiscated-art-and-best-practices-event/

- The Madrid and Spain Jewish Communities show that Spain's "recent declarations, international agreements, and related actions make clear that its stance on the return of Nazi-looted art is more accurately captured by the relevant California law than by the Spanish Civil Code." D.E. 160-1, at 6. These include return of artworks looted by Nazis and the Franco regime, as well as statements by the Ministry of Culture (newly-reconstituted following Spain's 2023 general election), which controls TBC, "that the case could have been handled differently within the framework of international agreements on seizures of works of art by the Nazi regime" and implying the Painting should be returned. D.E. 160-2, at 18-22.

TBC offers no response, but given Spain's previous submissions insisting international agreements have no bearing on this case, we urge the Court to request further clarification from Spain concerning how it now balances adverse possession law against its international commitments and recent declarations and actions.

### C. Interests of Justice and Need for Correction

#### 1. Federal Interests Must Be Weighed

TBC ignores, as does the Decision, that under the Supremacy Clause, California's interests for choice-of-law purposes necessarily encompass Federal laws, policies, and international agreements. Pet. 27-30. The Federal interests

prohibit wartime looting and call for the return of seized artworks and cultural property, and in particular Nazi-looted art. These include the Hague Convention (1907), Military Law No. 52, 59 (1947), the UNESCO Convention (1970), the Holocaust Victims Redress Act (1998), the Washington Principles (1998), the Terezin Declaration (2009), the HEAR Act (2016), and other Executive Branch actions. Pet. at 1-4,12-13, 24-25, 27-30; MMWF Brief, D.E. 159-2.

### 2. Particular Circumstances of this Case

TBC fails to address the Petition's showing that the Decision violates several requirements of California's comparative impairment test, which include focusing on the "particular context" and legal questions at issue, and making it TBC's burden to show compelling reasons to overcome the presumption that California law applies. Pet. 10-12,15-16.

With respect to the particular facts and issues, TBC ignores the Decision's flawed reliance on personal injury cases where the plaintiffs were physically present in the non-California jurisdiction at the time of injury or toxic exposure, while the Cassirers never traveled to Spain. Pet. 22-25.

TBC similarly ignores, as did the Decision, that California's interest also arises because the Painting was smuggled into the State from Germany in violation of Federal law in 1951, and traded twice within California. Pet. 5. Nor was Claude's California residence "fortuitous," because unlike the cases cited by the Decision, he

6

lived in California for many years *before* TBC purchased the Painting. Pet. 23-24.[5] "Merely citing other courts' choice-of-law analyses, based on the facts before those courts, fails to discharge Defendants' burden of showing a 'compelling reason' justifying displacement of California law." *Forcellati v. Hylands, Inc.*, 876 F.Supp.2d 1155, 1161 (C.D. Cal. 2012).

### 3. Minimal Impact on Spain's Interests

TBC fails to refute the minimal impact that applying California law would have on Spain's interests. Spain's only asserted countervailing interest is commercial "certainty." Yet that interest is materially undermined by Spain's ratification of the Washington Principles, the Terezin Declaration, and other agreements calling for return of Nazi-looted art. Pet. 15, 26.

In any event, the impact of applying California law *in this case* involving Nazi-looted art on Spain's interest in providing "certainty" for commercial transactions is negligible if not zero. A ruling for the Cassirers would have no effect on the availability of title by acquisitive prescription on billions of items bought and sold in Spain – as long as they are not Nazi-looted art. Pet. 15, 26.

---

[5] Every jurisdiction where Claude resided – Germany, New York, Ohio, California – would require TBC to return the Painting. Pet. at 19-20, 23.

7

### 4. Importance of the Discovery Rule

TBC, like the Decision, ignores that perhaps the most important element of California policy is its adoption (which is also Federal policy under the HEAR Act) of an actual discovery rule to trigger the limitations period. Instead, the Decision nullifies California's interests by citing the only circumstance in which its interests are not "absolute" – where the true owner fails to file suit within six years after discovery, they will lose title. *Cassirer VII*, 89 F.4th at 1244-45. But since Claude Cassirer *did* timely file, *Cassirer III*, 862 F.3d at 960, in the "particular context" of this case, California's interests are "absolutely" impaired by application of Spanish law. Pet. 18.

### 5. International Agreements

In the context of balancing of interests, the argument that the many international agreements and principles in which Spain (and the U.S.) have joined are "legally non-binding," Opp. 10, is a red herring. Spain's joinder in these measures reflects its interests "in the particular context presented by" this case – a claim to recover Nazi-looted art. As the Petition and amici show, the Spanish government and Spanish law treat these diplomatic compacts seriously.

TBC argues that "California's interest in Holocaust-era injuries ignores the prohibition against California, or any state, intruding into the area of foreign affairs," citing Secretary Blinken's recent reiteration of the Washington Principles'

8

significance in U.S. foreign policy. Opp. 12-13. But TBC is bound by this Court's rejection of the same preemption argument in *Cassirer II,* 737 F.3d at 619.

Nor does it make sense that in articulating Spain's interests, TBC can ignore that Spain's official endorsement of the international agreements makes them part of its national policies. At the least, the inconsistency between Spain adopting as national policy both the international agreements and Section 1955 means that those conflicting policies are in equipoise for purposes of California's balance-of-interests test.

### D. California's Proposed Legislation

TBC claims that the proposed California legislation, Assembly Bill 2867, which would require application of California substantive law to claims covered by §338(c)(3) or the HEAR Act, "confirms the Decision was correct," apparently because it would be reversed by the proposed amendments. Opp. 16. However, the Legislature has the authority to mandate choice-of-law by statute. *See* William Dodge, "A Legislative Fix for the Cassirer Case," Transnational Law Blog, Apr. 17, 2024.[6] It also can require application of new statutes to pending cases, as it did with the 2010 amendments to §338(c)(3), which this Court then applied. *See Cassirer II*, 737 F.3d at 621.

---

[6] https://tlblog.org/a-legislative-fix-for-the-cassirer-case/

9

TBC argues that "A.B. 2867 ignores the pre-emptive effect of federal law." Opp. 17. Although the Cassirers agree that the Court should consider preemption, TBC's preemption argument was rejected in *Cassirer II,* 737 F.3d at 619. The true preemption issue is that under the Supremacy Clause, Federal law and policy must be weighed as part of California's interests, and they preclude interpretation of California law to award "good title" to Nazi-looted art.

E.  **Subject Matter Jurisdiction**

Finally, TBC's belated argument to re-consider subject matter jurisdiction following *Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021), is meritless. Opp. 18-19. The Cassirers filed their certiorari petition on May 6, 2021, three months after *Philipp* was decided. They explained that jurisdiction rested on the expropriation exception of FSIA §1605(a)(3), and was unaffected by *Philipp*. 2021 WL 1910232, at *5, n.2. The Cassirers repeated this discussion in their merits brief. 2021 WL 5404788, at *7, n.3. The U.S. Government, which opposed jurisdiction under the same FSIA provision in *Philipp*, supported the Cassirers in an amicus brief that discussed both *Philipp* and *Cassirer I*'s finding of subject matter jurisdiction in this case. 2021 WL 5513717, at *5, n.2. The Supreme Court, fourteen months after *Philipp*, found no question concerning jurisdiction:

> At a prior stage of this litigation, the courts below held that the Nazi confiscation of *Rue Saint-Honoré* brought Claude's suit against the Foundation within the expropriation exception. See 461 F.Supp.2d 1157, 1176-77 (C.D. Cal. 2006), aff'd, 616 F.3d 1019, 1037 (9th Cir. 2010) (en banc), cert. denied, 564 U.S. 1037 (2011). That determination, which is no longer at issue, meant that the suit could go forward.

*Cassirer V*, 596 U.S. at 111-12. The Supreme Court's ruling is conclusive.

## CONCLUSION

The Petition for Rehearing and Rehearing En Banc should be granted.

Dated: April 25, 2024             Respectfully submitted,

/s/ *David A. Barrett*

| | |
|---|---|
| DAVID BOIES | DAVID A. BARRETT |
| BOIES SCHILLER FLEXNER LLP | BOIES SCHILLER FLEXNER LLP |
| 333 Main Street | 55 Hudson Yards |
| Armonk, NY 10504 | New York, NY 10001 |
| Tel: (914) 749-8200 | Tel: (212) 446-2300 |
| | |
| SAMUEL J. DUBBIN, P.A. | STEPHEN N. ZACK |
| DUBBIN & KRAVETZ, LLP | BOIES SCHILLER FLEXNER LLP |
| 1200 Anastasia Avenue, Suite 300 | 100 S.E. 2nd Street, Suite 2800 |
| Coral Gables, FL 33134 | Miami, FL 33131 |
| Tel: (305) 371-4700 | Tel: (305) 539-8400 |
| | |
| | LAURA W. BRILL |
| | KENDALL BRILL & KELLY LLP |
| | 10100 Santa Monica Blvd., Suite 1725 |
| | Los Angeles, CA 90067 |
| | Tel: (310) 556-2700 |

*Counsel for Plaintiffs-Appellants*

11

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 19-55616

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 2,097.

(Petitions and responses must not exceed 4,200 words)

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ David A. Barrett    **Date** | April 25, 2024

(use "s/[typed name]" *to sign electronically-filed documents*)

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 11                                                                   Rev. 12/01/2021